**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **CASE NO.: 6:22-bk-04313-GER** |
| **BERTUCCI'S RESTAURANTS, LLC,** | **CHAPTER 11** |
| Debtor. _____/ | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING SALE OF LIQUOR LICENSE TO 629 CROSS KEYS LLC FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

**BERTUCCI'S RESTAURANTS, LLC** (the "Debtor"), pursuant to sections 105(a), 363, 365, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2081-1 and 6004-1, hereby respectfully moves the Court (this "Motion") for the entry of an order authorizing the Debtor to sell, free and clear of all liens, claims, encumbrances, and interests (collectively, the "Encumbrances"), that certain Plenary Retail Consumption License No. 0415-33-040-003 (the "Liquor License") issued to Debtor by the State of New Jersey Department of Law and Public Safety, Division of Alcoholic Beverage Control (the "NJ ABC") for the Debtor's vacated restaurant located at 625 Cross Keys Road, Sicklerville, New Jersey 08081 (the "Vacated Premises"), to 629 Cross Keys Limited Liability Company, a New Jersey Limited Liability Company, or its nominee ("Purchaser"). A copy of the Liquor License is attached as ***Exhibit A***. In support, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the Middle District of Florida.* This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2081-1 and 6004-1.

**BACKGROUND**

A. **General Background**

2. On December 5, 2022 ("Petition Date"), the Debtor filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Code"). No trustee has been appointed, and the Debtor is administering its case as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No creditors' committee has yet been appointed in any of this case by the Office of the United States Trustee. No trustee or examiner has been requested or appointed in this case.

4. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of this Case can be found in the *Chapter 11 Case Management Summary* [Doc. 3].

5. Debtor is a Florida limited liability company that was formed in May of 2018. Debtor owns and operates approximately forty-seven (47) Italian-themed restaurants in nine (9) states located in the North-East; however, the corporate offices are located at: 4700 Millenia Blvd., Suite 400, Orlando, Florida 32839.

6. The prior Bertucci's Brick Oven Pizza & Pasta went into bankruptcy in April of 2018 in the United States Bankruptcy Court for the District of Delaware. The current Debtor entity was created in May of 2018 when it acquired approximately fifty-six (56) restaurants under the name Bertucci's Brick Oven Pizza & Pasta (individually a "Restaurant", collectively, the "Restaurants"), in a transaction that closed on June 11, 2018, *see* the *Order Approving Asset Purchase Agreement* entered in the previous bankruptcy case [Bankr. D. Del. Case No. 18-10894-MFW; Doc. No. 295].

7. The Restaurants are marketed toward the core casual dining market and, when acquired, Bertucci's operated approximately 56 locations in 9 states nationwide reporting annual sales of more than $120 million for 2019 with nearly 2,000 employees.

8. Debtor had ceased operations at 18 of its locations, including the Vacated Premises to which the subject of this Motion, the Liquor License, applies.

9. As such, on December 5, 2022, Debtor filed its motion seeking, *inter alia,* to reject or terminate leases for 18 of its non-operational restaurant locations. *Emergency Motion for Order Authorizing Rejection of Unexpired Leases of Non-Residential Real Property Nunc Pro Tunc to Petition Date* [Doc. No. 7] (the "Lease Motion").

10. The order granting the Lease Motion was entered on December 9, 2022, as later amended on December 15, 2022. *See Order (1) Granting Debtor's Emergency Motion for Order Authorizing Rejection of Unexpired Leases of Non-Residential Real Property and (2) Setting Deadline to File Lease Rejection Claim* [Doc. No. 36, as amended at Doc. No. 47] (the "Lease Order").

11. With respect to the subjects of this Motion—the Vacated Premises and Liquor License—the Lease Order states that:

> The lease with Cross Keys Limited Liability Company ("Cross Keys") was terminated prepetition and, thus, there is no need for rejection. Based on the prepetition termination of the Cross Keys lease, the Debtor's rights to possession of the premises are extinguished. Cross Keys will not have any right to an administrative expense claim related to post-petition rent or occupancy; however, Debtor and Cross Keys reserve all rights in respect of: (a) Cross Keys' claims against Debtor, including without limitation, for breach damages; and (b) the rights and obligations under a liquor license purchase option exercised by Cross Keys prepetition.

[Doc. No. 47 at ¶ 2].

**B. The Proposed Sale**

12. Debtor has negotiated to sell its Liquor License for the Vacated Premises to 629 Cross Keys Limited Liability Company, or its nominee ("Purchaser", and together with Debtor as the "Parties") for $320,000. The Liquor License is unencumbered by any liens, claims and/or interests, other than the Option (as defined below).

   **a. The Parties to the Sale – Background**

13. Debtor has negotiated to sell its Liquor License for the Vacated Premises to Purchaser.

14. On or about April 25, 2008, the Debtor, as "Tenant", and Purchaser as "Landlord", entered into that certain Ground Lease Agreement for the Vacated Premises (as amended, modified, and/or supplemented, the "Lease"). A copy of the Lease is available upon request to Debtor's counsel.

15. In connection with the Lease, on or about October 17, 2022, the Parties entered into a Reaffirmation of Right of First Refusal and Lease Termination Agreement and Release (the

"Lease Termination", and together with the Lease as the "Lease Documents"). A copy of the Lease Termination is attached as **Exhibit B.**

16. Under the Lease and Lease Termination, Purchaser, as Landlord, had an option to purchase and right of first refusal with respect to the Liquor License (collectively, the "Option").

17. On December 2, 2022, Purchaser gave notice to Debtor of exercising its option and right to purchase the Liquor License (the "Notice"). A copy of the Notice is attached as **Exhibit C.**

   b. **The Sale Process**

18. Just three days after Purchaser served the Notice of exercising its option to purchase the Liquor License, Debtor filed it chapter 11 petition and commenced this chapter 11 case.

19. As discussed above, the Lease between Debtor, as tenant, and Purchaser, as landlord, for the Vacated Premises terminated pre-petition, but Purchaser has reserved its rights with respect to, among other things, the enforceability of the Option. *See supra.* ¶ 11.

20. Debtor and Purchaser haven been actively engaged in negotiations regarding the Purchaser's exercise of the Option to purchase the Liquor License.

21. After weeks of discussions, the Parties have negotiated an agreed-upon purchase price of $320,000 for the sale of Liquor License—which is $105,000 greater than the purchase price in Purchaser's Notice of exercising its option.

22. The Parties are in the process of preparing and executing an asset purchase agreement consistent with the terms above (the "APA"). Once finalized, Debtor will separately file a copy of the APA as a supplement this Motion.

**C. The Sale Terms**

23. Pursuant to Local Rule 2081-1, the pertinent terms of proposed sale are as follows:

| | |
|---|---|
| *Purchase Price* | $320,000 |
| *Purchaser* | 629 Cross Keys, Limited Liability Company, a New Jersey Limited Liability Company, or its nominee ("Purchaser") |
| *Purchased Assets* | Plenary Retail Consumption License No. 0415-33-040-003 (the "Liquor License") issued to Debtor by the State of New Jersey Department of Law and Public Safety, Division of Alcoholic Beverage Control (the "NJ ABC") for the Debtor's vacated restaurant located at 625 Cross Keys Road, Sicklerville, New Jersey 08081 (the "Vacated Premises"). A copy of the Liquor License is attached as ***Exhibit A***. |
| *Excluded Assets* | Any and all assets other than the Liquor License. |
| *Representations and Warranties* | The Liquor License will be transferred to Purchaser free and clear from all Encumbrances and will contain the usual warranties of title. |

**RELIEF REQUESTED**

24. By way of this Motion, Debtor seeks to sell the Liquor License to Purchaser free and clear from all Encumbrances for $320,000. For avoidance of doubt, the term "Encumbrances" shall be deemed to include mechanic's, materialmen's, other consensual and nonconsensual liens and statutory liens, security interests, encumbrances and claims against the Debtor, including, but not limited to, any "claim" as defined in section 101(5) of the Bankruptcy Code, reclamation claims, mortgages, deeds of trust, pledges, any liabilities or obligations under any State or Federal WARN Act or similar law, any liabilities or obligations under COBRA, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of any court of foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignments, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability,

tax and other liabilities, causes of action, and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or know or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by Agreement, understanding, law, equity or otherwise.

## BASIS FOR RELIEF

### A. Sale of the Liquor License Should be Approved Under Sections 363(b) and (f), and 365 of the Bankruptcy Code.

25. Debtor brings this Motion seeking approval of the proposed sale outside the ordinary course of its business. The Court should enter an order granting the relief requested herein because it represents a sound exercise of the Debtor's business judgment pursuant to sections 363(b)(1), 365(f)(2), and 365 of the Bankruptcy Code and is further appropriate under section 105(a) of the Bankruptcy Code.

26. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

27. Specifically, courts have held consistently that the sale of estate assets outside the ordinary course of business is appropriate if: (a) there is a sound business purpose for the sale; (b)

the proposed sale price is fair; (c) the debtor has provided interested parties with adequate and reasonable notice; and (d) the buyer has acted in good faith. *See, e.g., In re Exaeris, Inc.,* 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.,* No. 00−4459, 2002 WL 32332749, at *7−8 (D. Del. May 20, 2002).

28. Moreover, if a valid business justification exists for the sale of property of the estate, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Hldgs., Inc.,* 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith with respect to negotiating and approving a transaction involving a sale of assets). Parties objecting to the debtor's decision to sell property of the estate must make a showing of "bad faith, self-interest or gross negligence." *Integrated Res.,* 147 B.R. at 656; *see also In re Johns Manville Corp.,* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

29. The Debtor respectfully submits that sound business reasons support their decision to sell the Liquor License to Purchaser:

    a) *First,* it is highly unlikely that any other potential buyers will submit an offer approaching, let alone exceeding, the amount of the Purchaser's offer.

b) *Second,* the transaction will enable the Debtor to fund an orderly reorganization of its business though this Chapter 11 case without incurring additional operating expenses at a time when the Debtor has a decline in revenue and minimal cash on hand.

c) *Third,* the Debtor has extensively negotiated the sale of the Liquor License—including a significant increase in sale price—with Purchaser. Not only does Debtor believe that there is no better qualified purchaser which would pay a higher price, but it also believes that this sale is in the best interest of the estate as it will resolve disputes and issues surrounding the effect, if any, of the Purchaser's Option.

30. Accordingly, the Debtor, in its sound business judgment, believes that sale of the Liquor License to the Purchaser is in the best interests of its estate and that the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code.

**B. The Court Should Authorize the Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to Section 363(f) of the Bankruptcy Code**

31. The Debtor also seeks to sell the Liquor License free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
2) such entity consents;
3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
4) such interest is in bona fide dispute; or
5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

32. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale of the Acquired Assets "free and clear" of liens and interests. *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Decora Indus., Inc.*, 2002 WL 32332749, at *7; *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) does not apply. *See In re Trans World Airlines, Inc.*, No. 01−0056 (PJW), 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001).

33. The Debtor is not aware of any Encumbrances attaching or otherwise applicable to the Liquor License, other than the Option. Thus, a sale free of Encumbrances is permitted under section 363(f)(2) of the Bankruptcy Code.

### C. The Court Should Grant the Purchaser the Full Protections Afforded to a Good Faith Purchaser Pursuant to Section 363(m) of the Bankruptcy Code and Find that the Sale Should not be Avoidable Pursuant to Section 363(n) of the Bankruptcy Code

34. Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

35. Section 363(m) of the Bankruptcy Code thus protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has stated that a good faith

purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

36. There is no fraud or collusion between the Purchaser or any of its affiliates and the Debtor. Before the execution of the APA, the Debtor and the Purchaser engaged in extensive arm's-length discussions to reach a deal. The Debtor and the Purchaser are each represented by separate counsel in connection with the negotiations and structure of the Liquor License's sale.

37. Purchaser shall be permitted to assign its rights under this order to its nominee or a tenant for the Vacated Premises, at its discretion and without further order or any other action.

38. Accordingly, the Debtor requests that the Court determine that the Purchaser has negotiated and always acted in good faith and, as a result, is entitled to the full protections of a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the sale does not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code.

**D. A Private Sale of the Acquired Assets is Appropriate Under Bankruptcy Rule 6004**

39. Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added); s*ee also In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that manner of sale is within the debtor's discretion); *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

40. Accordingly, considering Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. *See, e.g.*, *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a Chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

41. Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) when there has been a valid business reason for not conducting an auction. *See, e.g.*, *Buffets Holdings, Inc.*, No. 08−10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving the private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08−10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet *into* nylon engineered resins for $17.9 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line which designs and manufactures materials used in catalytic converters to remove pollutants produced by engines for approximately $22 million); *In re Solutia, Inc.*, No. 03−17949

(SCC) (Bankr S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

42. The Debtor submits that the proposed private sale of the Liquor License to the Purchaser in accordance with terms set forth above is appropriate based on the facts and circumstances of this instant chapter 11 case. Specifically, given the proposed $320,000 purchase price for the Liquor License, the resolution of any issues surrounding Purchaser's Option and right of first refusal under the Lease Documents, and the low probability that a competing offer will actually emerge with an offer higher or better than the offer of the Purchaser does not justify the costs and risks associated with delay.

43. As a result, the transaction with the Purchaser allows the Debtor to maximize the value of the Liquor License and provides much needed liquidity to the Debtor's estate. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtor believes that the Purchaser's offer is the highest and best offer for the Liquor License (indeed, the Debtor does not believe any other offer could be obtained on better terms), the Debtor requests that the Court approve the proposed private sale of the Liquor License to the Purchaser in accordance with the terms set forth herein.

**E. Waiver of Bankruptcy Rule 6004**

44. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable. As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to generate revenues for its estate. Accordingly, the Debtor respectfully requests that the Court waive the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay

imposed by Bankruptcy Rule 6004(h), so that the Debtors may perform its obligations timely under the APA.

45.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Middle District of Florida; (b) the Debtor's prepetition lender; (c) the Purchaser; (d) all parties who have expressed an interest in acquiring some or all of the Debtor's assets; (e) all known holders of liens, claims, and other encumbrances secured by the assets subject to the proposed sale; (f) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, Bertucci's Restaurants, LLC, respectfully requests this Court enter an Order granting the Motion and the relief requested herein, and any such further relief as the Court deems just and proper in the circumstances.

**RESPECTFULLY SUBMITTED** this 9th day of January 2023.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane L. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Telephone: (407) 337-2060
Facsimile: (407) 337-2050
*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                                                                         CASE NO.    6:22-bk-04313-GER

**BERTUCCI'S RESTAURANTS, LLC,**                                    CHAPTER 11

      Debtor.
_____/

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true copy of the foregoing, together with any exhibits, has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: **DEBTOR**, **BERTUCCI'S RESTAURANTS, LLC**, 4700 Millenia Blvd., Suite 400, Orlando, FL 32836; **PHL HOLDINGS, LLC**, c/o Jason B. Burnett, Esq., GRAYROBINSON, P.A., 50 North Laura Street, Suite 1100, Jacksonville, FL 32202 (Jason.Burnett@Gray-Robinson.com) and Kenneth B. Jacobs, Esq., GRAYROBINSON, P.A., 50 North Laura Street, Suite 1100, Jacksonville, FL 32202 (ken.jacobs@gray-robinson.com); **629 CROSS KEYS, LLC.**, c/o Julie M. Murphy, Esq., Stradley Ronon Stevens & Young, LLP, 457 Haddonfield Rd., Ste 100, Cherry Hill, NJ 08002-2223 (Jmmurphy@stradley.com) and Lauren A. Beetle, Esq., Hylan Levin Shapiro, 6000 Sagamore Dr., Ste. 6301, Marlton NJ 08053-3900 (Beetle@hylandlevin.com); **NEW JERSEY DIVISION OF ALCOHOLIC BEVERAGE CONTROL,** 140 East Front Street, 5th Floor, P.O. Box 087, Trenton, New Jersey 08625-0087**;** all parties entitled to receive CM/ECF noticing in the ordinary course; the Local Rule 1007-2 parties-in-interest, as shown on the matrix attached to the original of this motion filed with the Court; and the U.S. Trustee's Office, 400 W. Washington St., Ste. 1120, Orlando, Florida 32801, this 9th day of January 2023.

                                                                         /s/ R. Scott Shuker
                                                                         R. Scott Shuker, Esq.