**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:                                                                Case No.   6:22-bk-04313-GER

**BERTUCCI'S RESTAURANTS, LLC,**

      **Debtor.**

_____/

**MOTION OF 523 RESTAURANT, LP FOR RELIEF FROM AUTOMATIC STAY**

      Creditor 523 Restaurant, LP (the "Movant"), by and through its undersigned attorney, hereby moves for relief from the automatic stay, pursuant to sections 362(d)(1) and 362(d)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as applicable (the "Local Rules"), to enforce its contractual and state law rights and remedies under that certain Lease and Security Agreement (both as defined herein), including to enforce a transfer of that certain Pennsylvania Liquor License No. R-19419 (the "Liquor License") to Movant, and for an order waiving the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(3).  In support of the Motion, the Movant states as follows:

**FACTUAL BACKGROUND**

**I.    Jurisdiction and Venue**

    1.    The United States Bankruptcy Court for the Middle District of Florida (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

    2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) & (O).

    3.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 & 1409.

**II.     The Lease and Debtor's Default Thereunder**

4.     Movant is the owner of certain real property located at 523 West Lancaster Avenue, Radnor Township, Delaware County, Pennsylvania (the "Premises"), which Premises was leased to the Debtor pursuant to that certain unexpired nonresidential real property lease agreement dated September 5, 2003 by and between Movant, as successor in interest, and the Debtor (the "Original Lease") . A true and correct copy of the Lease is attached hereto as **Exhibit A**.

5.     The Lease was amended on December 8, 2017 (the "First Amendment"), April 1, 2018 (the "Second Amendment"), April 9, 2020 (the "Third Amendment"), August 12, 2020 (the "Fourth Amendment") and October 21, 2020 ("Fifth Amendment" and together with the Original Lease, the First Amendment, the Second Amendment, the Third Amendment and the Fourth Amendment, collectively, the "Lease"). True and correct copies of the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment and the Fifth Amendment are attached hereto respectively as **Exhibits B**, **C**, **D**, **E**, and **F**. The initial term of the Lease was twenty (20) years. Lease, § I.3.

6.     Under the Lease, the Debtor agreed, among other things, to pay "Rent" including "Basic Rent" plus all other charges and payments required to be made under the Lease (the "Additional Rent"). Lease, § II.1.

7.     Beginning in September 2022, Debtor stopped paying Rent, including Basic Rent, Additional Rent, as well as certain installments of deferred rent required to be paid by the Tenant under the Third, Fourth and Fifth Amendments.

8.     On October 27, 2022, Landlord served a default notice upon Tenant pursuant to Section XI.1(a) and XI.2(a) of the Lease (the "Default Notice"), demanding all defaults be cured within ten (10) days. A true and correct copy of the Default Notice is attached hereto as **Exhibit**

**G**.  Debtor did not timely cure the defaults, and as a result, on November 10, 2022, Movant served a notice of termination of the Lease ("Termination Notice").  A true and correct copy of the Termination Notice is attached hereto as **Exhibit H**.

9.  In the event of an uncured default by the Debtor resulting in the termination of the Lease, the Lease provided Movant with certain remedies, including Debtor's agreement to the entry of a Warrant (as defined in the Lease) authorizing, among other things, the entry of a confession of judgment for the uncured default, and the entry of a judgment in ejection for possession of the Premises by confession.  Lease, § XI.6.

10.  Thereafter, on November 22, 2022, Movant commenced two actions against the Debtor in the Court of Common Pleas of Delaware County, Pennsylvania ("Pennsylvania Court").  In Case No. CV-2022-08902, Movant filed a Complaint in Ejectment against Debtor, seeking to regain possession of the Premises, in accordance with the terms of the Lease.  In Case No. CV-2022-08904, Movant filed a Complaint in Confession of Judgment, seeking a money judgment in the amount of Debtor's uncured default, which at the time was $91,676.59, inclusive of fees and interest.  True and correct copies of the Complaints are attached hereto as **Exhibits I** and **J**, respectively.

11.  On November 30, 2022, the Pennsylvania Court entered a judgment for possession in Case No. 2022-008902, and a money judgment for damages in Case No. 2022-08904 ("Judgments").  True and correct copies of the Judgments are attached hereto as **Exhibits K** and **L**, respectively.

**III.  The Liquor License and Movant's Security Interest Thereon**

12.  Pursuant to the terms of the Lease, the Premises was to be used only for the operation of a full service restaurant with liquor license.  Lease, § I.2.  In connection therewith,

Debtor is the licensee of the Liquor License, which was originally sold to Debtor by Movant's principal for the Debtor's use at the Premises and which the Debtor agreed not to "move, transfer, or attempt to move or transfer . . . from the [ ] Premises." Lease, § I.2.1.

13.     In accordance with the Debtor's obligations under the Lease to maintain and preserve the Liquor License with the Premises, free and clear of any liens and encumbrances, Debtor executed and delivered that certain Security Agreement dated September 5, 2003 (the same date as the Original Lease, the "Security Agreement"), granting Movant, as successor in interest to Penn Real Estate Group, Inc., a first security interest in the Liquor License, together with "all proceeds, products, renewals and replacements thereof, accessories thereto and insurance thereon" (the "Security Interest") to secure the Debtor's obligation under the Lease. Security Agreement, ¶¶ 1, 5, a true and correct copy of which is attached hereto as **Exhibit M**.

14.     Pursuant to the terms of the Security Agreement, Debtor was required to join with Movant in executing any such financing statements and continuation statements required under the Uniform Commercial Code (the "UCC") as specified by Movant, which financing statements and continuation statements were to be held in escrow by Movant's attorney (the "Escrowee") "until the occurrence of a Default as defined in paragraph 5 [of the Security Agreement]." Security Agreement, ¶ 2. In total, Movant has filed four (4) UCC-1s pertaining to the Liquor License, which are described in detail herein, and attached as **Exhibits N**, **O**, **P,** and **Q**, respectively..

15.     In addition, pursuant to the terms of the Security Agreement and consistent with the terms of the Lease, the Debtor has a duty to, among other things, "not encumber, move, transfer, or attempt to encumber, move or transfer the [Liquor] License from [the Premises]" (Security Agreement, ¶ 4.C.); and "not assign, sell or transfer the [Liquor License]" (*Id.*, ¶ 4.G.).

16. Further, under the Security Agreement, upon an uncured default by Debtor under the Lease, Movant's remedies are the following:

> 6. Remedies. Upon the occurrence of a Default, [Movant] may exercise all the rights of a secured party under the UCC or any other applicable law including, without limitation, the following: (a) to require Debtor to peacefully deliver possession of the [Liquor License] to [Movant]; (b) to require Debtor to execute such documents as may be required to effectuate a transfer of the [Liquor License] to Movant, including such documents as may be necessary under the rules and regulations of the Pennsylvania Liquor Control Board; (c) to enforce, compromise, assign, make any agreement with respect to, or otherwise deal with, realize on, or prepare for disposition of or dispose of the [Liquor License] as absolute owner thereof for all purposes; and (d) to direct Escrowee to release the financing statements and continuation statements from escrow and to record them.

Security Agreement, ¶ 6.

17. In addition, the Security Agreement further provides that if the Movant is entitled to exercise its rights to confess judgment in ejectment under the Lease, which occurred here as evidenced by the entry of the Judgments, the Debtor authorized, by a Warrant of Attorney, the entry of a confession of judgment against Debtor in any action of replevin or similar action instituted by Movant to obtain possession of the Liquor License upon an occurrence of default, as well as a Power of Attorney, irrevocably appointing Movant as Debtor's attorney-in-fact with full authority to execute the Debtor's name on such forms as the Pennsylvania Liquor Control Board may require to effectuate the transfer of the Liquor License. *Id.* at ¶¶ 7, 8,

18. As a result of Debtor's uncured default, pursuant to the terms of the Security Agreement, Movant directed the Escrowee to perfect its Security Interest by filing a new and updated UCC-1 financing statement with the Pennsylvania Department of State Bureau of Corporations and Charitable Organizations, which was filed October 24, 2022 and assigned File # 20221024040644 ("2022 UCC-1"). A true and correct copy of the 2022 UCC-1 is attached

hereto as **Exhibit N**. The collateral is described in the 2022 UCC-1 as "All of Debtor's interest in and to that certain Pennsylvania Liquor Control Board License No. R-19419 (LID Number 36066) and all renewals, validations, substitutions and replacements thereof as well as proceeds upon the sale or other disposition of the License."

19. This is not the first UCC-1 filed by the Movant. In fact, Movant's security interest in the Liquor License dates back nearly 30 years, to the time of Movant's sale of the Premises to the Debtor in 1993, under a purchase option, which sale included a transfer of Movant's interest, as the then-licensee, in the Liquor License to the Debtor. More specifically, the Premises were originally leased to the Debtor under a prior lease with the Movant that contained a purchase option in favor of the Debtor. In 1993, the Debtor exercised that purchase option, at which time the Premises, and the Movant's interest in the Liquor License, was sold to the Debtor in exchange for, among other things, a purchase option in favor of the Movant and a security interest in the Liquor License (the "1993 Sale"). In connection with the 1993 Sale, the Movant filed its first UCC-1 statement to perfect its Security Interest in the Liquor License ("1993 UCC-1"). A true and correct copy of the 1993 UCC-1 is attached hereto as **Exhibit O**.

20. The Movant thereafter repurchased the Premises from the Debtor on or about September 5, 2003, at which time the parties executed the Original Lease and the Security Agreement, and Movant filed a second UCC-1 ("2003 UCC-1"). A true and correct copy of the 2003 UCC-1 is attached hereto as **Exhibit P**. Accordingly, the parties' relationship dates back 30 years and the pledge of the Security Interest in the Liquor License has been a fundamental and material term of that contractual relationship since the outset.

21. In fact, the Debtor warranted and confirmed that the Security Agreement and the Liquor License continued to be in full force and effect, that there existed no liens or encumbrances

affecting the Liquor License, and that the warranty of attorney and power of attorney set forth in the Security Agreement were restated in full as of the effective date of the Second Amendment. At that time, the Landlord's then current UCC-1 in effect had been on file since March 20, 2017 and assigned File # 2017032001909 ("2017 UCC-1"). A true and correct copy of the 2017 UCC-1 is attached hereto as **Exhibit Q**.

22. Upon information and belief, no other person or entity has a security interest in the Liquor License superior in priority to Movant's Security Interest.

23. In addition, on November 21, 2022, as required by the terms of the Security Agreement, Movant served Debtor with a formal demand to deliver possession of the Liquor License to Movant (the "Demand"), within five (5) days of Debtor's receipt of the Demand, and no later than November 28, 2022. A true and correct copy of the Demand is attached hereto as **Exhibit R**.

**IV.  The Bankruptcy Proceedings**

24. Before any such arrangements for the return of the Liquor License to the Movant could occur, on December 5, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Upon information and belief, no trustee or examiner has been appointed in this chapter 11 case, and the Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

25. On the Petition Date, the Debtor filed a motion seeking to reject the Lease, among others, effective as of the Petition Date (the "Rejection Motion") [ECF No. 7]. Notwithstanding the pre-petition termination of the Lease, the Court entered an order dated December 9, 2022 granting the Rejection Motion as set forth therein, which included the Lease among the schedule

of leases rejected effective December 8, 2022, to the extent not terminated prepetition ("Rejection Order").  *See* ECF No. 36, ¶ 4, Exhibit A at p. 3.

## RELIEF REQUESTED

26. As a result of the Debtor's uncured default, evidenced by the entry of the Judgments by the Pennsylvania Court adjudicating and liquidating of Debtor's monetary obligations to Movant, all of which are secured by Movant's first priority Security Interest in the Liquor License, Movant is entitled to exercise its remedies under Sections 6, 7 and 8 of the Security Agreement to foreclose upon and take title and possession of the Liquor License, including, but not limited to, either through a consensual transfer agreed to by and among the Debtor and the Movant, or by the filing of an action for replevin or otherwise obtaining a confession of judgment against the Debtor for possession of the Collateral pursuant to the terms of the Security Agreement.

27. Because the entry of the Judgments and the Movant's subsequent Demand occurred only days before the Petition Date, no transfer of the Liquor License had yet been completed prior to the Petition Date. As a result of Debtor's bankruptcy filing, therefore, the additional steps necessary to transfer the Liquor License to Movant are now subject to the automatic stay. Specifically, absent relief from the stay, Section 365(a)(1) prohibits the continuation of litigation against the Debtor before the Pennsylvania Courts; Section 362(a)(3) prohibits Movant from seeking possession or control of the Liquor License as property of the estate; and Section 362(a)(6) prevents Movant from foreclosing on its Security Interest.

28. Accordingly, Movant respectfully requests, pursuant to Sections 362(d)(1) and (362(d)(2) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1, as applicable, entry of an order (i) granting Movant relief from the automatic stay to the extent necessary in order to effectuate and finalize the transfer of the Liquor License to Movant, (ii) waiving the 14-day stay

pursuant to Bankruptcy Rule 4001(a)(3); and (iii) granting such other and further relief as this Court deems necessary.

## BASIS FOR REQUESTED RELIEF

**A.    Cause Exists to Grant the Movant Relief From the Stay Under 11 U.S.C. § 362(d)(1)**

29.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).

30.    "Cause" is an intentionally flexible concept requiring the Court to examine the totality of the circumstances to determine whether sufficient cause exists to lift the stay. *In re Gaime*, No. 8:18-bk-05198-RCT, 2019 Bankr. LEXIS 4114 at * 5 (Bankr. M.D. Fla. Sept. 30, 2019) ("The Code does not define 'cause,' so bankruptcy courts must decide the issue on a case by case basis based upon the totality of the circumstances.") (citing *In re Anthony*, No. 8:13-BK-00922-KRM, 2013 Bankr. LEXIS 2653, 2013 WL 3326023, at *2 (Bankr. M.D. Fla. July 1, 2013) and *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001)); *see generally Disciplinary Bd. of the Supreme Court of Penn. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1276-77 (11th Cir. 2013) (noting there is "no set list of circumstances" for a bankruptcy court to consider in evaluating whether cause exists to lift the automatic stay).

31.    Movant, as the moving party, has the initial burden of establishing that cause exists for relief from the automatic stay. *See* 11 U.S.C. § 362(g)(1). *See also In re 412 Boardwalk, Inc.*, 520 B.R. 126, 132 (Bankr. M.D. Fla. 2014). Once Landlord establishes cause for relief from the

stay, the burden of proof shifts to the Debtor on all other issues. *In re Brumlik,* 185 B.R. 887, 889 (Bankr. M.D. Fla. 1995).

32. Cause exists to lift the automatic stay to permit the additional acts necessary to transfer the Liquor License to Movant. The Pennsylvania Court has already entered binding pre-petition Judgments liquidating Debtor's monetary obligations and finding that Movant is entitled to possession of the Premises to which the Liquor License is attached. There is also no dispute that Movant owns and holds the Security Interest, which represents a first priority lien on the Liquor License. Finally, a transfer of the Liquor License other than to the Movant, if legally permissible, would nevertheless be subject to the Security Interest in the hands of a transferee. It would be a more cumbersome process for the license to be relocated away from the Premises which are currently approved by the Commonwealth of Pennsylvania and the municipality of Radnor Township for the use of this specific license.

33. Thus, Movant submits that the most practical solution is for Movant to retake possession of the Liquor License, which was originally owned by Movant and only transferred to Debtor for their use at the Premises. Unless and until Movant is granted stay relief, the value of the Liquor License may deteriorate, and the Liquor License may be subject to adverse regulatory action. The Court should not permit the Liquor License to remain "in limbo" indefinitely, but rather, Movant should be granted stay relief to promptly conclude the litigation in the Pennsylvania Court and effectuate the transfer of the Liquor License to Movant, consistent with the terms of the Lease and the Security Agreement.

B.   **Movant is Entitled to Relief from the Stay Under 11 U.S.C. § 362(d)(2)**

34.   In addition to there being "cause" for relief from the automatic stay, relief is also appropriate pursuant to Section 362(d)(2) of the Bankruptcy Code, which provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay …
>
> (2) with respect to a stay of an act against property under subsection (a) of this section if –
>
> (A) the debtor does not have equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

35.   Section 362(d)(2), therefore, requires the Court to engage in a two part analysis in determining whether to grant relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code.

36.   Addressing the first element of Section 362(d)(2), the Debtor has no equity in the Liquor License because it is no longer operating on the Premises, and the Liquor License is fully encumbered by Movant's first priority Security Interest.[1]

37.   Turning to the second element of Section 362(d)(2) of the Bankruptcy Code, the Supreme Court has explained that the Debtor must show that "the property is essential for an effective reorganization that is in prospect . . . [and] that there must be a reasonable possibility of

---

[1] Movant has not obtained an appraisal or other valuation of the Liquor License. Movant submits the value cannot be greater than the amount of the Judgment because the Debtor is unable to use the Liquor License at the Premises.

a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.*, 44 U.S. 365, 376 (1988) (quotations omitted).

38. The Debtor has not taken any actions in this case indicating that it intends to use the Liquor License as part of its reorganization plan. To the contrary, the Debtor's inclusion of the Lease in the Rejection Order (even though the Lease was terminated pre-petition), indicates that the Debtor does not intend to use the Liquor License because it cannot continue occupying the Premises beyond such termination and/or rejection date. *See* 11 U.S.C. § 365(c)(3); *see also In re Williams*, 139 B.R. 759, 760 (Bankr. M.D. Fla. 1992) (granting landlord stay relief where lease terminated pre-petition).

39. Further, if relief from the stay is not granted, Movant will be materially harmed because it will not be able to re-let the Premises for its intended use—the operation of a full service restaurant with liquor license—which was the fundamental purpose of the Security Interest being granted in the first instance. Movant currently has entered into a letter of intent with a prospective tenant for the lease of the Premises, which lease deal is conditioned upon the Movant delivering possession of the Liquor License to that prospective tenant for its use during the term of the replacement lease. If Movant cannot obtain prompt possession of the Liquor License, it risks not only the loss of this potential new tenant and the ability to mitigate its damages, but it will likely incur other and further damages. To reiterate, the Premises are currently approved by the Pennsylvania Liquor Control Board for the use of the Liquor License, and no other license.

**C.    Rule 4001(a)(3) Relief from 14-day stay is warranted.**

40. Movant further requests relief from the 14-day stay contemplated by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure and requests that the order granting this Motion become effective immediately upon entry.

41. Movant also requests that the first hearing on this Motion be treated as a final hearing, pursuant to Section 362(e)(1) of the Bankruptcy Code.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Movant respectfully requests that the Court (i) enter an order, substantially in the form attached hereto, granting Movant relief from the automatic stay to the extent necessary for Landlord to effectuate and finalize the transfer of the Liquor License, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: January 20, 2023

                                              Respectfully submitted,

/s/ *Michael L. Schuster*
Michael L. Schuster, Fla. Bar No. 57119
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Tel: 303-299-7363
schusterm@ballardspahr.com

         and

Leslie C. Heilman
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: 302-252-4446
heilmanl@ballardspahr.com

*Counsel to 523 Restaurant, LP*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via CM/ECF this 20th day of January, 2023 to all parties registered to receive such notices in this case, including: (i) Debtor through its Attorney, R. Scott Shuker, bankruptcy@shukerdorris.com; (ii) the Office of the United States Trustee through its attorney Audrey M. Aleskovsky, Audrey M. Aleskovsky@usdoj.gov; and (iii) the Official Committee of Unsecured Creditors through its attorneys Mark J. Wolfson, mwolfson@foley.com, and Kevin A. Reck, kreck@foley.com.

/s/ Michael L. Schuster

## INDEX OF EXHIBITS

| A | Lease Agreement dated 9/5/2003 |
| --- | --- |
| B | First Amendment to Lease dated 12/8/2017 |
| C | Second Amendment to Lease dated 4/1/2018 |
| D | Third Amendment to Lease dated 4/9/2020 |
| E | Fourth Amendment to Lease dated 8/12/2020 |
| F | Fifth Amendment to Lease dated 10/21/2020 |
| G | Default Notice dated 10/27/2022 |
| H | Termination Notice dated 11/10/2022 |
| I | Ejection Complaint No. CV-2022-08902 dated 11/22/2022 |
| J | Judgment Complaint No. CV-2022-08904 dated 11/22/2022 |
| K | Judgment for Possession dated 11/30/202 |
| L | Judgment for Damages dated 11/30/2022 |
| M | Security Agreement dated 9/5/2003 |
| N | 2022 UCC-1 |
| O | 1993 UCC-1 |
| P | 2003 UCC-1 |
| Q | 2017 UCC-1 |
| R | Demand Letter dated 11/21/2022 |