# LEASE AGREEMENT

by and between
**PENN REAL ESTATE GROUP, INC., or its assignee**, as Landlord
and
**BERTUCCI'S RESTAURANT CORP.**, as Tenant

523 West Lancaster Avenue
Radnor Township, Delaware County
Pennsylvania

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | DEMISE; USE; LEASE TERM; ETC. | 1 |
| | I.1 Demise | 1 |
| | I.2 Use | 1 |
| | I.2.1 Liquor License | 1 |
| | I.3 Lease Term | 1 |
| | I.4 Options to Extend | 2 |
| | I.5 Delivery of Possession; No Representations | 2 |
| II. | RENT | 2 |
| | II.1 Basic Rent | 2 |
| | II.2 Additional Rent | 3 |
| | II.3 Late Payment Charge | 3 |
| | II.4 Net Lease | 3 |
| | II.5 Manner and Place of Payment | 4 |
| III. | IMPOSITIONS AND OPERATING EXPENSES | 4 |
| | III.1 Impositions | 4 |
| | III.1.1 Tenant's Obligation | 4 |
| | III.1.2 Estimated Payments | 4 |
| | III.1.3 Final Settlement | 5 |
| | III.1.4 Tenant's Business Taxes | 5 |
| | III.2 Operating Expenses | 5 |
| | III.2.1 Tenant's Obligation | 5 |
| | III.2.2 Permits and Licenses | 6 |
| | III.2.3 Trash and Garbage Removal | 6 |
| IV. | ALTERATIONS AND IMPROVEMENTS | 7 |
| | IV.1 Changes, Alterations and Additional Construction | 7 |
| | IV.2 Manner of Completion | 7 |
| | IV.3 Title to Improvements | 8 |
| | IV.4 Landlord's Right to Inspect Construction | 8 |

V.      SURRENDER ................................................................................................ 8

        V.1     Delivery of Possession ................................................................. 8
        V.2     Removal of Personal Property and Certain Fixtures ..................... 8
        V.3     Survival ......................................................................................... 9

VI.     LANDLORD'S SERVICES ........................................................................ 9

        VI.1    No Landlord Services .................................................................... 9

VII.    MAINTENANCE AND REPAIRS .............................................................. 9

        VII.1   Tenant's Obligations ..................................................................... 9
        VII.2   Landlord's Rights .......................................................................... 9
        VII.3   No Landlord Obligations ................................................................ 9

VIII.   ENVIRONMENTAL COMPLIANCE .......................................................... 10

        VIII.1  Compliance by Tenant ................................................................... 10
        VIII.2  Indemnification .............................................................................. 10
        VIII.3  Scope of Obligations ..................................................................... 10
        VIII.4  Continuing Obligations .................................................................. 11
        VIII.5  No Representation by Landlord ..................................................... 11

IX.     MECHANICS' AND OTHER LIENS .......................................................... 11

        IX.1    Mechanic's Liens ........................................................................... 11
        IX.2    Tenant's Removal of Liens ............................................................ 11
        IX.3    Waiver of Mechanic's Liens .......................................................... 12

X.      ASSIGNMENT AND SUBLETTING .......................................................... 12

        X.1     Assignment and Subletting ............................................................ 12
        X.2     Conditions ...................................................................................... 12
        X.3     Permitted Assignment or Subletting .............................................. 13
        X.4     Continuing Liability ......................................................................... 14

XI.     DEFAULT .................................................................................................. 14

        XI.1    Landlord's Right to Perform ........................................................... 14
        XI.2    Events of Default ........................................................................... 15
        XI.3    Remedies ....................................................................................... 16
        XI.4    Remedies Not Exclusive ................................................................ 18
        XI.5    Waiver of Performance .................................................................. 18
        XI.6    Warrant .......................................................................................... 18

XII.    REQUIREMENTS OF LAW ...................................................................... 20

        XII1    Tenant's Compliance ..................................................................... 20

(ii)

XIII.   INSURANCE ............................................................................................. 20

        XIII.1  Tenant Insurance Policies ................................................... 20
        XIII.2  Landlord Insurance Policies ................................................ 22
        XIII.3  Waiver of Subrogation ........................................................ 22

XIV.    DESTRUCTION -- FIRE OR OTHER CAUSES ..................................... 22

        XIV.1   Repair of Destruction ......................................................... 22
        XIV.2   Landlord's Termination Options .......................................... 23
        XIV.3   Tenant's Termination Options ............................................ 23
        XIV.4   Continuance of Lease ......................................................... 23

XV.     CONDEMNATION ...................................................................................... 24

        XV.1    Collection of Award .............................................................. 24
        XV.2    Total Condemnation ............................................................ 24
        XV.3    Partial Taking ...................................................................... 24
        XV.4    Other Compensation Rights ............................................... 25

XVI.    LANDLORD NOT LIABLE FOR INJURY OR DAMAGE ......................... 25

        XVI.1   Release. ............................................................................... 25

XVII.   ACCESS TO DEMISED PREMISES ....................................................... 26

        XVII.1  Access ................................................................................. 26

XVIII.  NO UNLAWFUL OCCUPANCY ............................................................... 26

        XVIII.1 Prohibition ........................................................................... 26

XIX.    INDEMNIFICATION .................................................................................. 26

        XIX.1   Indemnification by Tenant ................................................... 26

XX.     NOTICES .................................................................................................. 26

        XX.1    Requirements ....................................................................... 26

XXI.    QUIET ENJOYMENT ................................................................................ 27

        XXI.1   Covenant .............................................................................. 27

XXII.   ESTOPPEL CERTIFICATE; SUBORDINATION ..................................... 27

        XXII.1  Tenant's Estoppel ............................................................... 27
        XXII.2  Landlord's Estoppel ............................................................ 28
        XXII.3  Subordination of Lease ....................................................... 28

XXII.4   Tenant's Attornment ........................................................ 28
XXII.5   Rights of Mortgagee ........................................................ 29
XXII.6   Mortgagee Liability. ........................................................ 29

XXIII.   MISCELLANEOUS PROVISIONS ........................................................ 29

XXIII.1   Reservation of Rights; Cooperation by Tenant ........................ 29
XXIII.2   Force Majeure ........................................................ 30
XXIII.4   Separability ........................................................ 30
XXIII.5   Counterparts ........................................................ 30
XXIII.6   Headings ........................................................ 30
XXIII.7   Brokerage ........................................................ 30
XXIII.8   Controlling Law ........................................................ 30
XXIII.9   Authority ........................................................ 30
XXIII.10  Exhibits, Gender, Etc. ........................................................ 30
XXIII.11  Entire Agreement ........................................................ 31
XXIII.12  Attorneys' Fees ........................................................ 31
XXIII.13  Waiver of Jury Trial ........................................................ 31

XXIV.   SUCCESSORS AND ASSIGNS; MISC. ........................................................ 31

XXIV.1  Successors and Assigns ........................................................ 31
XVIV.2  Definition of Landlord ........................................................ 31
XVIV.3  Time of Essence ........................................................ 32
XVIV.4  Authority ........................................................ 32

<u>LEASE AGREEMENT</u>

THIS LEASE AGREEMENT ("Lease") made as of the 5th day of September 2003 (the "Execution Date"), by and between Penn Real Estate Group, Inc., or its assignee, ("Landlord"), and Bertucci's Restaurant Corp., a Massachusetts corporation d/b/a Bertucci's, ("Tenant").

W I T N E S S E T H:

WHEREAS, Landlord owns certain real property located at 523 West Lancaster Avenue, Radnor Township, Delaware County, Pennsylvania, as more particularly described on Exhibit "A" attached hereto and made a part hereof, together with the building and improvements thereon (collectively, the "Demised Premises"), which Landlord desires to lease to Tenant, and Tenant desires to lease from Landlord, subject to the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the foregoing, and intending to be legally bound hereby, the parties agree as follows:

I.    DEMISE; USE; LEASE TERM; ETC.

I.1    <u>Demise</u>. Landlord hereby leases the Demised Premises to Tenant and Tenant hereby leases the Demised Premises from Landlord, for the term and upon the covenants, terms and conditions hereinafter set forth, and subject to all applicable zoning, building and other laws, ordinances and other governmental requirements, and to all restrictions, encumbrances, easements (including but not limited to the Mutual Parking and Cross Easement Agreement dated May 25, 1993 ("the Mutual Parking Agreement") which is incorporated herein by reference), and other title exceptions of record or visible upon the land or which a current survey would reveal.

I.2    <u>Use</u>. The Demised Premises may be used only for the operation of a full service restaurant with liquor license and for no other purpose unless otherwise approved by Landlord, subject in all cases to and in accordance with all applicable laws.

I.2.1    <u>Liquor License</u>. Tenant is the licensee of Pennsylvania Restaurant Liquor License No. R-19419 ("the License"). Tenant will not move, transfer, or attempt to move or transfer the License from the Demised Premises.

I.3    <u>Lease Term</u>. The term of this Lease and Tenant's obligation to pay rent in accordance with Article II hereof shall commence on the date Tenant transfers title to the

1

Demised Premises to Landlord pursuant to that certain Agreement of Sale of even date by and between the parties (the "Rent Commencement Date") and shall end at 11:59 p.m. on the day immediately preceding the 20th anniversary of the Rent Commencement Date (the "Initial Term"), unless sooner extended or terminated as hereinafter provided. If the Rent Commencement Date is other than the first day of the month, rent shall be apportioned from the Rent Commencement Date to the end of the month and paid by Tenant on the Rent Commencement Date and thereafter in accordance with paragraph II.1 hereinbelow. The term "Lease Year" is defined to mean each twelve (12) month period beginning on the Rent Commencement Date or any anniversary of the Rent Commencement Date (or any shorter period beginning on the anniversary of the Rent Commencement Date preceding the date of termination or expiration of the Lease Term and ending on such date of termination or expiration of the Lease Term).

I.4     Options to Extend.  Provided no event of default under this Lease on the part of Tenant exists either at the time of exercise or at the time the extended term commences, Tenant may extend the Lease Term for one (1) additional period of five (5) years and then one (1) additional period of four (4) years (the "Option Periods"), on the same terms, covenants, and conditions of this Lease, except that the Basic Rent during the Option Periods will be determined pursuant to Section II.1, below.  Tenant may exercise its options only by giving Landlord written notice at least nine (9) months prior to the expiration of the Initial Term or applicable Optional Period.  The terms "Lease Term" or "Term" mean the Initial Term, and the Option Periods if validly exercised by Tenant.  "Expiration Date" means the final date of the Term (as it may be extended by valid exercise of the Option Periods).

I.5     Delivery of Possession; No Representations.  Tenant acknowledges that it has been in possession of the Demised Premises prior to the date hereof and accepts the Demised Premises in "as is" condition.

II.     RENT

II.1     Basic Rent.  Beginning on the Rent Commencement Date, and on the first day of each calendar month of the Term thereafter, Tenant shall pay to Landlord, annual basic rent ("Basic Rent") as follows:

With respect to Lease Year One, Tenant shall pay a Minimum Annual Rent of $180,000.00 without deduction or set-off of any kind.  Such Minimum Annual Rent shall be payable commencing on the Rent Commencement Date as follows: on the first day of each month, in advance, Tenant shall pay the sum of $15,000.00 representing one-twelfth of the Minimum Annual Rent for Lease Year One.

With respect to each succeeding Lease Year whether during the original term of this Lease or during the Option Periods, Tenant shall pay a Minimum Annual Rent, without deduction or set-off of any kind, equal to 101.5% of the Minimum Annual Rent due for the immediately preceding Lease Year.  On the first day of each month, in advance, Tenant shall pay one-twelfth of the Minimum Annual Rent for the then-current Lease Year.

The Basic Rent shall be paid in the above-mentioned monthly installments payable on the first day of each calendar month during the Lease Term, or in the event that the Rent Commencement Date occurs on a date other than the first day of a calendar month, on the first

2

day of the first calendar month following the Rent Commencement Date. Tenant shall pay a pro rata share of the monthly installment of rent for any period less than a full month with respect to the month in which the Rent Commencement Date or the Expiration Date occurs.

II.2    Additional Rent. From and after the Rent Commencement Date, and throughout the Lease Term, Tenant shall also pay as additional rent (herein called "Additional Rent") all sums, costs, expenses and other payments which Tenant in any of the provisions of this Lease assumes or agrees to pay or discharge, and, in the event of any non-payment thereof (subject to any applicable grace period provided elsewhere herein), Landlord shall have all the rights and remedies provided for herein or by law in the case of non-payment of rent. The Basic Rent, and the Additional Rent are sometimes hereinafter collectively referred to as the "Rent".

II.3    Late Payment Charge. If Tenant fails to pay any installment or other required payment of Rent within ten (10) days following the original due date thereof, such unpaid amount will be subject to a late payment charge equal to five percent (5%) of such unpaid amount. This Late Payment Charge is intended to compensate Landlord for its additional administrative costs resulting from Tenant's failure, and has been agreed upon by Landlord and Tenant, after negotiation, as a reasonable estimate of the additional administrative costs which will be incurred by Landlord as a result of Tenant's failure. The actual cost in each instance is extremely difficult, if not impossible, to determine. This Late Payment Charge will constitute liquidated damages and will be paid to Landlord together with such unpaid amounts. The payment of this Late Payment Charge will not constitute a waiver by Landlord of any continuing default by Tenant under this Lease.

II.4    Net Lease. Except as may be expressly provided to the contrary in this Lease, the Rent payable to Landlord under this Lease shall be absolutely net to Landlord throughout the Term free of all Impositions and Operating Expenses (as such terms are defined in Article III) and all costs, expenses, liabilities, charges or other deductions whatsoever with respect to the Demised Premises and the construction, ownership, leasing, operation, maintenance, repair, rebuilding; use or occupation of the Demised Premises or with respect to any interest of the Landlord in the Demised Premises or this Lease, whether or not specifically identified as the responsibility of Tenant. The obligations of Tenant hereunder shall be separate and independent covenants and agreements, and Fixed Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events, and the obligations of Tenant hereunder shall continue during the Term, unless the requirement to pay or perform the same shall have been terminated pursuant to the provisions of this Lease. Rent and all other sums payable hereunder by Tenant shall be paid without notice or demand, and without setoff, counterclaim, recoupment, abatement, suspension, reduction or defense. This Lease is the absolute and unconditional obligation of Tenant, and the obligations of Tenant under this Lease shall not be affected by any interference with Tenant's use of the Demised Premises for any reason, including, but not limited to, the following: (i) any damage to or destruction of the Demised Premises by any cause whatsoever, (except as otherwise expressly provided in Article XIV hereinbelow), (ii) any Condemnation (except as otherwise expressly provided in Article XV hereinbelow, (iii) the prohibition, limitation or restriction of Tenant's use of the Demised Premises, (iv) any eviction by paramount title or otherwise, (v) any default on the part of Landlord under this Lease or under any other agreement, (vi) any latent or other defect in the Demised Premises. All costs, expenses and obligations of every kind and nature whatsoever relating

3

to the Demised Premises (other than depreciation, interest on and amortization of debt incurred by Landlord, taxes of any kind or nature payable by Landlord on account of rental income received hereunder and costs incurred by Landlord in financing or refinancing the Demised Premises) and the appurtenances thereto and the use and occupancy thereof which may arise or become due and payable with respect to the period which ends on the expiration or earlier termination of the Term in accordance with the provisions hereof (whether or not the same shall become payable during the Term or thereafter) shall be paid by Tenant except as otherwise expressly provided herein. Tenant shall pay all expenses related to the maintenance and repair of the Demised Premises, and taxes and insurance costs. This Lease shall not terminate and Tenant shall not have any right to terminate this Lease, or to abate Rent during the Term, except as expressly provided herein.

II.5 <u>Manner and Place of Payment</u>. Rent shall be paid when due without prior demand (unless such prior demand is expressly provided for in this Lease as to any particular item of Additional Rent), without any deductions or set-offs or counterclaims or other reductions of any nature whatsoever, and shall be paid by Tenant to Landlord at c/o Penn Real Estate Group, Inc., 4427 Spruce Street, Philadelphia, PA 19104, or at Tenant's options by wire transfer of immediately collectable funds to such account as Landlord may designate, or to such other payee and/or at such other place as may be designated from time to time by written notice from Landlord to Tenant.

III.    IMPOSITIONS AND OPERATING EXPENSES

III.1    <u>Impositions</u>.

III.1.1 <u>Tenant's Obligation</u>. Tenant shall pay all taxes, assessments, impositions, excises and other governmental or quasi-governmental charges of every kind and nature and other impositions (collectively, "Impositions"), including without limitation real estate and personal property taxes and general and special assessments assessed, levied, confirmed, or imposed on the Demised Premises during the Lease Term (whether or not now customary or within the contemplation of Landlord and Tenant), together with all water rents, rates and charges, and sewer rents and charges (in each case whether or not based on usage); and all use and occupancy taxes or similar taxes; and all impositions based in whole or in part on Rent, whether made in addition to or in substitution for any other tax other than income taxes. Tenant shall not be required to pay any income tax, or corporate franchise tax, or estate, inheritance or succession taxes, or capital levy of Landlord or any other tax, assessment, charge or levy based on or measured by the capital stock of Landlord; provided that Tenant shall pay any transfer taxes assessed upon this Lease, the leasehold estate created herein, and any memorandum recorded as evidence of this Lease.

III.1.2 <u>Estimated Payments</u>. Promptly upon or prior to the Rent Commencement Date and thereafter in each December during the Term, or as soon after December as practicable, Landlord will give Tenant at least 30 days' prior written notice of its good faith estimate of Impositions payable for the ensuing calendar year. On or before the first day of each month during the ensuing calendar year, Tenant will pay to Landlord one-twelfth (1/12th) of such estimated amounts; however, if such notice is not given in December, Tenant will continue to pay on the basis of the prior year's estimate until thirty (30) days after the month in which such notice is given. If at any time or times it appears to Landlord in good faith that the Impositions payable during the current calendar year will vary from its estimate by more than

4

ten percent (10%), Landlord will, by written notice to Tenant, revise its estimate for such year, and subsequent payments by Tenant for such year will be based upon such revised estimate. If any Imposition is imposed on Landlord but not included in such estimate by Landlord, Tenant shall pay the same to Landlord within thirty (30) days after receipt of each bill therefor.

III.1.3  Final Settlement.  Within one hundred twenty (120) days after the close of each calendar year or as soon after such 120-day period as practicable (the "Accounting Period"), Landlord will deliver to Tenant a statement of Impositions payable for such calendar year prepared by Landlord. Upon request, Landlord will provide to Tenant copies of invoices received by Landlord for Impositions payable in whole or part by Tenant. If such statement shows an amount owing by Tenant that is less than the estimated payments previously made by Tenant for such calendar year, the statement will reflect a credit for the excess by Landlord to Tenant and, if any such excess owed by Landlord to Tenant is not paid within thirty (30) days after the expiration of the Accounting Period, such unpaid amount may thereafter be offset by Tenant against future monthly installments payable by Tenant on account of Tenant's share of Impositions. If such statement shows an amount owing by Tenant that is more than the estimated payments previously made by Tenant for such calendar year, Tenant will pay the deficiency to Landlord within thirty (30) days after the delivery of such statement. Tenant shall have the right, upon reasonable prior notice to Landlord (including a statement of the period to be audited) and at such location in the Philadelphia, Pennsylvania vicinity as Landlord may reasonably designate, to conduct an inspection and audit of Landlord's records pertaining to the amounts charged to Tenant on account of the Impositions. Such audit shall be conducted at Tenant's sole expense; provided, however, in the event any audit by Tenant shall disclose that the amount charged to Tenant for any calendar year exceeds the actual amount owed and paid by Tenant for such year by in excess of five percent (5%), then in addition to refunding such amount in excess of Tenant's actual obligation, Landlord shall pay to Tenant, on demand, the actual and reasonable costs of Tenant's audit (not to exceed $1,000). No audit by Tenant shall be permitted for any calendar year ending three (3) years prior to the initial date of such audit, or upon a contingent fee basis. Neither Landlord not Tenant shall be liable to the other party for the payment of any unpaid amount or the refund of any sum paid which is attributable to any error or omission for charges for any calendar year unless a claim therefor is first made in writing to the other party within three (3) years after the end of the calendar year for which such amount is attributable.

III.1.4  Tenant's Business Taxes.  Tenant shall pay before delinquency any and all taxes, assessments, impositions, excises, fees and other charges levied, assessed or imposed at any time by governmental or quasi-governmental authority upon Tenant or its business operation, or based upon the use or occupancy of the Demised Premises, or upon Tenant's leasehold interest, trade fixtures, furnishings, equipment, leasehold improvements alterations, changes and additions made by Tenant, merchandise and personal property of any kind owned, installed or used by Tenant in, from or upon the Demised Premises. Tenant shall pay, when due and payable, any sales tax, or other tax, assessment, imposition, excise or other charge now or hereafter levied, assessed or imposed upon or against this Lease or any Rent or other sums paid or to be paid, or Tenant's or Landlord's interest in this Lease, any Rent or other sum paid or to be paid hereunder.

III.2    Operating Expenses.

III.2.1  Tenant's Obligation.  Tenant shall pay directly to the providers of such goods and services, on and after the Lease Commencement Date, all costs and expenses

5

attributable to or incurred in connection with the ownership, use, occupancy, maintenance and repair of the Demised Premises and all buildings, fixtures, improvements and equipment thereon (including without limitation during all periods of construction and reconstruction) (collectively "Operating Expenses") including without limitation:

(i)      all utilities provided to or consumed at the Demised Premises, such as natural gas, steam, electricity, fuel oil, telephone, water, sewer, cable television, data transmission and other utility services, together with all costs of extending and connecting the same to the Demised Premises and for the reservation and/or activation of service;

(ii)      all maintenance and repair of the Demised Premises including, without limitation, all mechanical, electrical, HVAC, telecommunications, water, sewer and other utility lines, fixtures and apparatus located on the Demised Premises and all security systems within the Demised Premises, and all structural and nonstructural components of the Demised Premises and of all buildings and improvements erected the Demised Premises, both interior and exterior;

(iii)      all costs of maintaining, repairing, replacing and otherwise caring for the driveways, parking areas, including but not limited to the Parking Area as defined in the Mutual Parking Agreement ("the Parking Area"), sidewalks and landscaping located on the Demised Premises;

(iv)      all insurance premiums (including those incurred by Landlord in accordance with XIII.2 below) relating to the Demised Premises and all buildings, improvements, fixtures, equipment and furnishings thereon, including fire and extended coverage, liability insurance, rent-loss/business interruption insurance and all-risk insurance;

(v)      the costs and expenses of all capital and non-capital improvements and repairs (whether structural or nonstructural) required to maintain the Demised Premises and all buildings, improvements, fixtures, equipment and furnishings thereon in good order and repair or required by any governmental or quasi-governmental authority having jurisdiction over the Demised Premises; and

(vi)      the costs and expenses of complying with all present and future governmental requirements of any nature applicable to the Demised Premises and all buildings, improvements, fixtures, equipment and furnishings thereon or any part thereof.

III.2.2  Permits and Licenses.  Tenant will procure, or cause to be procured, and keep in effect without lapse or interruption, without cost to Landlord, any and all necessary permits, licenses, or other authorizations required for the lawful use and occupancy of the Demised Premises, for the operation of Tenant's business, and for the proper construction, installation and maintenance of all work, alterations and improvements to or upon the Demised Premises performed by or on behalf of Tenant.

III.2.3  Trash and Garbage Removal.  Tenant shall be solely responsible for

6

trash and garbage removal from the Demised Premises including obtaining and placing all trash and garbage in containers suitable for such purpose.

## IV.    ALTERATIONS AND IMPROVEMENTS

IV.1    Changes, Alterations and Additional Construction.  Except as otherwise expressly provided herein, Tenant covenants and agrees that no additional building or other structure or improvement shall be commenced, erected or maintained on the Demised Premises; no demolition to or expansion of or addition to or material change or alteration in or to the building included in the Demised Premises or other structure, including but not limited to pylon signs, or improvement shall be commenced, erected or maintained on the Demised Premises; no wall, fence, sign or exterior lighting facility which would materially change the exterior appearance of the Demised Premises shall be commenced, erected or maintained on the Demised Premises; no collected surface waters shall be discharged from the Demised Premises except in accordance with the applicable municipal ordinances; no additional driveway, roadway, or parking area, or loading, service or storage facility shall be commenced, constructed or maintained on the Demised Premises; no grading or landscaping of the Demised Premises (all of the foregoing being herein collectively called "Alteration"), unless and until in each instance Tenant shall have submitted to Landlord plans, specifications and any other material reasonably deemed necessary by Landlord depicting the proposed Alteration (collectively, "Tenant's Plans"), and Landlord shall have approved in writing Tenant's Plans. Such approval shall not be unreasonably withheld, conditioned or delayed provided, however, that Landlord shall have the right to withhold, condition or delay approval, in Landlord's sole discretion, in the case of expansion of the building as it currently exists on the Demised Premises.  Tenant shall, in each instance, provide Landlord written notice of such intended changes, alterations or additions at least thirty (30) days prior to the commencement thereof, with reasonable plans and specifications detailing the scope and nature of such changes, alterations or additions.  Landlord acknowledges that, from time to time, Tenant may desire to renovate, upgrade, modify, redecorate or otherwise alter the appearance of Tenant's building to conform to Tenant's (or its permitted assignee's) prototype restaurant building appearance, for uniformity within Tenant's (or its permitted assignee's) restaurant chain ("Chain-wide Alterations").  Subject to Tenant's compliance with all applicable laws and to such requirements as Landlord may reasonably impose to comply with private or public restrictions on the Demised Premises, Landlord shall not unreasonably withhold its approval of such Chain-wide Alterations to the building and improvements included in the Demised Premises.  In the case of the construction of interior, non-structural alterations which are in an amount not to exceed One Hundred Thousand and 00/100 Dollars ($100,000.00) per annum, and which comply with all applicable governmental regulations, the requirements of this Article IV shall not apply and Tenant may make such alterations without the submission of Tenant's Plans or the receipt of Landlord's approval.

IV.2    Manner of Completion.  All Alterations shall be constructed and completed in a good and workmanlike manner, employing materials of good quality, and substantially in compliance with the plans and specifications therefor approved by Landlord and in compliance with all applicable permits and authorizations and building and zoning laws and with all other applicable laws, ordinances, orders, rules, regulations and requirements of all federal, state, county and municipal governments, departments, commissions, boards and offices, and in compliance with the terms and conditions of this Lease.  Upon completion of any Alterations, the same shall be deemed a part of the Demised Premises for all purposes under this Lease. Promptly upon the completion of construction of each Alteration, Tenant shall deliver to

7

Landlord a complete set of the "as built" drawings thereof.

IV.3    Title to Improvements.  Title to all other leasehold improvements (excluding Tenant's trade fixtures, personal property and equipment) constructed by Tenant at Tenant's expense, when made, erected, constructed, installed or placed upon the Demised Premises shall remain the property of Tenant during the continuance of this Lease, but upon the expiration or sooner termination of this Lease title thereto (with the exception of Tenant's removable trade fixtures, trade equipment and personal property) shall automatically and without need for further documentation vest in Landlord (provided that Tenant agrees to execute, deliver and record such documents as Landlord reasonably may request to confirm such vesting of title) and belong exclusively to Landlord without any interest on the part of Tenant and without further action on the part of either party and without cost or charge to Landlord, and upon such expiration or sooner termination of this Lease all of such leasehold improvements shall be surrendered to Landlord in the condition in which Tenant has agreed to maintain them pursuant to the provisions of this Lease.

IV.4    Landlord's Right to Inspect Construction.  Landlord and Landlord's agents shall have the right from time to time during the course of construction of Tenant's Work and any Alteration to inspect the work being done to ensure that the same is being constructed in accordance with the approved plans therefor and in compliance with the requirements of this Lease.

V.    SURRENDER

V.1    Delivery of Possession.  Tenant shall, at the expiration of the Lease Term or upon any earlier termination of this Lease, or upon any re-entry by Landlord upon the Demised Premises pursuant to Article XI hereof, surrender up the Demised Premises and all Tenant Improvements (with the exception of Tenant's trade fixtures, personal property and equipment) and Alterations into the possession and use of Landlord without fraud or delay and in the condition in which Tenant has agreed to maintain them pursuant to the provisions of this Lease, free and clear of all lettings and occupancies except as agreed to herein, and free and clear of all liens and encumbrances other than those, if any, existing at the date of this Lease, or caused by Landlord.

V.2    Removal of Personal Property and Certain Fixtures.  Any and all personal property, equipment and trade fixtures furnished or installed by or at the expense of Tenant which does not constitute all or any part of a building structure or building operations systems or site improvements (e.g. HVAC systems, utility systems), may be removed by Tenant on or before the expiration of the Lease Term or (subject to the obligation to pay rent as set forth below) within thirty (30) days after the earlier termination of this Lease Term (the "Removal Period").  Any damage to the Demised Premises caused by the removal of personal property and trade fixtures shall be repaired at the sole cost and expense of Tenant.  In no event, however, shall Tenant be permitted to remove or demolish the building, building operation systems or site improvements located on the Demised Premises.  Unless the removals required under this Paragraph V.2 are concluded by the date of the expiration of the Lease Term or date of sooner termination thereof, Tenant shall pay to Landlord Rent at the rate prevailing during the immediately-preceding Term until Tenant completes such removals, and all other terms hereof shall continue (excepting Tenant's renewal options); but if such removals continue after the Removal Period the rate of such Rent shall be the greater of the rate prevailing during the immediately - preceding Term or the fair market rental value of the Demised Premises,

8

whichever is greater, until such removals are completed.  Any such trade fixtures, equipment or personal property of Tenant which remains in or on the Demised Premises Removal Period, may, at the options of Landlord, be deemed to have been abandoned by Tenant in which case the same may be retained by Landlord as Landlord's property or be disposed of, without accountability, in such manner as Landlord may see fit, or Landlord may require Tenant to remove the same at Tenant's expense.

V.3    Survival. The rights of Landlord under this Article V shall survive any expiration or termination of this Lease.

## VI.    LANDLORD'S SERVICES

VI.1    No Landlord Services. It is expressly understood and agreed that Landlord shall have no obligation to supply to Tenant any utility, security or other services of any nature with respect to the Demised Premises or Tenant's use thereof; and Tenant shall be solely responsible to obtain and to pay the costs of any such services as Tenant shall desire.  Without limiting the foregoing, Landlord shall not be liable for any loss or damage suffered by Tenant by failure to supply security services, or for any loss attributable to such services when they are supplied, no matter how caused.

## VII.    MAINTENANCE AND REPAIRS

VII.1    Tenant's Obligations. Tenant will, at its sole cost and expense, keep the Demised Premises and all buildings and improvements thereon and the Parking Area in good order and condition, reasonable wear and tear and damage by casualty excepted.  All repairs, replacements and renewals necessary to comply with the foregoing shall be at least equal in quality and class to the original work.  In addition, Tenant shall maintain (including all required repairs and replacements) Tenant's pylon signs, sign faces, awnings, lighting and structures, in good condition and appearance.

VII.2    Landlord's Rights. If any repairs required to be made by Tenant are not commenced within thirty (30) days after written notice delivered to Tenant by Landlord and thereafter diligently prosecuted to completion promptly (except that for emergency repairs, Landlord shall be required only to give such notice as is possible under the circumstances), Landlord may, at its options, make such reasonable repairs, without liability to Tenant for any loss or damage which may result to its business by reason of such repairs and Tenant shall pay to Landlord, upon demand, as Additional Rent hereunder, the cost of such repairs plus interest at the variable rate of three percent (3%) in excess of the per annum rate announced from time to time as the prime rate of Wachovia Bank, or its successor, as such prime rate may be increased or decreased from time to time (the "Interest Rate"), for the period that said repair costs remain unpaid.

VII.3    No Landlord Obligations. Landlord shall not be required to perform or pay for any maintenance, or make or pay for any repairs, replacements or improvements of any kind whatsoever to the Demised Premises or any part thereof during the term of this Lease, regardless of the cause necessitating any such maintenance, repairs, replacements or improvements (excepting, nevertheless, any repairs or replacements required by the negligent acts or omissions of Landlord or any party for whose conduct Landlord is legally responsible, which repairs or replacements shall be made by Landlord at its sole cost and expense), in recognition that this Lease shall be net in all respects to Landlord.

9

## VIII.    ENVIRONMENTAL COMPLIANCE

VIII.1   Compliance by Tenant.  Except in accordance with Environmental Laws, and except in quantities and types typically used in operation of a full service restaurant, neither Tenant, nor any employee, agent, officer, director or other person or party subject to the control or supervision of Tenant or its assignees or sublessees, nor anyone with permission of any of the foregoing (affirmatively or by acquiescence and a reasonable opportunity to prevent such action) or any of its or their assignees or sublessees (collectively, "Tenant Parties") shall intentionally or unintentionally generate, use, store, handle, release, spill or discharge any Hazardous Materials (as hereinafter defined).   The Tenant Parties' failure to abide by the terms of this paragraph shall be restrainable by injunction or other equitable remedy, in addition to all other remedies available to Landlord hereunder or at law or in equity.  For purposes of this Lease, "Hazardous Materials" shall include, without limitation, any flammable explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances, or related materials, asbestos, petroleum, or any other substance or material as defined by any federal, state or local environmental law, ordinance, rule, or regulation including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Section 9601 et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Section 1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Section 9601 et seq.), the Pennsylvania Hazardous Sites Cleanup Act, Act of October 18, 1988, P.L. No 108; the Pennsylvania Solid Waste Management Act, 35 P.S. Sections 6018.101 et seq.; the Pennsylvania Clean Streams Law, 35 P.S. Sections 691.1 et seq., and any other federal, state and local laws, statutes, regulations, codes or judicial and administrative interpretations thereof, and in the regulations adopted and publications promulgated pursuant thereto ("Environmental Laws").

VIII.2   Indemnification.  Tenant is liable for, and shall indemnify, defend and save harmless the Landlord from all fines, suits, judgments, procedures, claims, actions, damages and liabilities of any kind (including reasonable attorneys' fees, court costs, expert and consultant fees and expenses) arising out of or in any way connected with the generation, use, storage or handling by the Tenant or any of the Tenant Parties of, or any spills, releases or discharges by the Tenant of, Hazardous Materials at the Demised Premises during the Lease Term or arising out of the Tenant's failure to comply with this Article VIII.  Landlord is liable for, and shall indemnify, defend and save harmless the Tenant from all fines, suits, judgments, procedures, claims, actions, damages and liabilities of any kind (including reasonable attorneys' fees, court costs, expert and consultant fees and expenses) arising out of or in any way connected with the generation, use, storage or handling by the Landlord or any party for whose conduct Landlord is legally responsible, or any spills, releases or discharges by the Landlord of, Hazardous Materials at the Demised Premises during the Lease Term or arising out of the Landlord's failure to comply with this Article VIII.  Landlord and Tenant shall reasonably cooperate, in good faith, in connection with any litigation or administrative proceedings with any third parties arising out of any environmental condition of the Demised Premises.

VIII.3   Scope of Obligations.  The Tenant's obligations and liabilities under this Article VIII shall be in addition to and not in limitation of those contained elsewhere in this Lease, shall survive the Lease Term and the expiration or termination of this Lease, and shall continue so long as the Landlord may remain responsible for any releases, spills or discharges of Hazardous Materials at or from the Demised Premises which occur by reason of any action or omission by Tenant, the Tenant Parties, or their respective officers, employees, agents,

10

contractors or invitees. The obligations imposed upon Tenant and the Tenant Parties under this Article VIII shall not apply with respect to any Hazardous Materials released upon the Demised Premises by the separate acts of Landlord, its agents or employees, without the consent of Tenant or its assignee(s).

VIII.4    Continuing Obligations. If the Lease Term expires or terminates before the Tenant has fully performed any of its remediation obligations under this Article VIII, then, at the Landlord's sole option, Tenant shall remain liable to Landlord for an amount, as damages for the diminished use and leasability of the Demised Premises, equal to the then-fair market rental value of the Demised Premises (without deduction for any impairment resulting from contamination by Hazardous Materials for which any of the Tenant Parties are responsible hereunder, but less any rentals actually received by Landlord acting in good faith in an effort to reasonably mitigate its damages) from the date of the termination or expiration of the Lease Term and until such time as the Tenant has fully performed all of its obligations under this Article VIII.

VIII.5    No Representation by Landlord. Except as expressly provided herein, Landlord makes no representation or warranty, and undertakes no responsibility to Tenant with respect to the environmental condition of the Demised Premises.

IX.    MECHANICS' AND OTHER LIENS

IX.1    Mechanic's Liens. Tenant will pay or cause to be paid all costs for any work done by it or caused to be done by it, its sublessees, successors and assigns, in or to the Demised Premises, and for all materials furnished for or in connection with such work. Tenant will indemnify Landlord against and hold Landlord harmless from all liabilities, liens, claims, and demands on account of such work. Tenant shall have no power to do any act or make any contract which may create or be the foundation for any lien, mortgage or other encumbrance upon the reversion or other estate of Landlord, or upon any interest of Landlord in the Demised Premises; it being agreed that should Tenant cause any Alterations or other work or improvements to be made to the Demised Premises or cause any labor to be performed or material to be furnished therein, thereon or thereto, neither Landlord nor the Demised Premises shall under any circumstances be liable for the payment of any expense incurred or for the value of any work done or material furnished, but all such Alterations or other work or improvements, and labor and material, shall be made, furnished and performed at Tenant's expense, and Tenant shall be solely and wholly responsible to contractors, laborers and materialmen furnishing and performing such labor and material. Notwithstanding the foregoing, Tenant shall be permitted to lease or create a security interest in Tenant's personal property and trade fixtures furnished or installed by or at the expense of Tenant which do not constitute all or any part of a building structure or building operations systems or site improvements (e.g. HVAC systems, utility systems), and which security interest does not purport to encumber Tenant's leasehold interest hereunder.

IX.2    Tenant's Removal of Liens. If, because of any act or omission (or alleged act or omission) of Tenant, any mechanic's or other lien, charge or order for the payment of money shall be filed against the Demised Premises, or against Landlord, or any conditional bill of sale, chattel mortgage, security agreement or financing statement shall be made or filed for or affecting any equipment or any materials used in the construction or alteration of, or installed in, any such building or improvement (whether or not such lien, charge or order, conditional bill of sale, chattel mortgage, security agreement or financing statement, is valid or enforceable as

11

such), Tenant shall, at its own cost and expense, cause the same to be canceled and discharged of record or bonded off within thirty (30) days after the filing of such lien. If Tenant desires to contest such a lien, it will furnish Landlord, within such thirty day period, security reasonably satisfactory to Landlord of at least one hundred fifty percent (150%) of the amount of the lien, plus estimated costs and interest. If a final nonappealable judgment establishing the validity or existence of a lien for any amount is entered, Tenant will satisfy it at once. If Tenant fails to pay any charge for which such a lien has been filed, and does not give Landlord such security, Landlord may, at its options, pay such charge and related costs and interest, and the amount so paid, together with reasonable attorneys' fees incurred in connection with it, will be immediately due from Tenant to Landlord as Additional Rent. Nothing contained in this Lease is to be construed as the consent or agreement of Landlord to subject Landlord's interest in the Demised Premises to liability under any lien law.

IX.3    Waiver of Mechanic's Liens. Except in the event of an emergency (in which case Tenant will comply with the requirements of this Section IX.3 as soon as is practicable), at least five (5) days prior to the commencement of any repairs, alterations, additions, improvements, or installations in or to the Demised Premises, by or for Tenant, Tenant will give Landlord written notice of the proposed work and the names and addresses of the general contractor supplying labor and materials for the proposed work and within thirty (30) days of the completion of such work, shall deliver to Landlord time-stamped copies of duly recorded waivers of mechanic's liens executed by the general contractor and such other contractors and vendors supplying such labor or materials as Landlord may reasonably request.

X.    ASSIGNMENT AND SUBLETTING

X.1    Assignment and Subletting. Tenant shall not transfer, assign, sublet, enter into license or concession agreements or mortgage or hypothecate this Lease or the Tenant's interest in and to the Demised Premises or any part thereof (herein collectively referred to as "Transfer") without first obtaining in each and every instance the prior written consent of Landlord, which may not be unreasonably withheld or conditioned by Landlord.

X.2    Conditions. Each Transfer under Section X.1 above shall be subject to compliance with the following:

(a)    Each such assignment or subletting shall be subject to all of the terms, conditions, restrictions and covenants contained herein, including the use limitations of this Lease.

(b)    Notwithstanding anything to the contrary contained or implied herein, Tenant (and any successor(s) or assignee(s) of Tenant) shall have no right to assign this Lease or to sublet all or any part of the Demised Premises at any time when an Event of Default shall have occurred and remains uncured.

(c)    In addition to any other considerations which Landlord may, in its reasonable discretion, deem relevant in the evaluation of any proposed Transfer, Landlord may consider (1) the financial condition and financial statements of the proposed transferee or sublessee, and (2) the reputation of the proposed transferee or sublessee, including without limitation whether the experience and financial resources of such transferee or sublessee (without regard to the continued liability of the transferor or sublessor under this Lease) will likely be sufficient to assure the performance of this Lease by such proposed transferee or

12

likely be sufficient to assure the performance of this Lease by such proposed transferee or sublessee and for the continued operation of a bona fide permitted business enterprise at the Demised Premises with a reasonable likelihood of avoiding a business failure, (3) whether such proposed transferee or sublessee has been or is then the subject of any criminal felony conviction or is under any legal disability; and (4) and the impact of the proposed Transfer upon Landlord's adjoining property.

(d)     In each instance, Tenant (or, after assignment or sublease, its assignee(s) or sublessee(s)) shall furnish to Landlord, at least thirty (30) days prior to such assignment or sublet, the following: (i) the name and address of the proposed assignee or subtenant; (ii) a copy of the proposed assignment or sublease; (iii) reasonably complete information about the nature, business and business history of the proposed assignee or subtenant, and its proposed use of the Demised Premises; and (iv) banking, financial, or other credit information, and references about the proposed assignee or subtenant reasonably sufficient to inform Landlord of the financial responsibility and character of the proposed assignee or subtenant.

(e)     In the event of any assignment of this Lease by Tenant to any assignee or successor to Tenant, and as a condition to the effectiveness of such assignment, the transferee shall execute and deliver to Landlord an assumption of all of Tenant's obligations under the Lease.

(f)     Payment of rentals due hereunder by any party other than the Tenant named herein, and Landlord's acceptance of such payment, shall not be deemed to act as a consent to the assignment of this Lease or to the subletting of the whole or any part of the Demised Premises to such party, to the extent such consent may be required hereunder; nor shall such payment or acceptance relieve Tenant of its obligation to pay the rentals provided herein for the full term of this Lease.

(g)     In any case in which Landlord's approval is required under this Article X, if Landlord shall have failed to notify Tenant of Landlord's approval or disapproval within fifteen (15) business days after written request therefor is received by Landlord, then such approval shall be deemed to have been granted.  A good faith written request for additional information shall toll the running of such time for a response, from the date of the issuance of such request until such request is reasonably complied with, but in the event of non-compliance with such request Landlord shall be deemed to have given its disapproval.

(h)     Consent by Landlord to any Transfer shall not constitute a waiver of the necessity for such consent to any subsequent Transfer.

X.3     Permitted Assignment or Subletting.  Notwithstanding anything in this Lease to the contrary, Tenant shall have the right to assign this Lease or to sublet the entire Demised Premises, whether expressly or by operation of law (including without limitation by merger, consolidation, reorganization or the like) without Landlord's consent, as follows:

1.  To any corporation or entity which is now or hereafter becomes a parent, subsidiary or affiliate of Tenant;

2.  To any corporation or entity resulting from a merger or consolidation, or the formation of a joint venture or partnership, which affects a substantial portion (forty-nine

13

percent (49%) or more) of the locations of Tenant in the eastern United States.

        3.    To any entity which purchases or acquires a substantial portion (forty-nine percent (49%) or more) of Tenant's locations in the eastern United States; or

        4.    By a transfer of forty-nine percent (49%) or more of Tenant's stock. In no event shall any officer, director or shareholder of Tenant at any time be liable for any of Tenant's obligations under this Lease except to the extent such officer, director or shareholder shall be an assignee of this Lease or shall have executed a separate instrument of guaranty of this Lease. Any assignment pursuant to this Section X.3 shall not be subject to the conditions set forth in subsections X.2(c)- (f), but shall be subject to subsections X.2(a) and (b).

        X.4    <u>Continuing Liability</u>. Notwithstanding any assignment or subletting or re-assignment or re-subletting pursuant to this Article X (whether or not expressly permitted hereunder), Tenant (and any guarantor) shall remain fully and primarily liable for the performance of all the terms, conditions and obligations to be performed by Tenant under this Lease, including, but not limited to, the payment to Landlord of all payments due or to become due to Landlord under this Lease. Landlord may exercise all rights and remedies solely against the Tenant (and any guarantor) pursuant to Article XI hereof, or against Tenant and any one or more assignees or sublessees, as Landlord may determine in its sole discretion; and Tenant (and any guarantor) shall have no right to join any assignee or subtenant or other third party in any suit brought by Landlord against Tenant under Article XI hereof; provided that Tenant (and any guarantor) shall have the right to maintain such separate actions against any such assignee or sublessee as Tenant (and any guarantor) may desire, but Tenant shall not seek to consolidate the same with Landlord's action against Tenant. Notwithstanding any provision in any such assignment to the contrary, and notwithstanding any consent by Landlord to said assignment (unless Landlord shall specifically consent to Tenant's right to resume or recover possession), thereafter, Landlord may exercise against any assignee or subtenant all the rights and remedies herein provided upon default, without notice of any kind to Tenant except as may otherwise be required by any law or applicable rule of procedure, but Tenant (and any guarantor) shall remain liable, jointly and severally, with any assignee or subtenant for the performance of all of the covenants, conditions and agreements of this Lease, including, but not being limited to, the payment to Landlord of all payments due or to become due to Landlord under this Lease.

XI.    DEFAULT

        XI.1    <u>Landlord's Right to Perform</u>.

        (a)    If Tenant fails (i) to pay when due amounts payable under this Lease to any third party and such default continues for ten (10) days after notice from Landlord (provided, however, that Landlord shall not be required to give such notice more than two (2) times in any twelve (12) month period and thereafter such failure shall be a default and an Event of Default without requiring such notice), or (ii) to perform any of its other obligations under this Lease within the time permitted for its performance, then Landlord, after thirty (30) days' prior written notice to Tenant unless, by the nature of such default, the same cannot reasonably be cured within such 30 day period and provided Tenant shall commence to cure such default within such 30 day period  and shall diligently and continuously prosecute such cure to completion within a reasonable time thereafter (or, in case of any emergency causing an imminent threat to the safety of persons or the security of the Demised Premises, upon such

14

notice or without notice, as may be reasonable under the circumstances) and without waiving any of its rights under this Lease, may (but will not be required to) pay such amount or perform such obligation.

(b)    All amounts so paid by Landlord and all costs and expenses incurred by Landlord in connection with the performance of any such obligations (together with interest at the Interest Rate from the date of Landlord's payment of such amount or incurring of each such cost or expense until the date of full payment of such amount or incurring of each such cost or expense until the date of full repayment by Tenant) will be payable by Tenant to Landlord on demand and shall constitute Additional Rent.

XI.2    Events of Default. At the options of Landlord, and in addition to any other events expressly designated to be events of default hereunder, the occurrence of any of the following events shall constitute an event of default by Tenant (which, together with all such other defaults, are sometimes herein called an "Event of Default"):

(a)    Tenant defaults in the due and punctual payment of Rent, and such default continues for ten (10) days after notice from Landlord; provided, however, Tenant will not be entitled to more than two (2) notices for default in payment of Rent during any twelve (12) month period, and if, within twelve (12) months after the second (2d) such notice, any Rent is not paid when due, an event of default will have occurred without further notice;

(b)    Tenant vacates or abandons the Demised Premises (which shall not include the cessation of business operations at the Demised Premises at any time when Tenant is not expressly obligated to conduct such business under this Lease if Tenant faithfully performs all of Tenant's maintenance and other obligations hereunder) and repeatedly and persistently fails to perform Tenant's maintenance and other obligations hereunder with respect to the upkeep of the Demised Premises;

(c)    This Lease or the Demised Premises or any part of the Demised Premises are taken upon execution or by other process of law directed against Tenant, or are taken upon or subjected to any attachment by any creditor of Tenant or claimant against Tenant, and such attachment is not discharged within thirty (30) days after its levy;

(d)    Tenant or any guarantor of Tenant's obligations under this Lease files a petition in bankruptcy or insolvency or for reorganization or arrangement under the bankruptcy laws of the United States or under any insolvency act of any state, or is dissolved, or makes an assignment for the benefit of creditors;

(e)    Involuntary proceedings under any such bankruptcy laws or insolvency act or for the dissolution of Tenant or any guarantor are instituted against Tenant or any guarantor, or a receiver or trustee is appointed for all or substantially all of Tenant's or any guarantor's property, and such proceeding is not dismissed or such receivership or trusteeship is not vacated within ninety (90) days after such institution or appointment;

(f)    Tenant makes any Transfer of this Lease or of all or any portion of the Demised Premises in violation of this Lease;

(g)    Tenant breaches any of the other agreements, terms, covenants, or conditions which this Lease requires Tenant to perform, and such breach continues for a period

15

of thirty (30) days after notice by Landlord to Tenant unless, by the nature of such default, the same cannot reasonably be cured within such 30-day period and in the latter event provided Tenant shall commence to cure such default within such 30-day period and shall diligently and continuously prosecute such cure to completion within a reasonable time thereafter.

      XI.3   Remedies. If any one or more Events of Default occurs, then Landlord may, at its election:

      (a)   Give Tenant written notice of its intention to terminate this Lease on the date of such notice or on any later date specified in such notice, and, on the date specified in such notice, Tenant's right to possession of the Demised Premises will cease and the Lease will be terminated (except as to Tenant's liability set forth in this subparagraph (a) and any other obligation of Tenant which survives termination of the Lease), as if the expiration of the term fixed in such notice were the end of the Term. If this Lease is terminated pursuant to the provisions of this subsection (a), Tenant (and any guarantor) will remain liable to Landlord for damages in an amount equal to the Rent and other sums owing and unpaid as of the date of such termination and all Rent and other sums which would have been owing by Tenant under this Lease for the balance of the Term if this Lease had not been terminated, less the net proceeds, if any, of any reletting of the Demised Premises by Landlord subsequent to such termination, after deducting all Landlord's reasonable expenses in connection with such reletting, including without limitation, the expenses set forth in subparagraph (b)(ii) hereinbelow. Landlord will be entitled to collect such damages from Tenant monthly on the days on which the rent and other amounts would have been payable under this Lease if this Lease had not been terminated and Landlord will be entitled to receive such damages from Tenant on each such day. Alternatively, at the options of Landlord, if this Lease is terminated, Landlord will be entitled to recover from Tenant (i) the worth at the time of award of the unpaid Rent earned at the time of termination; (ii) the worth at the time of award of the unpaid Rent which would have been earned after termination until the time of award to the extent the same exceeds the amount of such rent loss that Tenant proves could reasonably have been avoided; (iii) the worth at the time of award of the amount by which the unpaid Rent for the balance of the Term of this Lease after the time of award exceeds the amount of such rent loss that Tenant proves could reasonably be avoided. The "worth at the time of award" of the amount referred to in clauses (i) and (ii) is computed by allowing interest at the lesser of the Interest Rate, as such rate exists as of the date of such calculation, or the highest rate permitted by law without violation of any applicable usury laws. The worth at the time of award of the amount referred to in clause (iii) is computed by discounting such amount at the discount rate of the Federal Reserve Bank of Philadelphia, Pennsylvania at the time of award.

      (b)   (i)   Without demand or notice, reenter and take possession of the Demised Premises or any part of the Demised Premises; and repossess the Demised Premises and those claiming through or under Tenant; and, remove the effects of both or either, without being deemed guilty of any manner of trespass and without prejudice to any remedies for arrears of rent or preceding breach of covenants or conditions. If Landlord elects to reenter, as provided in this subsection (b) or if Landlord takes possession of the Demised Premises pursuant to legal proceedings or pursuant to any notice provided by law, Landlord may, from time to time, without terminating this Lease, relet the Demised Premises or any part of the Demised Premises, either alone or in conjunction with other portions of the building of which the Demised Premises are a part, in Landlord's or Tenant's name but for the account of Tenant, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the term of this Lease) and on such terms and

16

conditions (which may include concessions of free rent, and the alteration and repair of the Demised Premises) as Landlord, in its commercially reasonable discretion, may determine. Landlord may collect and receive the rents for the Demised Premises. Landlord will not be responsible or liable for any failure to relet the Demised Premises, or any part of the Demised Premises, or for any failure to collect any rent due upon such reletting. No such reentry or taking possession of the Demised Premises by Landlord will be construed as an election on Landlord's part to terminate this Lease unless a written notice of such intention is given to Tenant. No notice from Landlord under this Lease or under a forcible entry and detainer statute or similar law will constitute an election by Landlord to terminate this Lease unless such notice specifically says so. Landlord reserves the right following any such reentry or both, to exercise its right to terminate this Lease by giving Tenant such written notice, and in that event the Lease will terminate as specified in such notice.

(ii)    If Landlord elects to take possession of the Demised Premises according to this subparagraph (b) without terminating the Lease, Tenant will pay Landlord (A) the Rent and other sums which would be payable under this Lease if such repossession had not occurred, less (B) the net proceeds, if any, of any reletting of the Demised Premises after deducting all of Landlord's reasonable expenses incurred in connection with such reletting, including without limitation, all repossession costs, brokerage commissions, legal expenses, attorneys' fees, expenses of employees, alteration, remodeling, repair costs, and expenses of preparation for such reletting. If, in connection with any reletting, the new lease term extends beyond the existing Term or the demised premises covered by such reletting include areas which are not part of the Demised Premises, a fair apportionment of the rent received from such reletting and the expenses incurred in connection with such reletting will be made in determining the net proceeds received from such reletting. Tenant will pay such amounts to Landlord monthly on the days on which the Rent and all other amounts owing under this Lease would have been payable if possession had not been retaken and Landlord will be entitled to receive the Rent and other amounts from Tenant on each such day.

(iii)    If Landlord elects to take possession of the Demised Premises without terminating the Lease, Landlord shall use commercially reasonable, good faith efforts to re-lease the Demised Premises and mitigate its damages, but is not obligated:

(1)    To solicit or entertain negotiations with any other prospective tenants for the Demised Premises until Landlord obtains full and complete possession of the Demised Premises, free of any property of Tenant or anyone holding under Tenant, and including the final and unappealable legal right to re-let the Demised Premises free of any claim of Tenant for possession;

(2)    To lease less than all of the Demised Premises;

(3)    To lease the Demised Premises to a substitute tenant for a rental less than the current fair market rental then prevailing for similar uses in comparable commercial properties in the same market area as the Demised Premises (taking into account any tenant allowance and other concessions offered by Landlord); or

(4)    To lease to a proposed substitute tenant who does not have, in Landlord's reasonable opinion, sufficient financial resources or operating experience to operate the Demised Premises in a first class manner.

17

(c)     Suit or suits for the recovery of the Rents and other amounts and damages set forth in this Paragraph XI.3 may be brought by Landlord, from time to time, at Landlord's election, and nothing in this Lease will be deemed to require Landlord to await the date on which the term of this Lease expires.  Each right and remedy in this Lease or existing at law or in equity or by statute or otherwise, including, without limitation, suits for injunctive relief and specific performance.  The exercise or beginning of the exercise by Landlord of any such rights or remedies will not preclude the simultaneous or later exercise by Landlord of any other such rights or remedies.  All such rights and remedies are cumulative and nonexclusive.

(d)     Tenant expressly waives: (i) all rights under the Landlord and Tenant Act of 1951, and all supplements and amendments thereto; and (ii) the right to three (3) months' or fifteen (15) or thirty (30) days' notice required under certain circumstances by the Landlord and Tenant Act of 1951, Tenant hereby agreeing that the respective notice periods provided for in this Lease shall be sufficient in either or any such case.

XI.4     Remedies Not Exclusive.  (a) No right or remedy herein conferred upon or reserved to Landlord is intended to be exclusive of any other right or remedy, and every right and remedy shall be cumulative and in addition to any other right or remedy given hereunder or now or hereafter existing at law.  Landlord shall be entitled, to the extent permitted by law, to injunctive relief in case of the violation, or attempted or threatened violation, of any covenant, agreement, condition or provision of this Lease, or to a decree compelling performance of any covenant, agreement, condition or provision of this Lease, or to any other remedy allowed by law or in equity.

(b) Except for the application of Article XXII hereof, which shall be mandatory and in limitation of Tenant's remedies, no right or remedy herein conferred upon or reserved to Tenant is intended to be exclusive of any other right or remedy, and every right and remedy shall be cumulative and in addition to any other right or remedy given hereunder or now or hereafter existing at law; and Tenant shall be entitled, to the extent permitted by law, to injunctive relief in case of the violation, or attempted or threatened violation, of any covenant, agreement, condition or provision of this Lease, or to a decree compelling performance of any covenant, agreement, condition or provision of this Lease, or to any other remedy allowed by law or in equity.

XI.5     Waiver of Performance.  No failure by Landlord to insist upon the strict performance of any covenant, agreement, term or condition of this Lease on the part of Tenant to be performed, or to exercise any right or remedy consequent upon a default therein, and no acceptance of payment of full or partial Rent during the continuance of any default, shall constitute a waiver by Landlord of such default or of such covenant, agreement, term or condition.  No covenant, agreement, term or condition of this Lease to be performed or complied with by Tenant, and no default therein shall be waived, altered, modified or terminated except by written instrument executed by Landlord.  No waiver of any default shall otherwise affect or alter this Lease, but each and every covenant, agreement, term and condition of this Lease shall continue in full force and effect with respect to any other then existing or subsequent default therein.

XI.6     Warrant.

(a)  Tenant hereby authorizes and empowers any Prothonotary, the Clerk of Court or attorney of any court of record to appear for Tenant (and Tenant hereby appoints

18

Landlord as the attorney-in-fact of Tenant, coupled with an interest in Tenant's name, place and stead as if signed and delivered by Tenant), if an Event of Default occurs hereunder: (i) in any and all actions which may be brought for said Rent and/or said other sums; and/or (ii) in any civil action brought by Landlord for the collection of such Rent, sum or sums, to confess judgment against Tenant, and otherwise to enter and authorize entry of judgment against Tenant for all or any part of the Rent and/or other sums; for all other damages and sums payable by Tenant hereunder, and for interest at the Interest Rate and for costs, together with an attorney's commission equal to five percent (5%) of the amount of such sums (but in no event less than $5,000) and also together with Landlord's reasonable attorney's fees and costs incurred in connection with such Event of Default, and such powers may be exercised as well after the expiration of the Term and/or during any extended or renewed Term.  The foregoing warrant shall not be exhausted by any one exercise thereof but shall be exercisable from time to time and as often as there is any one or more Events of Default.

        (b)  When this Lease and the Term or any extension or renewal thereof shall have expired, or terminated on account of any uncured Event of Default on the part of Tenant hereunder, or upon an Event of Default, it shall be lawful for any attorney of any court of record to appear as attorney for Tenant as well as for all persons claiming by, through or under Tenant (and Tenant hereby appoints Landlord as the attorney-in-fact of Tenant, coupled with an interest in Tenant's name, place and stead as if signed and delivered by Tenant), and in any action or proceeding in any court of competent jurisdiction to confess judgment in ejectment (and otherwise enter judgment for possession of the Demised Premises) against Tenant and against all persons claiming by, through or under Tenant, for the recovery by Landlord of possession of the Premises, for which this Lease and the appointments herein shall be sufficient warrant; thereupon, if Landlord so desires, an appropriate writ of possession may issue forthwith, without any prior writ or proceeding whatsoever, and provided that if for any reason after such action shall have been commenced it shall be determined that possession of the Demised Premises should remain in or be restored to Tenant, Landlord shall have the right for the same default and upon any subsequent default or defaults, or upon the termination of this Lease or of Tenant's right of possession as hereinbefore set forth, to bring one or more further action or actions as hereinbefore set forth to recover possession of the Demised Premises and to confess judgment (and otherwise agree on behalf of Tenant to the entry of judgment) for the recovery of possession of the Demised Premises by Landlord as hereinbefore provided.  The foregoing warrant shall not be exhausted by any one exercise thereof but shall be exercisable from time to time and as often as there is any one or more Events of Default or whenever this Lease and the Term or any extension or renewal thereof shall have expired, or terminated on account of any uncured Event of Default by Tenant hereunder.

        (b)     In any action, a true copy of this Lease (and of the truth of the copy such affidavit or verified complaint shall be sufficient evidence) shall be sufficient warrant, and it shall not be necessary to file the original as a warrant of attorney, any rule of court, custom or practice to the contrary notwithstanding.

    TENANT ACKNOWLEDGES AND AGREES THAT THIS LEASE CONTAINS PROVISIONS UNDER WHICH LANDLORD MAY ENTER JUDGMENT BY CONFESSION AGAINST TENANT.  BEING FULLY AWARE OF TENANT'S RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST TENANT BY LANDLORD HEREUNDER BEFORE JUDGMENT IS ENTERED, TENANT HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES

19

THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO LANDLORD'S ENTERING JUDGMENT AGAINST TENANT BY CONFESSION PURSUANT TO THE TERMS OF THIS LEASE.

TENANT ALSO ACKNOWLEDGES AND AGREES THAT THIS LEASE CONTAINS PROVISIONS UNDER WHICH LANDLORD MAY, AFTER ENTRY OF JUDGMENT AND WITHOUT EITHER NOTICE OR A HEARING, FORECLOSE UPON, ATTACH, LEVY OR OTHERWISE SEIZE PROPERTY (REAL OR PERSONAL) OF TENANT IN FULL OR PARTIAL PAYMENT OR OTHER SATISFACTION OF THE JUDGMENT. BEING FULLY AWARE OF TENANT'S RIGHTS AFTER JUDGMENT IS ENTERED (INCLUDING THE RIGHT TO MOVE OR PETITION TO OPEN OR STRIKE THE JUDGMENT), TENANT HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO LANDLORD'S TAKING SUCH ACTIONS AS MAY BE PERMITTED UNDER APPLICABLE STATE AND FEDERAL LAW WITHOUT PRIOR NOTICE TO TENANT. WITHOUT LIMITING THE FOREGOING, TENANT SPECIFICALLY WAIVES THE NOTICES AND NOTICE REQUIREMENTS OF PENNSYLVANIA RULES OF CIVIL PROCEDURE NOS. 2956.1, 2958.1, 2958.2, 2958.3, 2973.1, 2973.2, AND 2973.3.

TENANT'S INITIALS: _____

XII.    REQUIREMENTS OF LAW

XII.1    Tenant's Compliance. During the Lease Term, Tenant shall, at its own cost and expense, promptly observe and comply with all present and future laws, ordinances, requirements, orders, directions, rules and regulations of the federal, state, county and municipal governments and of all other governmental authorities having or claiming jurisdiction over the Demised Premises or appurtenances or any part thereof, and of all their respective departments, bureaus and officials, and of the insurance underwriting board or insurance inspection bureau having or claiming jurisdiction, or any other body exercising similar functions, and of all insurance companies writing policies covering the Demised Premises or any part thereof, whether such laws, ordinances, requirements, orders, directions, rules or regulations relate to structural alterations, changes, additions, improvements, replacements or repairs, either inside or outside, extraordinary or ordinary, seen or unforeseen, or otherwise, to or in and about the Demised Premises, or any building thereon, or to any rights or privileges appurtenant thereto or to Alterations, changes, additions, Improvements, replacements or repairs incident to or as a result of any use or occupation thereof, or otherwise, and whether the same are in force at the execution hereof or may in the future be passed, enacted or directed.

XIII.    INSURANCE

XIII.1    Tenant Insurance Policies. During the Term, Tenant, at its own cost and expense, with all policies as to form and amount being reasonably satisfactory to Landlord, shall:

(a)    Maintain or cause to be maintained, in amounts required by law, workmen's compensation insurance for all of the employees employed at the Demised Premises. Tenant shall, at all times, indemnify, defend and save harmless Landlord, of and from all claims for workmen's compensation which may be made by any of the employees of

20

Tenant, or any contractor, subcontractor or their employees and Tenant will appear for and defend Landlord against any and all such claims;

      (b)    Provide and keep in force comprehensive general liability insurance against claims for personal injury, death or property damage occurring on, in or about the Demised Premises or in or about the adjoining roads, sidewalks, loading platforms, property and passageways, if any, such insurance to afford minimum protection, during the term of this lease, of not less than $3,000,000 in respect of personal injury, bodily injury or death, or for damage, injury to or destruction of property in any one occurrence;

      (c)    Provide and keep in force boiler and machinery insurance, provided any building on the Demised Premises contains equipment of the nature ordinarily covered by such a policy, in such amounts as may from time to time be reasonably required by Landlord;

      (d)    If a sprinkler system shall be located in any building, or portion thereof, on the Demised Premises, provide and keep in force sprinkler leakage insurance in amounts and forms reasonably satisfactory to Landlord; and

All insurance provided by Tenant as required by this Article XIII shall be carried in favor of Landlord and Tenant, as their respective interests may appear. Such insurance against fire or other casualty shall include the interest of Landlord's mortgagee(s) and shall provide that loss, if any, shall be payable to such mortgagee(s) under a standard mortgagee clause. All such insurance shall be taken in responsible companies licensed to do business in the Commonwealth of Pennsylvania, reasonably acceptable to Landlord and the policies therefor shall at all times be held by Tenant. Copies of the policies or certificates of such insurance shall be delivered by Landlord to Tenant. All such policies shall be non-assessable and shall require at least thirty (30) days' notice to Landlord (and its mortgagee(s)) of any cancellation thereof or change affecting Landlord's coverage (and/or the coverage of its mortgagee(s)) thereunder.

Tenant shall procure policies for all such insurance for periods of not less than one year and shall deliver to Landlord such policies or certificates thereof at least ten (10) days prior to any construction on the Demised Premises, and shall procure renewals thereof from time to time at least twenty (20) days before the expiration thereof. All policies of insurance shall include a provision to the effect that the Landlord shall be given not less than thirty (30) days prior written notice of any cancellation or change that affects the coverage and certificates deposited with Landlord.

Tenant shall not violate or permit to be violated any of the conditions or provision of any such policy, and Tenant shall so perform and satisfy the requirements of the companies writing such policies so that at all times companies of good standing, reasonably satisfactory to Landlord or any mortgagee designated by Landlord, shall be willing to write and/or continue such insurance.

A certificate issued by the insurance carrier for each policy of insurance required to be maintained by Tenant under the provisions of this Lease shall be delivered to Landlord upon or before the delivery of the Demised Premises to Tenant, and thereafter annually, upon renewal or at Landlord's reasonable request. Each of said certificates of insurance shall be on the Accord 27 form, or other form reasonably acceptable to Landlord.

21

XIII.2    Landlord Insurance Policies. During the Term, Landlord, at Tenant's expense, shall keep the building and insurable improvements on the Demised Premises insured against loss or damage by fire and such other risks as may be included in the standard form of "all-risk" coverage from time to time available, in an amount sufficient to prevent Landlord or Tenant from becoming co-insurers under provisions of applicable policies of insurance but in any event in an amount not less than 100% of the replacement value thereof (determined without any deduction for depreciation), excluding the cost of excavation and of foundations below the level of the lowest basement floor or, if there is no basement, below the level of the ground; provided, however, that Tenant shall be responsible for the insurance of all leasehold alterations and improvements performed by Tenant, and all of Tenant's trade fixtures, trade equipment and other personal property and inventory of Tenant. Additionally, Landlord, at its options, may also maintain, at Tenant's expense and with respect to the Demised Premises, (i) a policy of or endorsement for rent loss insurance in the amount of all Rent coming due hereunder for a period of up to 24 months following the effective policy date, (ii) comprehensive general liability insurance against claims for personal injury, death or property damage occurring on, in or about the Demised Premises or in or about the adjoining roads, sidewalks, loading platforms, property and passageways, including but not limited to the Parking Area  such coverages to afford minimum protection, during the term of this lease, of not less than $3,000,000 in respect of personal injury, bodily injury or death, or for damage, injury to or destruction of property in any one occurrence, and (iii) such other reasonable insurance coverages as Landlord determines and which are consistent with coverages for similarly-situated commercial properties in the Philadelphia area or which are required by Landlord's institutional mortgagee(s).  Tenant shall pay to Landlord the cost of all premiums incurred by Landlord for such insurance coverages in the same manner as provided in Sections III.1.3 and III.1.4, above, with respect to the payment of Impositions.

XIII.3    Waiver of Subrogation. Neither party shall be liable to the other for any loss or damage caused by fire or any other casualty covered by the insurance policies maintained or required hereunder to be maintained by the other.  Landlord shall cause each insurance policy carried by it with respect to the Demised Premises to be written in such manner so as to provide that the insurer waives all right of recovery by way of subrogation against Tenant in connection with any loss or damage covered by the policy.  Tenant will cause each insurance policy carried by it with respect to the Demised Premises to be written in such a manner so as to provide that the insurer waives all right of recovery by way of subrogation against Landlord in connection with any loss or damage covered by the policy.

XIV.    DESTRUCTION -- FIRE OR OTHER CAUSES

XIV.1    Repair of Destruction. In the event the building and/or other improvements including but not limited to leasehold improvements, trade fixtures, personal property, furnishings, or equipment located on the Demised Premises are damaged or destroyed by any casualty, Tenant shall (subject to being able to obtain all necessary permits and approvals therefor, including without limitation permits and approvals required from any agency or body administering environmental law, rules or regulations), within ninety (90) days after such damage or destruction (unless this Lease is terminated prior thereto), commence to repair or reconstruct the damaged buildings and/or other improvements to substantially the same condition as the Demised Premises were originally delivered to Tenant, and promptly thereafter reopen the Demised Premises for business to the public.  Tenant shall prosecute all such work diligently to completion.  In no event shall Landlord be liable for interruption to Tenant's business or for any repair or reconstruction.   If the Demised Premises are rendered wholly or

22

partially unfit for carrying on Tenant's business by such casualty, then the Basic Rent and the Additional Rent payable by Tenant under this Lease during the period the Demised Premises are so unfit shall be abated in proportion to the area of the building on the Demised Premises which Tenant, in the exercise of reasonable commercial efforts, is unable to utilize due to such damage or destruction. In no event shall such abatement or reduction continue later than sixty (60) days following the date on which the earlier of the following occurs: (i) Tenant has substantially completed the repairs or reconstruction pursuant to this Section XIV.1, or (ii) Tenant opens (or continues to open in) the Demised Premises for business to the public with a selling area, available for Tenant's use, of not less than 80% of the selling area available to Tenant prior to the occurrence of such damage or destruction.

In the event of damage to or destruction of the building and/or other improvements located on the Demised Premises as aforesaid, Tenant hereby authorizes Landlord as attorney-in-fact for Tenant to make proof of loss, to adjust and compromise any claim under Landlord's insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Landlord's expenses incurred in the collection of such proceeds; provided, however, that Landlord is not obligated to incur any such expense or take any such action hereunder. Thereafter, Landlord shall hold such proceeds to reimburse Tenant for the cost of restoration and repair of the building and/or other improvements which shall be restored to the equivalent of its or their original condition or such other condition as Landlord may approve in writing. Landlord may, at Landlord's option, condition disbursement of the proceeds on Landlord's approval of such plans and specifications of an architect satisfactory to Landlord, contractors' cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Landlord may reasonably require. If the insurance proceeds are insufficient to pay in full the cost of restoration and repair, Tenant shall make up such insufficiency.

XIV.2   Landlord's Termination Options. Landlord shall have the options to terminate this Lease upon giving written notice to Tenant of the exercise thereof within sixty (60) days after the building or any other improvements on the Demised Premises are damaged or destroyed if: (i) the Demised Premises are rendered wholly unfit for carrying on the Tenant's business after damage to or destruction thereof from any cause and such damage cannot be repaired and restored within one hundred eighty (180) days; or (ii) any damage to or destruction of the Demised Premises occurs when there is less than twelve months remaining of the Term (including the Option Periods, if theretofore actually exercised by Tenant).

XIV.3   Tenant's Termination Options. If the Demised Premises are rendered wholly unfit for carrying on the Tenant's business after damage to or destruction thereof from any cause and such damage cannot be repaired and restored within one hundred eighty (180) days; or any damage to or destruction of the Demised Premises occurs when there is less than twelve months remaining of the Term (including the Option Periods, if theretofore actually exercised by Tenant), Tenant shall have the option to terminate this Lease upon giving written notice to Landlord of the exercise thereof within thirty (30) days after the Premises are damaged or destroyed.

XIV.4   Continuance of Lease. Unless so terminated by Landlord or Tenant, this Lease shall continue in full force and effect, and Landlord and Tenant shall perform their respective

23

obligations hereunder. If either Landlord or Tenant elect to terminate this Lease when permitted under Sections XIV.2 or XIV.3, above, then upon any such termination of this Lease, the Rent shall be adjusted as of the date of such termination and the parties shall be released thereby without further obligation to the other party coincident with the surrender of possession of the Premises to the Landlord, except for items which have been theretofore accrued (including any accrued obligations of indemnity) and are then unpaid.

XV.    CONDEMNATION

XV.1    Collection of Award. In the event that the Demised Premises or any part thereof or any buildings or improvements thereon shall be taken in condemnation proceedings or by exercise of any right of eminent domain or by agreement between Landlord and those authorized to exercise such right (a "Taking"), the award made in any such proceeding shall be paid to and retained by Landlord as Landlord's property (subject to the rights of any mortgagees of Landlord's fee interest in the Demised Premises), without deduction therefrom for any leasehold estate hereby vested in or owned by Tenant. Tenant agrees to execute any and all further documents that may be required in order to facilitate collection by Landlord of any and all such awards. Notwithstanding anything to the contrary contained herein, Tenant may maintain such separate action or application for an award based upon Tenant's independent claims for business relocation expenses, business interruption, loss of trade fixtures and similar claims.

XV.2    Total Condemnation. If at any time during the Lease Term there occurs a Taking of (i) the whole of the Demised Premises, or (ii) substantially all of the Demised Premises, then in the case of (i) automatically and in the case of (ii) at the options of Tenant to be exercised within thirty (30) days after written notice to Tenant of such taking or condemnation, this Lease shall terminate and expire on the date upon which title shall vest in the condemning authority and any Rent provided to be paid by Tenant shall be apportioned and paid to such date. For the purposes of this Article, "substantially all of the Demised Premises" shall be deemed to have been taken if any improvement on the portion of the Demised Premises not so taken, and taking into consideration the amount of the net award available for such purpose, cannot be so repaired or reconstructed as to constitute a complete, rentable structure similar in size and function to the one existing prior to the condemnation. In no event shall a taking exclusively affecting (i) only any unpaved and unimproved areas of the Demised Premises (e.g. landscaped areas bordering roadways), or (ii) portions of the Demised Premises now located in the "ultimate right of way" of any public road adjoining the Demised Premises, constitute a taking of "the whole or substantially all of the Demised Premises" under this subparagraph, unless the same prohibit Tenant's operation as (i) contemplated hereunder, (ii) in compliance with all applicable legal requirements, or (iii) in compliance with the terms of this Lease.

XV.3    Partial Taking. In the event of a Taking which does not constitute a Taking of the whole or substantially all of the Demised Premises, or if Tenant does not elect to exercise any right of termination allowed under Section XV.2, above, when applicable, then this Lease shall terminate and expire on the date upon which title shall vest in the condemning authority solely as it relates to the portions of the Demised Premises so taken, but otherwise this Lease shall continue in full force and effect as to the portion of the Demised Premises not taken, without reduction or abatement of Rent or other charges payable hereunder, and such taking shall not result in the termination of this Lease. In such case, Tenant shall promptly proceed to rebuild, repair and restore the remainder of any building on the Demised Premises affected

24

thereby to a complete, independent and self-contained architectural unit, for the purposes in use before the taking.

XV.4    Other Compensation Rights.  In case of any governmental action, not resulting in the permanent Taking of any portion of the Demised Premises but creating a right to compensation therefor, such as, without limitation, if less than fee title to all or any portion of the Demised Premises shall be taken or condemned by any federal, state, municipal or governmental authority for temporary use or occupancy, this Lease shall continue in full force and effect, but Rent shall be apportioned and the rights of Landlord and Tenant shall be unaffected by the other provisions of this Article XV and shall be governed by applicable law; provided, however, that

(a)    if any such temporary taking for a period not extending beyond the Lease Term results in changes or alterations in any building, improvement or equipment on the Demised Premises which would necessitate an expenditure by Tenant to restore the same to their former condition, or if any other such governmental action shall require alteration to be made in any such building, improvement or equipment to adapt the same to the change of grade or other result of such action, then any award or payment made to cover the expenses of such restoration or alterations shall be paid by Landlord to Tenant to cover such expenses, provided they are reasonably incurred by Tenant;

(b)    if any such temporary taking is for a period extending beyond the Lease Term, the amount of any award or payment allowed or retained for restoration of any building, improvement or equipment on the Demised Premises, shall remain the property of Landlord if this Lease shall expire prior to the restoration of the same to their former condition;

(c)    if such taking shall not materially interfere with or impede the conduct of Tenant's business operations then conducted on the Demised Premises, no reduction or abatement of Rent shall be made hereunder on account of such taking, Tenant shall receive, out of any award, the actual amount of Tenant's out-of-pocket expenses incurred in connection with such taking, and the amount of the award attributable to Tenant's trade fixtures and personal property, and the balance of the award shall be paid to Landlord; and

(d)    if such taking shall materially interfere with or impede the conduct of Tenant's business operations then conducted on the Demised Premises, no reduction or abatement of Rent shall be made hereunder on account of such taking, but Tenant shall receive the award payable on account of such taking up to the actual expenses and losses of Tenant in connection with such taking, and the balance of such award, if any, shall be paid to Landlord.

XVI.    LANDLORD NOT LIABLE FOR INJURY OR DAMAGE

XVI.1    Release.  Tenant is and shall be in exclusive control and possession of the Demised Premises as provided herein, and Landlord shall not in any event whatsoever be liable for any injury or damage to any property or to any person happening on or about the Demised Premises, nor for any injury or damage to any property of Tenant, or of any other person contained therein, excepting only the direct and actual negligence or willful misconduct of Landlord, its agents, employees or contractors.  The provisions hereof permitting Landlord to enter and inspect the Demised Premises are made solely for the purposes set forth in Section XVII.1 hereinbelow and such entry or inspection by Landlord shall impose no duty or

25

responsibility upon Landlord in contravention or limitation of this Release.

XVII.    ACCESS TO DEMISED PREMISES

XVII.1   Access.  Tenant shall permit Landlord or its agents to enter the Demised Premises during customary business hours or at other reasonable times, and following reasonable written notice, for the purpose of inspection, or of making repairs that Tenant may neglect or refuse to make in accordance with the agreements, terms, covenants and conditions hereof, and also for the purpose of showing the Demised Premises to persons wishing to purchase the same or to make a mortgage loan on the same and, at any time within 180 days prior to the expiration of the Term, to persons wishing to rent the same.  Written notice shall not be required in the event of threatened damage to or destruction of the Demised Premises, persons or personal property therein; or threatened damage or damages to adjoining properties or persons thereto.

XVIII.   NO UNLAWFUL OCCUPANCY

XVIII.1   Prohibition.  Tenant shall not use or occupy, nor permit or suffer, the Demised Premises or any part thereof to be used or occupied for any unlawful or illegal business, use or purpose, nor for any business, use or purpose deemed by Landlord disreputable or extrahazardous, nor in such manner as to constitute a nuisance of any kind, nor for any purpose or in any way in violation of any present or future governmental laws, ordinances, requirements, orders, directions, rules or regulations.  Tenant shall immediately upon the discovery of any such unlawful, illegal, disreputable or extrahazardous use take all necessary steps, legal and equitable, to compel the discontinuance of such use and to oust and remove any sub-tenants, occupants, or other persons guilty of such unlawful, illegal, disreputable or extrahazardous use.

XIX.    INDEMNIFICATION

XIX.1   Indemnification by Tenant.  Tenant hereby indemnifies, holds harmless and agrees to defend Landlord, its partners, shareholders, members, agents, mortgagees and employees, and their respective heirs, personal representatives, successors and assigns (or, at Landlord's options, Landlord may undertake such defense with counsel of its selection and at Tenant's expense for the reasonable costs thereof) from and against all costs, expenses, liabilities, losses, damages, injunctions, suits, actions, fines, penalties, claims and demands of every kind or nature, including reasonable counsel fees, by or on behalf of any person, party or governmental authority whatsoever ("Claims"), occurring in, on or about the Demised Premises and/or the Parking Area and on the ways immediately adjoining the Demised Premises, caused by any reason whatsoever other than the active negligence or willful misconduct of Landlord, its agents, contractors or employees.  The Tenant's obligations with respect to indemnification hereunder shall remain effective, notwithstanding the expiration or termination of this Lease (regardless of the reason for such termination), as to Claims arising prior to the expiration or termination of this Lease.

XX.    NOTICES

XX.1   Requirements.  All notices or communications which either party may desire or be required to give to the other shall be deemed sufficiently given or rendered if in writing and sent by registered or certified mail postage prepaid with return receipt requested, or by personal

26

delivery upon such other party by a reputable independent courier providing written evidence of delivery or attempted delivery, or by air courier with receipt for delivery, or by Federal Express or other reputable over-night courier or Express Mail with receipt for delivery addressed as follows:

(a)  If to Tenant:

Doreen Kiley
Senior Accountant
Bertucci's Restaurant Corp.
155 Otis Street
Northborough, MA 01532
508.351.2527
dkiley@bertuccis.com

Legal Notices

Jeffrey C. Sirolly ("Jeff")
DEPUTY GENERAL COUNSEL
4700 Millenia Blvd., Suite 400, Orlando, FL 32839
P:407-903-5680 | C:407-274-4021
jsirolly@earlenterprise.com

(b)  If to Landlord:

523 Restaurant, LP
c/o Penn Real Estate Group
620 Righters Ferry Road
Bala Cynwyd PA 19004

With a copy to:

legal notices:
Matthew Weinstein, Esq.
Cozen O'Connor
One Liberty Place, 1650 Market Street,
Suite 2800
Philadelphia, PA 19103

or such other place, and to such other persons, as the parties may from time to time designate by notice to each other.  Such notices or communications shall be deemed to have been given and delivered on the earlier of the date of actual receipt thereof or (i) if delivered by Federal Express, Express Mail or other reputable overnight delivery service, on the business day next succeeding the date on which the same was delivered by the sender to such courier, or (ii) if by United States certified or registered mail, as of three (3) business days after the date of mailing, or on the date of actual receipt, whichever is earlier.  Either party may change the address to which such notices, demands or requests shall be mailed or given hereunder by written notice of such new address mailed to the other party hereto in accordance with the provisions of this Section.  Notice given by legal counsel on behalf of any party shall be deemed to be given by such party.

XXI.    QUIET ENJOYMENT

XXI.1    Covenant.  Tenant, upon observing and keeping all covenants, agreements and conditions of this Lease on Tenant's part to be kept, shall quietly have and enjoy the Demised Premises throughout the Term without hindrance or molestation by Landlord or by any one claiming by, from, through or under Landlord, subject, however, to the exceptions, reservations and conditions of this Lease.

XXII.    ESTOPPEL CERTIFICATE; SUBORDINATION

XXII.1    Tenant's Estoppel.  Tenant agrees, at any time and from time to time, upon not less than fifteen (15) days' prior written notice by Landlord, to execute, acknowledge and deliver

27

to Landlord a statement in writing certifying (i) that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications); (ii) whether or not there are then existing any off-sets or defenses against the enforcement of any of the terms, covenants or conditions hereof upon the part of Landlord or Tenant to be performed (and if so specifying the same); (iii) the dates to which the Rent and other charges have been paid in advance, if any, it being intended that any such statement delivered pursuant to this Article XXII.1 may be relied upon by any prospective purchaser or mortgagee of the Demised Premises; and (iv) any items reasonably requested by any mortgagee of or purchaser from Landlord.

XXII.2   Landlord's Estoppel.  Landlord agrees, at any time and from time to time, upon not less than fifteen (15) days' prior written notice by Tenant, to execute, acknowledge and deliver to Tenant a statement in writing certifying (i) that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications); (ii) the dates to which the Rent and other charges have been paid in advance, if any, and (iii) stating whether or not, to the knowledge of Landlord, Tenant is in default in performance of any covenant, agreement or condition contained in this Lease and, if so, specifying each such Event of Default or other uncured default of which Landlord may have knowledge, it being intended that any such statement delivered pursuant to this Article XXII.2 may be relied upon by any prospective assignee permitted under this Lease, or any portion thereof, or by any undertenant or prospective sublessee of the whole or any part of the Demised Premises or Tenant Improvements and permitted under this Lease.

XXII.3   Subordination of Lease.  Tenant agrees that, subject to and provided Tenant shall receive a Non-Disturbance Agreement (as hereinafter defined) from any mortgagee or other party relying upon the covenants of Tenant under this Article XXII.3, Tenant's rights and interest under this Lease are and shall remain subject and subordinate to the lien of any or all mortgages or deeds of trust, regardless of whether such mortgages or deeds of trust now exist or may hereafter be created with regard to all or any part of the Demised Premises, and to any and all advances to be made thereunder, and to the interest thereon, and all modifications, consolidations, renewals, replacements and extensions thereof.  Such subordination shall be effective without the execution of any further instrument.  Tenant also agrees that any mortgagee or trustee may elect to have this Lease prior in lien to the lien of its mortgage or deed of trust, and in the event of such election and upon notification by such mortgagee or trustee to Tenant to that effect, this Lease shall be deemed prior in lien to the said mortgage or deed of trust, whether this Lease is dated prior to or subsequent to the date of said mortgage or deed of trust. "Non-Disturbance Agreement" means a writing confirming that such mortgagee or other party relying upon the covenants of Tenant under this Section XXII.3 agrees not to terminate or disturb Tenant's interest under this Lease unless and until there shall have occurred any Event of Default or default hereunder which remains uncured after the expiration of any applicable period of grace.

XXII.4   Tenant's Attornment.  Tenant shall, in the event of the sale or assignment of Landlord's interest in the Demised Premises (except in a sale-leaseback financing transaction), or in the event of any proceedings brought for the foreclosure of, or in the event of the exercise of the power of sale under any mortgage or deed of trust covering the Demised Premises, or in the event of the termination of any lease in a sale leaseback transaction wherein Landlord is the lessee, attorn to and recognize such purchaser or assignee or mortgagee as Landlord under this Lease.

28

XXII.5  Rights of Mortgagee.  In the event of any act or omission of Landlord which would give Tenant the right, immediately or after lapse of a period of time, to cancel or terminate this Lease, or to claim a partial or total eviction, Tenant shall not exercise such right:

(a)    until it has given written notice of such act or omission to the holder of each such mortgage or ground lease whose name and address shall previously have been furnished to Tenant in writing; and

(b)    until a reasonable period for remedying such act or omission shall have elapsed following the giving of such notice (which reasonable period shall in no event be less than the period to which Landlord would be entitled under this Lease or otherwise, after similar notice, to effect such remedy unless an express period is stipulated in this Lease, in which case such mortgagee shall be accorded the same period).

XXII.6  Mortgagee Liability.  No mortgagee or ground lessor which shall succeed to the interest of Landlord hereunder (either in terms of ownership or possessory rights) shall be: (1) liable for any previous act or omission of any prior Landlord; (2) subject to any rental offsets or defenses hereunder because of any act or omission of any prior Landlord; (3) bound by any amendment of this Lease made without its written consent or by payment by Tenant of Rent in advance in excess of one (1) month's rent; or (4) liable for any security not actually received by it.

## XXIII.   MISCELLANEOUS PROVISIONS

XXIII.1  Reservation of Rights; Cooperation by Tenant.  Landlord reserves to itself, and its successors and assigns, the following rights and easements upon and with respect to the Demised Premises: (i) an easement and right of way for pedestrian and vehicular access on, under, through and over the Demised Premises for access to and from any adjoining property now or hereafter owned by Landlord or any affiliate, successor or assignee of Landlord, (ii) rights and easements reasonably necessary for the installation, connection, use and operation (including repair and replacement) of utility facilities in, on, over or under the Demised Premises and servicing the Demised Premises or any adjoining property now or hereafter owned by Landlord or any affiliate, successor or assignee of Landlord; and (iii) rights and easements for drainage to, over, across and under the Demised Premises, and for support, benefitting any adjoining property now or hereafter owned by Landlord or any affiliate, successor or assignee of Landlord.  Tenant further acknowledges that to provide for the orderly development of the Demised Premises and any adjoining lands now or hereafter owned by Landlord or any affiliate of Landlord, and the operation of the improvements thereon or on any such adjoining lands, it may be necessary to provide for the grant of additional easements, the termination or restatement of existing easements, and/or the making of certain dedications affecting areas over or adjacent to the Demised Premises. Tenant agrees to cooperate with Landlord with respect to the granting, terminating or restating of any such easements or the making of any such dedications, including executing and delivering any documents that may be required, in order to provide for the proper development of the Demised Premises and any adjoining lands and for the construction of improvements on such adjoining lands.  In addition hereto, Tenant agrees to take such further action as may be necessary, including executing such other documents, petitions, applications and authorizations, as from time to time may reasonably be necessary or appropriate in connection with the orderly development of the Demised Premises and any such adjoining lands and of the construction or reconstruction of improvements on such adjoining lands.

XXIII.2 Force Majeure.  Neither Landlord nor Tenant shall be in default under this Lease if their performance is delayed or prevented by or due to strikes, lockouts, inability to obtain labor and materials on the open market, war, riots, unusual weather conditions, acts of God and other similar causes beyond the control of Landlord or Tenant, as the case may be, and the time within which either party must comply with any of the terms, covenants and conditions of this Lease shall be extended by a period of time equal to the period of time that performance by the affected party is delayed or prevented by the causes specified above, provided that within fifteen (15) business days of the commencement of the cause of delay the party unable to perform shall have notified the other party of the existence thereof.  The foregoing shall not, however, excuse or delay the obligation of Tenant to pay any sum of Rent accruing hereunder.

XXIII.3 Separability.  Each covenant and agreement contained in this Lease shall for all purposes be construed to be a separate and independent covenant and agreement.  If any term or provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid and unenforceable, the remainder of this Lease or the application of such term or provision to persons or circumstances, other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and shall be enforced to the extent permitted by law.

XXIII.4 Counterparts.  This Lease may be executed in counterparts, each of which shall be deemed to be an original.

XXIII.5 Headings.  The headings to the various Articles of this Lease have been inserted for convenience of reference only and shall not modify, amend or change the express terms and provisions of this Lease.

XXIII.6 Brokerage.  Tenant and Landlord represent to each other party that they have not dealt directly or indirectly with any real estate broker in connection with this transaction.  Tenant and Landlord further agree to indemnify, defend and hold each other harmless from and against any claims for brokerage commissions or finder's fees arising out of or based on any alleged dealings with any brokers by the party from whom such indemnification is sought, including but not limited to, damages, costs and attorneys' fees.

XXIII.7 Controlling Law.  This Lease has been delivered in and shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

XXIII.8 Authority.  If any party signing this Lease is a corporation or other business entity, each of the persons executing this Lease on behalf of such party warrants to the other that it is a duly authorized and existing corporation, that such party is qualified to do business in the state in which the Demised Premises are located, that such party has full right and authority to enter into this Lease, and that each and every person signing on behalf of such party is authorized to do so.  Upon the other party's request, such party will provide evidence satisfactory to the other party confirming these representations.

XXIII.9 Exhibits, Gender, Etc.  The exhibits to this Lease are incorporated into the Lease.  Unless the context clearly requires otherwise, the singular includes the plural, and vice versa, and the masculine, feminine, and neuter adjectives include one another.

30

XXIII.10 Entire Agreement. This Lease contains the entire agreement between Landlord and Tenant with respect to its subject matter and may be amended only by subsequent written agreement between them. Except for those which are specifically set forth in this Lease, no representations, warranties, or agreements have been made by Landlord or Tenant to one another with respect to this Lease. This Lease can be amended only by a written document signed by Landlord and Tenant.

XXIII.11 Attorneys' Fees. If Landlord and Tenant litigate any provision of this Lease or the subject matter of this Lease, the unsuccessful litigant will pay to the successful litigant all costs and expenses, including reasonable attorneys' fees and court costs, incurred by the successful litigant at trial and on any appeal. If, without fault, either Landlord or Tenant is made a party to any litigation instituted by or against the other, the other will indemnify the faultless one against all loss, liability, and expense, including reasonable attorneys' fees and court costs, incurred by it in connection with such litigation.

XXIII.12 Waiver of Jury Trial. Landlord and Tenant waive trial by jury in any action, proceeding or counterclaim brought by either of them against the other on all matters arising out of this Lease or the use and occupancy of the Demised Premises. If Landlord commences any summary proceeding for nonpayment of rent, Tenant will not interpose (and waives the right to interpose) any counterclaim in any such proceeding, excepting only those which are mandatory under any law or procedural rule.

XXIV. SUCCESSORS AND ASSIGNS; MISCELLANEOUS

XXIV.1 Successors and Assigns. All rights, obligations and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the respective heirs, executors, administrators, successors, sublessees and assigns of said parties, and if there shall be more than one Tenant, they shall all be bound jointly and severally by the terms and, covenants. No rights, however, shall inure to the benefit of any assignee or sublessee of Tenant, unless the assignment or sublease has been approved by Landlord or is otherwise permitted hereunder.

XXIV.2 Definition of Landlord. The term "Landlord" as used in this Lease, so far as the covenants, conditions and agreements on the part of Landlord are concerned, shall be limited to mean the corporation, partnership, limited liability company or other business entity specifically named herein, its successors and assigns, and in the event of any transfer or transfers of the title of the Demised Premises, or of Landlord's interest therein, the said Landlord (and in the case of any subsequent transfers or conveyances, the then grantor) shall be automatically freed and relieved from and after the date of such transfer or conveyance of all liability with respect to the performance of any covenants, conditions and agreements on the part of Landlord contained in this Lease thereafter to be performed, provided that any amounts then due and payable to Tenant by Landlord, or the then grantor, under any provisions of this Lease shall be paid to Tenant, it being intended hereby that the covenants, conditions and agreements contained in this Lease on the part of Landlord shall, subject as aforesaid, be binding on Landlord, its successors and assigns, only during and in respect of their respective successive periods of ownership of any interest therein. Neither Landlord nor any shareholder, partner, member, director, officer, employee or agent of Landlord shall have any personal liability with respect to any of the provisions of this Lease, and if Landlord is in breach or default with respect to Landlord's obligations or otherwise under this Lease, Tenant shall look solely to the interest of Landlord in the Demised Premises for the satisfaction of Tenant's remedies. It is

31

expressly understood and agreed that the liability of Landlord and any shareholder, partner, member, director, officer, employee or agent of Landlord under the terms, covenants, conditions, warranties and obligations of this Lease shall in no event exceed the loss of Landlord's interest in the Demised Premises. There shall be no merger of this Lease nor of the leasehold estate created hereby with the fee estate in or ownership of the Demised Premises by reason of the fact that the same entity may acquire or hold or own (I) this Lease or such leasehold estate or any interest therein and (ii) the fee estate or ownership of any portion of the Demised Premises or any interest therein. No such merger shall occur unless and until all entities having any interest in (x) this Lease or such leasehold estate and (y) the fee estate in the Demised Premises including, without limitation, the interest of Landlord's mortgagee, if any therein, shall join in a written, recorded instrument effecting such merger.

XXIV.3 Time of Essence. Time is of the essence with respect to the performance of the respective obligations of Landlord and Tenant set forth in this Lease.

XXIV.4 Authority. Each party represents and warrants to the other party that it has the full and present authority and power to execute this Lease.

IN WITNESS WHEREOF, the parties have duly executed this Lease the day and year first above written.

Landlord:                                         Tenant:

                                                  BERTUCCI'S RESTAURANT CORP.

By: _____                     By: _____ Kurt J. Schnaiber

                                                  Attest: _____
                                                         Gregory A. Pastore

Bertucci.lease.blacklined.7.21.doc-Microsoft Word

32