**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO.: 6:22-bk-04313-GER** |
| **BERTUCCI'S RESTAURANTS, LLC** | **CHAPTER 11** |
| Debtor. _____/ | *EMERGENCY RELIEF REQUESTED* *(Hearing requested on or before Tuesday, February 7, 2023)* |

**DEBTOR'S EMERGENCY MOTION FOR**
**APPROVAL OF PAYMENTS TO CERTAIN CRITICAL VENDORS**
**(Emergency Relief Requested)**

**BERTUCCI'S RESTAURTANTS, LLC**, ("Bertucci's" or "Debtor"), a Florida limited liability company, by and through its undersigned counsel, and pursuant to sections 105(a), 363(b), 364, 503(b)(9) 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and RuleS 2081-1(g)(f) and 9013-1(d) of the Local Bankruptcy Rules for the Middle District of Florida (the "Local Rules"), respectfully moves this Court (this "Motion"), on an emergency basis, for entry of an order: (a) authorizing, but not directing, the Debtor to make payments toward the prepetition fixed, liquidated, and undisputed claims of certain Critical Vendors (as defined below) subject to the conditions described herein, and (b) authorizing banks to honor and process checks and electronic transfer requests related thereto. In support of this Motion, Debtor states as follows:

**Summary of Basis for Emergency Relief**

As set forth in more detail below, certain alcohol and beverage suppliers (as identified on Exhibit A) have withheld deliveries of essential supplies to some of the Debtor's restaurant locations, which are vital to the Debtor's overall viability. These critical vendors have informed the

Debtor that they intend to continue to withhold deliveries of necessary supplies absent payment of their respective pre-petition amounts owed. Collectively, the Debtor owes these suppliers roughly $47,882. The Debtor is without an alternative source for these alcohol and beverage supplies. Without these deliveries, sales and operations at the affected restaurants will be suffer, which in turn will negatively impact the Debtor's overall reorganization efforts.

## Jurisdiction, Venue, and Statutory Predicates

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). Venue is proper in this district for this Motion pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein includes sections 105(a), 363(b), 364, 503(b)(9) 1107(a) and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2081-1(g)(f).

## Background

3. On December 5, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. No trustee or examiner has been appointed in this case.

5. On January 9, 2023, the U.S. Trustee appointed and file notice of appointing the unsecured creditors committee in this case. (Doc. No. 80, as amended by Doc. No. 83).

6. For a detailed description of the Debtor and its operations, the Debtor respectfully refers the Court and parties in interest to the *Chapter 11 Case Management Summary* [Doc. No. 3].

7. The Debtor is a Florida limited liability company that was formed in May of 2018. The Debtor owns and operates Italian-themed restaurants under the name Bertucci's Brick Oven Pizza & Pasta (the "Restaurants").

8. On December 5, 2022, the Debtor filed its motion seeking, *inter alia,* to reject or terminate leases for 18 of its non-operational restaurant locations. *Emergency Motion for Order Authorizing Rejection of Unexpired Leases of Non-Residential Real Property Nunc Pro Tunc to Petition Date* [Doc. No. 7], which was granted by the Court on December 9, 2022. As a result, today the Debtor owns and operates thirty-one Restaurants located in the Northeastern United States.

### Debtor's Operations and Critical Vendors

9. The Debtor's ability to preserve the value of its bankruptcy estate and continue the normal operations, hinges, in part, upon their ability to successfully retain the services of certain critical vendors. The continued provision of certain critical services during the reorganization process is a critical component of the Debtor's ultimate objective of proposing a viable plan of reorganization.

10. Since filing for protection under the Bankruptcy Code, certain critical alcohol and beverage suppliers, as identified on the attached **Exhibit A** (the "Critical Vendors"), have withheld critical deliveries to certain Restaurant location of the Debtor. These Critical Vendors have informed the Debtor that they intend to continue to withhold critical services absent payment of pre-petition amounts. The loss of the Critical Vendors could significantly jeopardize the Debtor's reorganization process. Without the continued performance of these Critical Vendors, certain restaurant locations have been—and will continue to be—grossly disrupted, thereby negatively impacting the Debtor's reorganization prospects. The Debtor is without an alternative source for these alcohol and beverage supplies.

11. As such, the Debtor seeks entry of an order grating it authority to make payments, in their sole discretion and business judgment, on account of the prepetition claims of the Critical Vendors, as set forth on the attached **Exhibit A** (collectively, the "Critical Vendor Claims"). of the Critical Vendors. The Debtor further requests that the Court grant the Debtor the authority to allocate the foregoing amounts at its discretion without prejudice to seek additional relief, and subject to an agreement (within the Debtor's discretion) to receive terms consistent with Customary Trade Terms (as defined herein) from the Critical Vendors.

12. In an exercise of their business judgment, the Debtor has determined that continuing to receive goods and services from the Critical Vendors is necessary to operate and restructure its business as a going concern and to maximize value. If granted the discretion to satisfy the Critical Vendor's claims as requested in this Motion, the Debtor will assess, on a case-by-case basis, the benefits to the estate of paying such Critical Vendor Claims and will pay such claims only to the extent the estate will benefit. Without this relief, the Critical Vendors will continue to withhold—and may cease altogether—providing the necessary and critical supplies of alcohol and beverages. Such actions would significantly impede the Debtor's reorganization efforts.

13. To ensure that the Debtor identifies only those vendors/providers that are actually critical to its business, employees and professionals of the Debtor who are familiar with the Debtor's vendor relationships, have and will continue to extensively analyze and review the Debtor's immediate service needs and supplier base. In order to determine which of the Debtor's vendors are critical to the its business, the Debtor has used the following non-exhaustive criteria: (a) whether the vendor in question is a "sole source" provider; (b) whether quality requirements or other specifications prevent the Debtor from obtaining a vendor's products or services from alternate sources within a reasonable timeframe; (c) whether a vendor meeting the standards of (a) or (b) is

likely to, or has already, refuse(d) to ship product to the Debtor post-petition if its balances are not paid; (d) whether a vendor would suffer significant financial hardship absent payment of pre-petition claims which in turn could negatively impact the Debtor; (e) the degree to which replacement costs (including, pricing, transition expenses, professional fees and lost sales of future revenue) exceed the amount of a vendor's prepetition claim; and (f) whether an agreement exists by which the Debtor could compel a vendor to continue performing on pre-petition terms. The Debtor is confident that this process will appropriately identify only those vendors that meet some or all of the foregoing stringent guidelines and that, if the Debtor failed to pay for the vital goods and services it has provided pre-petition, would likely cease to provide them in the future.

14. The Debtor further propose to condition any payment on account of the Critical Vendor Claims on the agreement of the applicable Critical Vendor to continue supplying goods or services to the Debtor for the duration of these cases in accordance with trade terms at least as favorable to the Debtor as those practices and programs in place 180 days prior to the Petition Date or as otherwise agreed between the Critical Vendors parties and the Debtor (collectively, the "Customary Trade Terms").

15. Subject to the objection rights of Critical Vendors, the Debtor proposes that any Critical Vendor that accepts payment on account of a Critical Vendor Claim will be automatically deemed to have consented to the Customary Trade Terms, whether any trade term agreement is actually signed.

16. If a Critical Vendor refuses to supply goods or services to the Debtor on Customary Trade Terms following any post-petition payment toward its Critical Vendor Claim, or fails to otherwise comply with any other agreement it entered into with the Debtor, the Debtor herby seeks authority, in its discretion and without further order of the Court, but with notice to the affected

Critical Vendor, (a) to declare such agreement with respect to Customary Trade Terms immediately terminated, (b) to declare any payments made to such Critical Vendor on account of its Critical Vendor pre-petition claim to be deemed an avoidable post-petition transfer under 11 U.S.C. § 549, and the debtors may, at the Debtor's option, (i) recover from the Critical Vendor in cash, or (ii) apply the amount of the payment made to the Critical Vendor against any outstanding administrative claim held by such Critical Vendor.

17. In the event that the Debtor exercises the rights set forth in the preceding paragraph, the Debtor requests that the Critical Vendor against which the Debtor exercises such rights be required to immediately return to the Debtor any payments made on account of its Critical Vendor pre-petition claim to the extent that such payments exceed the post-petition amounts then owed to such Critical Vendor, without giving effect to any rights of setoff or reclamation. In essence, the Debtor seeks to return the parties to their respective positions immediately prior to entry of an order approving this Motion in the event a Critical Vendor refuses to supply goods or services to the Debtor on Customary Trade Terms following any payment toward its Critical Vendor Claim.

18. By this Motion, the Debtor seeks entry of an order authorizing it, at its discretion, to pay the Critical Vendor Claims on the terms and conditions set forth herein.

## Memorandum of Law

19. The relief requested in this Motion is appropriate under 22 U.S.C. §§ 105(a), 363, 364, 503(b)(9), 1107(a), 1108 and the doctrine of necessity.

20. The payment of critical vendor claims is consistent with an appropriate under Bankruptcy Code sections 363 and 364. *See Friedman's Liquidating Tr. V. Roth Staffing Cos. L.P. (In re Friedman's Inc.)*, 738 F. 3d 547, 560 (3d Cir. 2013) (describing the policy of equal

distribution among similarly situated creditors and noting critical vendors "can similarly be given preferred treatment under §§ 105 and Section 363").

21. The Court may also authorize payment of pre-petition claims in appropriate circumstances based on § 105(a). Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Under 11 U.S.C. § 105(a), the Court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992).

22. The Debtor, operating its business as a debtors-in-possession under 11 U.S.C. §§ 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [its] creditors and (if the value justifies) equity owners." *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

23. Courts have noted that there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only … by the pre-plan satisfaction of a pre-petition claim." *Id*. The *CoServ* court specifically noted that pre-plan satisfaction of pre-petition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id*. at 498. The

court provided a three-pronged test for determining whether a pre-plan payment on account of a pre-petition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id* at 498.

24. Payment of the Critical Vendors Claims meets each element of the *CoServ* court's standard. As discussed above, the Debtor has narrowly tailored the Critical Vendors' claims to encompass only those suppliers that are the sole source of a particular good or service without which the Debtor's operations would be severely impacted or those suppliers or service suppliers who are critical because the time and expense that would be involved in transitioning to a new supplier would be prohibitive and would significantly disrupt the Debtor's business. The potential harm and economic disadvantage that would stem from the failure of any of the Critical Vendors to perform is grossly disproportionate to the amount of any pre-petition claim that may be paid. Finally, with respect to each Critical Vendor, the Debtor has examined other options short of payment of Critical Vendor Claims and has determined that to avoid significant disruption of the Debtor's operations there exists no practical or legal alternative to payment of the Critical Vendor Claims. Therefore, the Debtor can only meet its fiduciary duties as debtors-in-possession by the payment of the Critical Vendor Claims.

25. Additionally, the "necessity of payment" doctrine further supports the relief requested in the Motion. The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176 (Bankr. S.D.N.Y. 1989); *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987). This rule is consistent

with the paramount goal of Chapter 11, which is "facilitating the continued operation and rehabilitation of the debtor." *Ionsphere Clubs*, 98 B.R. at 176.

26.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay the pre-petition claims of certain critical vendors. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim is essential to the continued operation of [the debtor], payment may be authorized".)

27.     Payment of the Critical Vendors' prepetition claims is essential to ensure the continued availability of such trade terms and the undisturbed flow of goods and services necessary to operate certain of the Debtor's ongoing business. Accordingly, this Court should exercise its equitable powers to grant the relief requested herein.

**WHEREFORE**, the Debtor respectfully requests this Court to enter an order approving payment of the Critical Vendor Claims set forth on Exhibit A, pursuant to the terms set forth herein, in addition, granting further relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 3rd day of January 2023.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane L. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Telephone: 407-337-2060
Facsimile: 407-337-2050
*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | CASE NO.: 6:22-bk-04313-GER |
| BERTUCCI'S RESTAURANTS, LLC | CHAPTER 11 |
| Debtor._____/ | *EMERGENCY RELIEF REQUESTED* *(Hearing requested on or before Tuesday, February 7, 2023)* |

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I caused the foregoing *Debtor's Emergency Motion for Approval of Payments to Certain Critical Vendors* **I** to be uploaded for filing via the Court's CM/ECF system which will electronically serve notice of the same to all parties receiving electronic notice, including all parties listed on the attached matrix on this 3rd day of February 2023.

/s/  R. Scott Shuker
R. Scott Shuker, Esq.

10