**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| **In re:** | **CASE NO. 6:22-bk-04313-GER** |
| **BERTUCCI'S RESTAURANTS, LLC,** | **CHAPTER 11** |
| **Debtor.** | **EMERGENCY HEARING** |
| _____/ | **REQUESTED BY MARCH 7, 2023** |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY**
**TO OBTAIN POST-PETITION FINANCING AND GRANTING**
**LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS**

---

**STATEMENT OF RELIEF REQUESTED**

The Debtor requests this Motion be set for hearing on **March 7, 2023 at 10:00 AM.** The Debtor seeks authority in this Motion to borrow money, pursuant to a revolving line of credit, in order to fund payroll, other operating expenses, and costs of administration in this chapter 11 case in accordance with a proposed budget which will be filed with the Court in advance of the hearing on this Motion. This Motion seeks to grant the DIP Lender: (i) an allowed superpriority administrative expenses claim pursuant to 11 U.S.C. §§ 364(c)(1) and 507(b); and (ii) perfected senior liens on all property of the Debtor. The material terms of the proposed financing are set forth in Paragraph 13 of this Motion.

---

## INTRODUCTION

**BERTUCCI'S RESTAURANTS, LLC,** as debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel and pursuant to 11 U.S.C. §§ 364(c) and (d), Fed. R. Bankr. P. 4001, and Local Rule 2081-1(g)(2), hereby files this emergency motion (this "Motion") requesting entry of interim and final orders granting the relief requested herein. In support of its Motion, the Debtor respectfully states as follows:

1.      By this Motion, the Debtor seeks entry an order granting this Motion and providing the following relief:

   a. authorizing the Debtor to obtain debtor-in-possession secured postpetition financing on a superpriority basis in the maximum aggregate amount of $500,000

1

(the "DIP Loan") from PHL Holding, LLC as the lender (the "DIP Lender") pursuant to the terms and conditions set forth in the Summary of Terms and Conditions for up to $500,000 in Priming Senior Secured Superpriority Debtor-in-Possession Financing (the "Term Sheet") attached as **Exhibit A**;

b.  authoring the Debtor to: (i) execute and deliver the Term Sheet, along with and such other necessary documents, instruments and agreements, which shall be consistent with the terms of this Motion, the Term Sheet, and the interim and final orders of the Court granting this Motion (the "DIP Loan Documents"), and (ii) perform such acts as may be necessary or desirable in connection with the DIP Loan Documents and the transactions contemplated thereby;

c.  granting the DIP Lender an allowed superpriority administrative expense claim pursuant to 11 U.S.C. §§ 364(c)(1) and 507(b) (the "DIP Admin Claim");

d.  granting the DIP Lender valid, enforceable, non-avoidable and fully perfected liens (the "DIP Liens"), pursuant to § 364(d), on all DIP Collateral (defined below);

e.  modification of the automatic stay imposed by § 362 to the extent necessary to implement and effectuate the terms of the DIP Loan Documents, and waiving the fourteen (14) day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h);

f.  subject to entry of the Final Order, customary waivers in favor of the DIP Lender of: (i) the automatic stay imposed by § 362 in connection with the DIP Lender's enforcement of remedies upon an Event of Default, subject in all events to filing a motion and obtaining an order of the Bankruptcy Court in connection therewith; (ii) any surcharge of costs or expenses with respect to the DIP Lender's interest in the Collateral under §§ 506(c) and 552; and (iii) the equitable doctrine of marshaling;

g.  scheduling a final hearing (the "Final Hearing") on the relief requested herein pursuant to Bankruptcy Rule 4001 for this Court to consider entry of a final order granting this Motion (the "Final Order"); and

h.  granting related relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in

this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief sought herein include sections 105, 361, 362, 363, 364, 506, 507, 552, and 545 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 4001(c) and (d) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 2018-1(g)(2) of the Local Rules of the Court (the "<u>Local Rules</u>").

## **<u>BACKGROUND</u>**

### A.    The Bankruptcy Case

4.    On December 5, 2022 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.    The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.    No trustee or examiner has been appointed in this case.

7.    On January 9, 2023, the U.S. Trustee appointed and filed notice of appointing the unsecured creditors committee in this case (the "<u>Committee</u>"). (Doc. No. 80, as amended by Doc. No. 83).

8.    For a detailed description of the Debtor and its operations, the Debtor respectfully refer the Court and parties in interest to the *Chapter 11 Case Management Summary* [Doc. No. 3].

### B.    The Debtor's Prepetition Capital Structure

**(i)**  <u>Revolving Credit and Term Loan Facility</u>

9.    As of the Petition Date, the Debtor's secured indebtedness was as follows:

| <u>Secured Lender</u> | <u>Approximate Amount Owed & Lien Type</u> |
|---|---|
| PHL Holdings, LLC | $8,500,000 revolving loan; first lien on all assets |
| PHL Holdings, LLC | $12,350,000 term loan; second lien on all assets |

**C.    Cash Collateral**

10.    The Debtor has had consensual interim use of cash collateral in this case since December 8, 2022, pursuant to the Debtor's *Emergency Motion for Authority to Use Cash Collateral and Request for Emergency Preliminary Hearing* (Doc. No. 6) (the "Cash Collateral Motion"), the initial, second, and third interim orders granting use of cash collateral (Doc. Nos. 28, 92, and 157) (the "Interim Cash Collateral Orders"), and with the negotiated agreement of the Debtor's prepetition secured lender, PHL Holdings, LLC, which is also the proposed DIP Lender.

11.    The next hearing on the Cash Collateral Motion is set for March 7, 2023.

<u>**MATERIAL TERMS OF THE DIP LOAN**</u>

12.    The following chart contains a summary of the material terms of the proposed DIP Loan in accordance with Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B), and Local Rule 2081-1(g)(2):

| Rule | Summary of Material Terms |
|---|---|
| **Parties to the DIP Loan** | **Borrower:**  Bertucci's Restaurants, LLC, as debtor-in-possession in this chapter 11 case (the "Debtor" or "Borrower")<br><br>**DIP Lender:**  PHL Holdings, LLC<br><br>**Relationship of the DIP Lender to any of the parties:**  The DIP Lender is the Debtor's prepetition secured lender as set forth above. |
| **Entities with Interests in Cash Collateral** | PHL Holdings, LLC (the DIP Lender) is also the Debtor's prepetition secured lender with an interest in Cash Collateral. |
| **DIP Loan Documents** | The DIP Loan Documents shall be comprised of: (i) the Term Sheet attached hereto as Exhibit A, and (ii) any such other necessary documents, instruments and agreements, which shall be consistent with the terms of this Motion, the Term Sheet, and the interim and final orders of the Court granting this Motion (collectively, the "DIP Orders"), |
| **Commitment** | Extensions of credit in the maximum aggregate amount of $500,000 pursuant to estimated budgetary requirements. |
| **Budget** | The use of the DIP Loan proceeds is the budgetary requirements set forth in the Term Sheet at pp. 2-3. The Debtor shall file the proposed budget in advance of the hearing on this Motion (the "Budget"). As will be set forth in the Budget, the Debtor |

| Rule | Summary of Material Terms |
|------|---------------------------|
| | will used the proceeds of the DIP Loan for, among other things, the following items: (i) operational costs, including payroll, rent, and utilities; (ii) purchase of inventory and supplies required for its business; (iii) payment of monthly interest charges due under the DIP Loan; and (iv) administrative costs for this chapter 11 case. |
| **Term** | The DIP Loan would be repaid in full, and the Commitment would terminate on, the earliest to occur of the following (the "Maturity Date"):<br><br>(i)    September 30, 2023;<br>(ii)   the date the Bankruptcy Court enters an order converting the bankruptcy case of the Debtor to a chapter 7 liquidation, dismissing the bankruptcy case of the Debtor, or appointing a trustee;<br>(iii)  the occurrence of an Event of Default under the DIP Loan Documents that is not cured as provided therein; or<br>(iv)  The sale or refinancing of all or substantially all of the Debtor's Property (as defined in the Term Sheet)<br><br>Interest, defined below, would be repaid on a monthly basis in arrears from the proceeds of the DIP Loan. |
| **Conditions of Borrowing** | The Term Sheets includes standard and customary conditions for financing of this type, the satisfaction of which is a condition precedent to the obligations of DIP Lender, including but not limited to:<br><br>(i)    Entry of a Final Order granting the relief sought in this Motion;<br>(ii)   Execution and delivery of the DIP Loan Documents;<br>(iii)  DIP Lender shall have received the Budget, any required periodic updated pursuant to the Budget and any variance reports, each in form and substance satisfactory to the DIP Lender, and the Debtor shall be in compliance with the Budget;<br>(iv)  The following statements shall be true and correct: (i) the representations and warranties contained in the DIP Loan Documents are true and correct in all material respects (unless otherwise qualified by materiality in which case such representations and warranties shall be true and correct in all respects) on and as of such date, as though made on and as of such date, except to the extent that any such representation or warranty expressly relates to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (unless otherwise qualified by materiality in which case such representations and warranties shall be true and correct in all respects) on and as of such earlier date) and (ii) no Default or Event of Default shall have occurred and be continuing on such date, or would result from the making of such borrowing on such date; and<br>(v)   Such other conditions as are reasonably requested by the DIP Lender shall have been satisfied by the Debtor. |
| **Interest Rate** | The DIP Loan will accrue interest at a fixed rate of 12.00% per annum. |

| Rule | Summary of Material Terms |
|---|---|
|  | During the continuance of an Event of Default that is not cured, the DIP Loan and all other outstanding obligations will bear interest at 18% per annum as allowed under applicable Florida and Federal law. |
| **Use and Limitations of DIP Loan** | As set forth in the attached Term Sheet, the proceeds of the DIP Loan will be used to fund the Debtor's cash needs in accordance with the budgetary requirements contained in the Term Sheet and to be set forth in the Budget. |
|  | However, no portion of the Debtor's Cash Collateral, the DIP Loan, or the Collateral shall be used: |
|  | (a) to pursue (i) any action adverse to interests of DIP Lender; (ii) invalidate, set aside, avoid, subordinate DIP Lien, or Final Order; (iii) for monetary, injunctive or other affirmative relief against the DIP Lender; (iv) preventing, hindering, delaying DIP Lender's exercise of any right or remedy; |
|  | (b) for objecting to, contesting, interfering with DIP Lender's enforcement or realization upon any Collateral once an Event of Default occurred; |
|  | (c) using, selling or disposing of Collateral without consent of DIP Lender; |
|  | (d) objecting to or challenging liens or interest held by DIP Lender; |
|  | (e) asserting, commencing, prosecuting any claim or cause of action, including Chapter 5 claims against the DIP Lender; |
|  | (f) prosecuting an objection or contesting the validity, priority, extent or enforceability of any other rights or interests of DIP Lender; or |
|  | (g) for preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and remedies granted under the Final Order. |
| **Liens and Priorities** | All obligations under the DIP Loan shall be secured, pursuant to 11 U.S.C. § 364(d), by a perfected first-priority, priming, senior lien on all now-owned or after-acquired Property (as defined below) of the Borrower (the "DIP Liens"). |
| **DIP Collateral and Exclusions** | With respect to the DIP Liens, "Property" shall mean collectively all real and personal property of the Debtor, whether tangible or intangible, including, without limitation, (i) all cash, money, cash equivalents, deposit accounts, securities accounts, accounts, other receivables, chattel paper, contract rights, goods and inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles of any kind, rights to the payment of money, supporting obligations, guarantees, general intangibles, letter of credit rights, commercial tort claims, causes of action and all substitutions, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (ii) all owned real property, all leased real property, all leasehold interests, all rents and leases from |

| Rule | Summary of Material Terms |
|------|---------------------------|
| | any real property interests, and all other proceeds of real property; (iii) subject to the entry of the Final Order, rights under Section 506(c) of the Bankruptcy Code and (iv) all proceeds of the foregoing (collectively, the "DIP Collateral"). For the avoidance of doubt, the DIP Collateral shall include all the foregoing rights, property, claims, and interests, without regard as to whether such rights, property, claims, and interests came into the Debtor's estate, or otherwise arose, after the Petition Date.<br><br>The DIP Collateral subject of the DIP Liens securing the DIP Loan and the DIP Admin Claim set forth above shall not include any claims and causes of action available to the Debtor or the estate through the exercise of the powers granted pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), or the proceeds of Avoidance Actions.<br><br>All of the DIP Liens described herein with respect to the DIP Collateral shall be deemed effective and perfected by the entry of the Final Order and without the necessity or filing of the execution of mortgages, security agreements, pledge agreements, financing statements, control agreements, or other agreements. |
| **Fees** | The DIP Loan does not require any loan or closing fees. |
| **Chapter 11 Milestones** | The Debtor shall achieve the following milestones (the "Milestones"), the failure of which shall constitute an Event of Default under the DIP Loan:<br><br>(i)    A final hearing on the approval and entry of a Final Order (in form and substance acceptable to the DIP Lender in its sole discretion) approving the DIP Loan and the DIP Loan Documents on a final basis shall be conducted no later than March 7, 2023, or as soon thereafter as the Bankruptcy Court's calendar permits, and a Final Order entered promptly thereafter. |
| **Events of Default and Cure Period** | The DIP Loan Documents contain events of default which are usual and customary for this type of financing, including without limitation failure to satisfy the Milestones and the following:<br><br>(i)    failure to comply with the terms of the Final Order (including in respect of the Approved Budget as set forth herein);<br>(ii)    the obtaining of credit or the incurrence of indebtedness that is equal to or senior to the liens and claims of DIP Lender, or entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein;<br>(iii)    termination of DIP Lender's lien or security interest or assertion by Borrower that DIP Lender's lien is not valid or perfected;<br>(iv)    relief from stay granted (a) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral and the subsequent commencement of a foreclosure action in connection therewith, or (b) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory |

| Rule | Summary of Material Terms |
|------|---------------------------|
| | agency or authority and the subsequent commencement of a foreclosure action in connection therewith, which liens would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Borrower; |
| | (v)    the reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of the Final Order; |
| | (vi)   dismissal or conversion of the Chapter 11 Case, or appointment of a chapter 11 trustee or examiner; |
| | (vii)  the sale of any portion of the Borrower's assets outside the ordinary course of business without the prior written consent of the DIP Lender, in its sole discretion, or without the repayment in full of the DIP Loan in connection therewith; |
| | (viii) the granting of any motion providing for reconsideration, stay, or vacatur of the Final Order; or |
| | (ix)  (1) the Borrower's assertion in any pleading filed in any court that any provision of the Final Order is not valid and binding for any reason, or (2) any provision of the Final Order shall, for any reason, cease to be valid and binding without the prior written consent of the DIP Lender; and (y) the commencement of a foreclosure action in a court of competent jurisdiction by the holder of a secured loan with a lien on the Project junior to the DIP Liens. |
| | Notwithstanding anything herein to the contrary, if the DIP Lender, in its sole and absolute discretion, determines an Event of Default hereunder has occurred, the Borrower shall have a period of 10 days thereafter to cure (the "Cure Period") such Event of Default, provided that the Borrower shall have the right to contest the assertion of such Event of Default before the Bankruptcy Court. |
| **Indemnification** | The Debtor shall indemnify and hold harmless the DIP Lender in accordance with the terms and conditions set forth in the Term Sheet. |
| **Waivers** | The Final Order shall provide customary waivers in favor of the DIP Lender, including waivers of (i) automatic stay in connection with the DIP Lender's enforcement of remedies upon an Event of Default, subject in all events to filing a motion and obtaining an order of the Bankruptcy Court in connection therewith, (ii) any surcharge of costs or expenses with respect to the DIP Lender's interest in the Collateral under Sections 506(c) and 552 of the Bankruptcy Code, and (iii) the equitable doctrine of marshaling. |

13.    The description of the DIP Loan contained herein is intended as a summary only and is qualified in its entirety by reference to the DIP Loan Documents, including the attached Term Sheet, and the DIP Orders. To the extent there is any inconsistency between the language of

the DIP Loan Documents and the Financing Orders and the description thereof set forth in this Motion, the DIP Loan Documents and the Financing Orders shall control any such inconsistency.

## **RELIEF REQUESTED AND GROUNDS FOR RELIEF**

14.     Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security.  If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or secured by a lien on unencumbered property, or combination of the foregoing.

15.     As detailed herein, the need for the Debtor to obtain postpetition financing is critical to its ability to continue operations and successfully reorganize, and the Debtor has been unable to locate financing on a fully unsecured basis.

16.     The Debtor is therefore seeking to provide the DIP Lender with: (a) an allowed superpriority administrative expense claim pursuant to 11 U.S.C. §§ 364(c)(1) and 507(b) (the "DIP Admin Claim"); and valid, enforceable, non-avoidable and fully perfected liens (the "DIP Liens"), pursuant to § 364(d), on all DIP Collateral.

### A.     **The Debtor's Need for the DIP Loan**

17.     The Debtor requires immediate access to the DIP Loan to satisfy near-term and long-term expenses critical to the business and its chapter 11 efforts, which, in turn, will preserve and maximize the value of the Debtor's estate. The Debtor is unable to generate sufficient levels of operating cash flow in the ordinary course of business to cover its operational costs and the projected administrative costs of this chapter 11 case absent immediate funding.

9

18. The Debtor requires the funding available from the DIP Loan in order to, among other things, fund working capital, meet payroll obligations, pay rent, pay suppliers, cover overhead costs, and make any other payments that are essential for the continued management, operation, and preservation of the Debtors' business. The ability to make these payments when due is essential to the continued operations of the Debtor's business during the pendency of this Chapter 11 case.

19. If the Debtor cannot quickly access the DIP Loan, based on its financial forecasts and the Budget which will be filed before a hearing on this Motion, the Debtor will not be able to operate their business in the ordinary course until the hearing on the Final Order. In tum, this would negatively impact the Debtor's revenue, jeopardize confidence in the Debtor's business, and harm the value of the Debtor's bankruptcy estate to the detriment of its creditors.

20. As to be set forth in the Budget, the liquidity provided by the DIP Loan should allow the Debtor to meet its postpetition obligations, thereby avoiding any future disruptions from supplies, and allowing the Debtor to focus on its overall reorganization efforts and plan.

21. As such, absent immediate access to the DIP Loan, the Debtor could (a) face additional interruptions of its business; (b) lose the support of key constituencies, including the Debtor's workforce, landlords, and customers; and (c) be forced to significantly modify, reduce, or shut down entirely, its business operations.

22. To avoid those outcomes, it is imperative that the Debtor has access to the DIP Loan beginning in March 2023, in order to signal to the Debtor's key counterparts, including its employees, landlords, vendors, and customers, that, despite commencement of this case, the outlook for the Debtor is strong, and that it has the liquidity necessary to meet its obligations in the ordinary course until the business is able to emerge from the chapter 11 process.

**B.      The DIP Loan is the only financing available to the Debtor**

23.      The Debtor is unable to find alternative financing on an unsecured basis without administrative priority.  Bankruptcy courts recognize that the appropriateness of a proposed post-petition financing facility must be considered in light of the current market conditions.  *See In re Lyondell Chem. Co.,* No. 09-10023 (Bankr. S.D.N.Y. 2009).  Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).  Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Section 364(a) and (b).  *See In re Plabell Rubber Prods., Inc.,* 137 B.R. 897, 899-900 (Bankr. N.D. Ohio 1992).

24.      Despite its diligent efforts in seeking unsecured lending, the Debtor has been unable to secure debtor-in-possession financing from any source other than the DIP Lender. Accordingly, the Debtor submits that the DIP Loan represents the best and only terms available to the Debtor for postpetition financing.

**C.      Good Faith**

25.      The Debtor and the DIP Lender have negotiated the terms and conditions of the proposed DIP Loan in good faith, the terms and conditions of such loan are fair and reasonable and are supported by reasonably equivalent value. Any credit extended by the DIP Lender pursuant to the terms of this Motion will have been extended in "good faith" (as that term is used in 11 U.S.C. § 364(e)).

**D.      Request for Waiver of Stay**

26.      The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."

27.      As set forth above, the DIP Loan is essential to prevent considerable damage to the Debtor's operations.  Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

28.      Upon entry of a non-appealable order approving the Motion, the Debtor agrees that the automatic stay of Bankruptcy Code § 362 shall be modified to allow the DIP Lender and the Debtor to consummate this Loan.

**E.      Interim Approval and Irreparable Harm**

29.      Bankruptcy Rule 4001 provides that a final hearing on a motion to obtain postpetition financing may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary, expedited hearing on the motion and to authorize the proposed debtor in possession financing to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

30.      The Debtor has an urgent and immediate need for cash to continue to operate.

31.      Absent access to the DIP Loan, the Debtor will have no ability to meet its ongoing obligations to suppliers, vendors, employees, landlords, and other creditors. If the Debtor is unable to pay its ongoing obligations, it will not be able to operate. In contrast, the Debtor's access to the DIP Loan will ensure that the going concern value of its assets is preserved, a value substantially

greater than the value which would be realized if the Debtor were forced to cease operations immediately due to a lack of liquidity.

32.    Accordingly, the Debtor requests that the Court conduct a preliminary hearing on this Motion **on or before March 7, 2023**, and authorize the Debtor, from the entry of an interim DIP Order until the Final Hearing, to obtain credit pursuant to the DIP Facility to the extent necessary to avoid immediate and irreparable harm to its estate.

33.    The Debtor further requests that the Court schedule the Final Hearing and authorize the Debtor to mail a copy of the Interim Financing Order when entered by the Court, which fixes the time and date of the Final Hearing and the deadline for the filing of objections to this Motion and the entry of the Final Financing Order. The Debtor requests that the Court find that such notice of the Final Hearing is sufficient notice under Bankruptcy Rules 2002 and 4001.

**F.    Notice**

34.    No trustee or examiner has been appointed in this case. Notice of this Motion has been given by (i) the Court's CM/ECF Transmission to Counsel for the Committee and the Office of the United States Trustee for the Middle District of Florida, and (ii) United States first class mail to the Debtor, the DIP Lender, all known secured creditors of the Debtor, all parties listed on the Local Rule 1007-2 Parties in Interest List for this case (including the twenty (20) largest unsecured creditors of the Debtor), and certain other parties.

35.    The Debtor submits that, given the nature of the relief requested herein, no other or further notice need be given. Accordingly, the Debtor requests that the Court enter an order finding that such notice of this Motion is adequate and sufficient and complies with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court. The Debtor submits that, given the emergency nature of the relief requested herein, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting this Motion, authorizing the Debtor to obtain financing and grant liens pursuant to 11 U.S.C. §§ 364(c) and (d) in accordance with the terms and conditions of the DIP Loan Documents, authorizing the Debtor's borrowing of up to $500,000 pursuant to the terms of the Term Sheet and an Interim Financing Order and pending the Final Hearing pursuant to Bankruptcy Rule 4001, and granting such other and further relief as may be just and proper.

**RESPECTFULLY SUBMITTED** this 28<u>th</u> day of February 2023.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane L. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Telephone: 407-337-2060
Facsimile: 407-337-2050
*Attorneys for the Debtor*

14

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                         **CASE NO.: 6:22-bk-04313-GER**

**BERTUCCI'S RESTAURANTS, LLC,**                              **CHAPTER 11**

                    **Debtor.**

_____/

**CERTIFICATE OF SERVICE**

        **I HEREBY CERTIFY** that on this 28th day of February 2023, I caused the foregoing
**DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO OBTAIN POST-PETITION
FINANCING AND GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS, along with all exhibits,** to be filed via the Court's CM/ECF system which
will serve an electronic Notice of Filing upon all parties entitled to receive CM/ECF noticing; and
that a true and correct copy of the same was also furnished via U.S. First Class mail, postage
prepaid, to: **DEBTOR**, **BERTUCCI'S RESTAURANTS, LLC**, 4700 Millenia Blvd., Suite 400,
Orlando, FL 32836; **PHL HOLDINGS, LLC,** c/o Jason B. Burnett, Esq., GRAYROBINSON,
P.A., 50 North Laura Street, Suite 1100, Jacksonville, FL 32202 (Jason.Burnett@Gray-
Robinson.com) and Kenneth B. Jacobs, Esq., GRAYROBINSON, P.A., 50 North Laura Street,
Suite 1100, Jacksonville, FL 32202 (ken.jacobs@gray-robinson.com); **PB RESTAURANTS,
LLC**, 4700 Millenia Blvd., Suite 400, Orlando, FL 32836; **MARK J. WOLFSON,** Foley &
Lardner, LLC, 100 N. Tampa St., Ste. 2700, Tampa, FL 33601; the **U.S. TRUSTEE'S OFFICE**,
400 West Washington Street, Suite 1120, Orlando, Florida 32801; and all creditors and interested
parties as shown on the Local Rule 1007-2 **mailing matrix** not receiving electronic noticing.

                                        /s/ R. Scott Shuker_____
                                        R. Scott Shuker, Esq.

# EXHIBIT "A"

BERTUCCI'S RESTAURANTS, LLC
SUMMARY OF TERMS AND CONDITIONS FOR
UP TO $500,000.00
IN PRIMING SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION
FINANCING

The following describes the terms of certain debtor-in-possession financing ("DIP Facility") to be provided to BERTUCCI'S RESTAURANTS, LLC filed under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") styled In re: Bertucci's Restaurants, LLC, Case No. 6:22-bk-04313-GER pending in the Bankruptcy Court (the "Chapter 11 Case"). This term sheet (the "Term Sheet") and the DIP Lender's (as defined below) commitment and other obligations hereunder are subject to satisfaction or waiver (by the DIP Lender in its sole discretion) of the following: (i) the preparation, execution and delivery of mutually acceptable loan documentation, which shall take the form of this Term Sheet and that certain Debtor-in-Possession Secured Promissory Note, incorporating substantially all of the terms and conditions outlined in this Term Sheet ("DIP Facility Documents"); (ii) the accuracy and completeness of all representations that the Debtor (as defined below) makes to the DIP Lender and all information that has been furnished to the DIP Lender; (iii) the Debtor's compliance with the terms of this Term Sheet; and (iv) the other conditions set forth in this Term Sheet or referred to in Appendix I. Except as expressly provided in any binding written agreement the parties may enter into in the future, upon approval of the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), no past, present or future action, course of conduct, or failure to act relating to the transactions or proposals referred to in this Term Sheet or relating to the negotiation of the terms of such transactions or proposals shall give rise to or serve as the basis for any obligation or other liability on the part of the DIP Lender other than as set forth herein. The terms and conditions set forth herein are mutually dependent on each other, and the DIP Lender shall not be obligated to extend credit unless agreement with the Debtor and approval by the Bankruptcy Court is obtained with respect to such terms and conditions as a whole.

| Bertucci's Restaurants, LLC | Bertucci's Restaurants, LLC, as a debtor and debtor in possession ("Debtor" or "Borrower") in the Chapter 11 filed on December 5, 2022 (the "Petition Date"). |
|---|---|
| PHL Holdings, LLC | "DIP Lender" |
| Amount | The DIP Facility shall comprise a revolving loan in an aggregate amount of up to $500,000.00 (the "DIP Loan"), to meet Debtor's cash demands. |
| Approved Budget and Use of Cash Collateral | The Debtor shall use up to $500,000.00 of the DIP Loan to fund its cash needs as set forth in that certain estimated budget (to be attached to any motion to approve this agreement) (the "Budget").

The DIP Loan draws shall be funded into the Borrower's existing DIP account maintained at PNC Bank on a weekly basis at the sole discretion of the DIP Lender, pursuant to pay applications and related |

| | |
|---|---|
| | documents submitted to the DIP Lender by Borrower, and the amounts in the account that may be drawn out during each week will be limited to the maximum amount of DIP Loans projected to be utilized during such week in accordance with the Budget. |
| | The DIP Loan is subject to and conditioned on the entry of a final order (the "Final Order") of the Bankruptcy Court approving the DIP Loan on the terms and conditions contained herein. |
| | At the request of the DIP Lender, the Borrower shall provide a variance report/reconciliation (the "Budget Variance Report") for a specified period of time: (i) showing by line item actual cash receipts, disbursements, professional fees, capital expenditures, and billings for the immediately preceding period or periods, including on a cumulative basis on and after the entry of the Final Order, noting therein all variances, on a line-item basis, from amounts set forth for such period in the Approved Budget, and shall include explanations for any variance in the amount of 5% for such week from the Approved Budget; and (ii) certified by a responsible officer of the Borrower. The Borrower's actual cash expenditures for any line item during the period of the Approved Budget may exceed the corresponding budgeted amounts for that item under the Approved Budget, if the Borrower is able to reduce and transfer the amounts budgeted under a separate line item to cover such excess. |
| Priority Liens and Super-priority claim | All obligations under the DIP Facility shall at all times: |
| | (i)      be entitled, pursuant to Section 364(c)(1) of the Bankruptcy Code, to superpriority administrative claim status having priority over any and all other administrative claims (the "DIP Admin Claim"); |
| | (ii)     be secured, pursuant to Section 364(d) of the Bankruptcy Code, by a perfected first-priority, priming, senior lien on all now-owned or after-acquired Property (as defined below) of the Borrower (the "DIP Liens"). |
| | For purposes hereof, "Property" shall mean collectively all real and personal property of the Debtor, whether tangible or intangible, including, without limitation, (i) all cash, money, cash equivalents, deposit accounts, securities accounts, accounts, other receivables, chattel paper, contract rights, goods and inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), furniture, fixtures, equipment, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles of any kind, rights to the payment of money, supporting |

| | |
|---|---|
| | obligations, guarantees, general intangibles, letter of credit rights, commercial tort claims, causes of action and all substitutions, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (ii) all owned real property, all leased real property, all leasehold interests, all rents and leases from any real property interests, and all other proceeds of real property; (iii) subject to the entry of the Final Order, rights under Section 506(c) of the Bankruptcy Code and (iv) all proceeds of the foregoing (collectively, the "DIP Collateral"). For the avoidance of doubt, the DIP Collateral shall include all the foregoing rights, property, claims, and interests, without regard as to whether such rights, property, claims, and interests came into the Debtor's estate, or otherwise arose, after the Petition Date. <br><br> The DIP Collateral subject of the DIP Liens securing the DIP Loan and the DIP Admin Claim set forth above shall not include any claims and causes of action available to the Debtor or the estate through the exercise of the powers granted pursuant to Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), or the proceeds of Avoidance Actions. <br><br> All of the DIP Liens described herein with respect to the DIP Collateral shall be deemed effective and perfected by the entry of the Interim and the Final Order and without the necessity or filing of the execution of mortgages, security agreements, pledge agreements, financing statements, control agreements, or other agreements. |
| DIP Closing Date | The date on or after the entry of the Order on which the "Conditions to DIP Closing" described in Appendix I hereto have been satisfied or waived by the DIP Lender (the date of such closing, the "DIP Closing Date"). |
| Maturity | The DIP Loan shall be repaid in full, and the Commitment shall terminate, on the earliest to occur (the "Maturity Date") of (i) on September 30, 2023 (ii) the date the Bankruptcy Court enters an order converting the bankruptcy case of the Debtor to a Chapter 7 liquidation, dismissing the bankruptcy case of the Debtor, or appointing a trustee; (iii) the occurrence of an Event of Default under the DIP Facility Documents that has not been cured as provided herein; or (iv) the sale or refinancing of all or substantially all of the Debtor's Property. |
| Use of Proceeds | Subject to the terms and conditions herein, the proceeds of DIP Loan will be used in accordance with the terms of the Budget. No portion of the Borrower's Cash Collateral, the DIP Loan, or the Collateral (a) to pursue (i) any action adverse to interests of DIP Lender; (ii) invalidate, set aside, avoid, subordinate DIP Lien, or Final Order; (iii) for monetary, injunctive or other affirmative relief against the DIP Lender; (iv) preventing, hindering, delaying DIP Lender's exercise of any right or remedy; (b) for objecting to, contesting, interfering with |

| | DIP Lender's enforcement or realization upon any Collateral once an Event of Default occurred; (c) using, selling or disposing of Collateral without consent of DIP Lender; (d) objecting to or challenging liens or interest held by DIP Lender; (e) asserting, commencing, prosecuting any claim or cause of action, including Chapter 5 claims against the DIP Lender; (f) prosecuting an objection or contesting the validity, priority, extent or enforceability of any other rights or interests of DIP Lender; or (g) for preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and remedies granted under the Final Order. |
|---|---|
| Interest Rate | All amounts outstanding under the DIP Facility will accrue interest at a fixed rate of 12.00% per annum, which interest shall be paid on a monthly basis in arrears from the proceeds of the DIP Loan. <br><br> During the continuance of an Event of Default that has not been cured as set forth herein, the DIP Loans and all other outstanding obligations will bear interest at 18% per annum as allowed under the applicable Federal and Florida law. |
| Voluntary Prepayments | The DIP Loan may be permanently prepaid in whole or in part by the Borrower at any time without premium or penalty. |
| Representations | Those representations and warranties as are customary or appropriate in the context of the proposed DIP Facility (including, without limitation, organization and good standing, due authorization, all governmental approvals, taxes, all permits, insurance, compliance with regulation, etc.) or as otherwise required by the DIP Lender. |
| Affirmative Covenants | The DIP Facility shall contain affirmative covenants customary or appropriate in the context of the proposed DIP Facility or as otherwise required by the DIP Lender, but in all events may be substantially similar to those included in the Existing DIP Loan, provided that they are not inconsistent herewith. |
| Negative Covenants | The DIP Facility shall contain negative covenants customary or appropriate in the context of the proposed DIP Facility or as otherwise required by the DIP Lender, but in all events substantially similar to those included in the Existing DIP Loan, provided that they are not inconsistent herewith. |
| Financial Covenants | Compliance with the Approved Budget with actual results to be tested against such Approved Budget on a periodic basis at the option of the DIP Lender. <br><br> The Borrower shall allow the DIP Lender (and its representatives, professionals and consultants) access to the Debtor's premises, representatives and books and records during regular business hours in order to assess or monitor financial performance, Approved Budget compliance and Collateral. |
| Milestones | The Debtor shall achieve the following milestones (the "Milestones"), the failure of which shall constitute an Event of Default under the DIP Facility: |

| | |
|---|---|
| | (i)      A final hearing on the approval and entry of a Final Order (in form and substance acceptable to the DIP Lender in its sole discretion) approving the DIP Loan and the DIP Facility Documents on a final basis shall be conducted no later than March 7, 2023, or as soon thereafter as the Bankruptcy Court's calendar permits, and a Final Order entered promptly thereafter. |
| Waivers | The Final Order shall provide customary waivers in favor of the DIP Lender, including waivers of (i) automatic stay in connection with the DIP Lender's enforcement of remedies upon an Event of Default, subject in all events to filing a motion and obtaining an order of the Bankruptcy Court in connection therewith, (ii) any surcharge of costs or expenses with respect to the DIP Lender's interest in the Collateral under Sections 506(c) and 552 of the Bankruptcy Code, and (iii) the equitable doctrine of marshaling. |
| Events of Default | The DIP Facility shall contain the following events of default (the "Events of Default"): (i) failure to comply with the terms of the Final Order (including in respect of the Approved Budget as set forth herein); (ii) the obtaining of credit or the incurrence of indebtedness that is equal to or senior to the liens and claims of DIP Lender, or entitled to priority administrative status which is equal or senior to that granted to the DIP Lender herein; (iii) termination of DIP Lender's lien or security interest or assertion by Borrower that DIP Lender's lien is not valid or perfected; (iv) relief from stay granted (a) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral and the subsequent commencement of a foreclosure action in connection therewith, or (b) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority and the subsequent commencement of a foreclosure action in connection therewith, which liens would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Borrower; (v) the reversal, vacatur, or modification (without the express prior written consent of the DIP Lender, in its sole discretion) of the Final Order; (vi) dismissal or conversion of the Chapter 11 Case, or appointment of a chapter 11 trustee or examiner; (vii) the sale of any portion of the Borrower's assets outside the ordinary course of business without the prior written consent of the DIP Lender, in its sole discretion, or without the repayment in full of the DIP Loan in connection therewith; (viii) the granting of any motion providing for reconsideration, stay, or vacatur of the Final Order; or (ix) (1) the Borrower's assertion in any pleading filed in any court that any provision of the Final Order is not valid and binding for any reason, or (2) any provision of the Final Order shall, for any reason, cease to be valid and binding without the prior written consent of the DIP Lender; and (y) the commencement of a foreclosure action |

| | |
|---|---|
| | in a court of competent jurisdiction by the holder of a secured loan with a lien on the Project junior to the DIP Liens. Notwithstanding anything herein to the contrary, if the DIP Lender, in its sole and absolute discretion, determines an Event of Default hereunder has occurred, the Borrower shall have a period of 10 days thereafter to cure (the "Cure Period") such Event of Default, provided that the Borrower shall have the right to contest the assertion of such Event of Default before the Bankruptcy Court. |
| Remedies | Immediately upon the occurrence and during the continuation of an Event of Default that is not cured within the Cure Period, the DIP Lender may (i) (a) declare all obligations to be immediately due and payable, (b) declare the termination, reduction or restriction of any further Commitment, to the extent any such Commitment remains, (c) charge default interest on the sums outstanding on the DIP Loan, and (d) terminate the DIP Facility as to any future liability or obligation of the DIP Lender, but without affecting any of the obligations under the DIP Facility, the liens under the DIP Facility, or post-petition administrative superpriority claim status; and (ii) declare a termination, reduction or restriction on the ability of the Borrower to use any cash collateral derived solely from the proceeds of Collateral (any such declaration shall be made to the Debtor and the United States Trustee (if applicable); and (iii) any and all customary remedies, including, without limitation, the right to foreclose and realize on all DIP Collateral and the right to exercise any remedy available under the DIP Facility Documents, the Final Order, or applicable law, subject in all events to the Bankruptcy. Court's entry of an order after the DIP Lender files a motion asserting such Event of Default and confirming termination of, or otherwise for relief from, the automatic stay, and the Bankruptcy Court conducts a hearing on an expedited basis or emergency basis, not more than three days from the date of filing.  DIP Lender shall not, by any act, delay, omission or otherwise be deemed to have expressly or impliedly waived any of its rights or remedies unless such waiver shall be in writing and signed by an authorized officer of DIP Lender. A waiver by DIP Lender of any right or remedy on any one occasion shall not be construed as a bar to or waiver of any such right or remedy which DIP Lender would otherwise have on any future occasion, whether similar in kind or otherwise. |
| Release | The Borrower will provide customary releases for any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness or obligations related to or arising out of the DIP Loan (the "Release"). |
| Indemnity | The Borrower shall be obligated to indemnify and hold harmless the DIP Lender, and its officers, directors, fiduciaries,   employees, agents, advisors, attorneys and representatives from and against all losses, claims, liabilities, damages, and expenses (including, without |

| | limitation, out-of-pocket fees and disbursements of counsel) in connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility or the transactions contemplated in this Term Sheet. |
|---|---|
| Governing Law | The DIP Facility Documents will provide that the Borrower will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court, or in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent jurisdiction in the State of Florida; and shall waive any right to trial by jury.  Florida law shall govern the DIP Facility Documents except to the extent preempted by federal bankruptcy laws. |

The preceding summary of proposed terms and conditions is not intended to be all-inclusive. Any terms and conditions that are not specifically addressed above would be subject to future negotiations with the DIP Lender and comprehensive documentation of the transaction that is acceptable to the DIP Lender will have to be prepared.

IN WITNESS WHEREOF, the undersigned have caused this Term Sheet to be executed and delivered by their duly authorized officers, as of February __, 2023.

**BERTUCCI'S RESTAURANTS, LLC,**
as Borrower


By:_____
Name: Brian Connell
Title: Chief Financial Officer


**PHL HOLDINGS, LLC**
as DIP Lender


By:_____
Name: Thomas Avallone
Title: Manager

Appendix I

Conditions to DIP Closing

Conditions to DIP Loan

1. Final Order/Bankruptcy Matters.

(a)    The Bankruptcy Court shall have entered a Final Order as to the DIP Facility (and no appeal thereof shall have been filed or remain pending) which Final Order shall be in form and substance satisfactory in the sole discretion of the DIP Lender and shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, vacated, appealed or subject to a stay pending appeal or otherwise challenged or subject to any challenge, provided that the Final Order shall in substantially the same form as the Final Order authorizing the DIP Loan.

(b)    All orders to be entered by the Bankruptcy Court, including orders pertaining to cash management, and all other motions and documents filed or to be filed with, and submitted to, the Bankruptcy Court in connection therewith shall be in form and substance reasonably satisfactory to the DIP Lender, be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed or vacated absent prior written consent of the DIP Lender. The DIP Lender acknowledges that the Debtor has satisfied this Condition as of the date hereof.

(c)    All costs, fees, expenses (including, without limitation, reasonable legal fees) and other compensation contemplated by the DIP Facility Documents and this Term Sheet to be payable shall have been paid to the extent due and the Debtor shall have complied in all respects with all of their other obligations to the DIP Lender.

(d)    The DIP Lender shall be satisfied that the Debtor has complied with all other customary closing conditions (unless such conditions are waived by the DIP Lender). The Debtor and the transactions contemplated by this Term Sheet shall be in compliance with all applicable laws and regulations.

(e)    Execution and delivery by the Debtor of the DIP Facility Documents evidencing the loans made and to be made under the DIP Facility;

(f)    The DIP Lender shall have received the Approved Budget, any required periodic updates pursuant to the Approved Budget and any variance reports, each in form and substance satisfactory to the DIP Lender, and the Debtor shall be in compliance with the Approved Budget.

(g)    The following statements shall be true and correct: (i) the representations and warranties contained in the DIP Facility Documents are true and correct in all material respects (unless otherwise qualified by materiality in which case such representations and warranties shall

Page **8** of **9**

be true and correct in all respects) on and as of such date, as though made on and as of such date, except to the extent that any such representation or warranty expressly relates to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (unless otherwise qualified by materiality in which case such representations and warranties shall be true and correct in all respects) on and as of such earlier date) and (ii) no Default or Event of Default shall have occurred and be continuing on such date, or would result from the making of such borrowing on such date.

      (h)    Such other conditions as are reasonably requested by the DIP Lender shall have been satisfied by the Debtor.

Label Matrix for local noticing
113A-6
Case 6:22-bk-04313-GER
Middle District of Florida
Orlando
Tue Feb 28 11:09:55 EST 2023

James Hoffman
Offit Kurman, P.A.
7501 Wisconsin Avenue
Suite 1000W
Bethesda, MD 20814-6604

Julia Mohan
35 W. Wacker Dr. 29th Floor
Chicago, IL 60601-1748


153 West Hancock Street Associates, LP
FOWLER WHITE BURNETT, P.A.
Northbridge Centre
515 North Flagler Drive, Suite 2100
West Palm Beach, FL 33401-4332

805 MAIN STREET LLC
c/o Edward M. Fitzgerald, Esq.
Holland & Knight LLP
200 S. Orange Avenue, Suite 2600
Orlando, FL 32801-3453

AFA Protective Systems, Inc.
155 Michael Drive
Syosset, NY 11791-5310


Avon Marketplace Investors, LLC
Marc J. Kurzman, Esq.
1055 Washington Blvd
Stamford, CT 06901-2216

Best Petroleum LLC
Country Manor Norwood Trust
40 Grove St., Unit 430
Wellesley, MA 02482-7774

(p)C H ROBINSON WORLDWIDE INC
ATTN BANKRUPTCY TEAM BILL GLAD
14701 CHARLSON ROAD
SUITE 2400
EDEN PRAIRIE MN 55347-5076


C.H. Robinson Worldwide, Inc.
c/o Mark A. Amendola, Esq.
Martyn and Associates Co.
820 W. Superior Ave., Tenth Floor
Cleveland, OH 44113-1827

CIL Walkers LLC
c/o Bank of America, N.A.
PO Box 105576
Atlanta, GA 30348-5576

Canton R2G Owner LLC
PO Box 411261
Boston, MA 02241-1261


Christine Pageau
c/o Alicia M. Kupcinskas, Esq.
Brennan Manna Diamond PL
5210 Belfort Road, Suite 400
Jacksonville, FL 32256-6050

Commerce Way Development Co., LLC
c/o Matthew J. McGowan
56 Exchange Terrace, Suite 500
Providence, RI 02903-1772

Concord Retail Partners, L.P.
c/o Dana S. Plon, Esquire
Sirlin Lesser & Benson, P.C.
123 South Broad Street, Suite 2100
Philadelphia, PA 19109-1042


Condord Gallery, Inc.
c/o Andrew L. Cole, Esq.
Cole Schotz P.C.
P.O. Box 7189
Wilmington, DE 19803-0189

Connecticut Natural Gas Corp
76 Meadow St.
East Hartford, CT 06108-3218

Creditor's Committee, c/o
Mark Wolfson, Esq.
100 North Tampa Street
Suite 2700
Tampa, FL 33602-5810


D&H 402-A Pad
c/o Bodie B. Colwell, Esq.
Preti Flaherty, LLP
PO Box 9546
Portland, ME 04112-9546

D&H 402-A Pad
c/o John M. Sullivan
Preti Flaherty Beliveau & Pachios PLLP
PO Box 1318
Concord, NH 03302-1318

D&H 402A Pad Partnership TS
c/o Caron & Bletzer
PO Box 969
Kingston, NH 03848-0969


Ecolab Inc.
c/o Kohner, Mann & Kailas, S.C.
4650 North Port Washington Rd.
Milwaukee, WI 53212-1077

Frontier Dr Metro Center LP
Lockbox #283523
PO Box 713523
Philadelphia, PA 19171-3523

Griswold Mall Associates, LLC
c/o Richard Johnston, Jr.
JOHNSTON LAW, PLLC
7370 College Parkway, Suite 210
Fort Myers, FL 33907-5559


Lincoln Plaza Assoc
PO Box 829424
Philadelphia, PA 19182-9424

MNH Mall, LLC
Mall of New Hamphire
14184 Collections Center Dr
Chicago, IL 60693-0001

MOBO Systems
285 Fulton St
Floor 82
New York, NY 10007-0166


Mall at Rockingham LLC
Mall at Rockingham Park
14165 Collections Center Dr
Chicago, IL 60693-0001

Mall at Solomon Pond, LLC
14199 Collections Center Dr
Chicago, IL 60693-0001

Medford Wellington Service Co., Inc.
c/o Kate P. Foley, Esq.
Mirick O'Connell
1800 West Park Dr., Ste 400
Westborough, MA 01581-3960

Medford Wellington Service Co., Inc.
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

NCR CORPORATION
c/o Ashley Thompson, Law Department
864 Spring Street , NE
Atlanta, GA 30308

NCR Corporation
P.O. Box 198755
Atlanta, GA 30384-8755

Norwood Country Manor LLC
c/o Gillian D. Williston, Troutman Peppe
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462-3038

PB Restaurants, LLC
11 West 42nd Street
Orlando, FL 32839

PB Restaurants, LLC
c/o Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

PHL Holdings, LLC
c/o Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

PHL Holdings, LLC
c/o Kenneth B. Jacobs, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

RPT Realty, L.P.
c/o Ilan Markus
Barclay Damon LLP
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511-5960

Reward Network
540 W Madison St
Suite 2400
Chicago, IL 60661-2562

Rewards Network Establishment Services Inc.
c/o Gabriel M. Hartsell
2398 E. Camelback Road
Suite 760
Phoenix, AZ 85016-9005

Route 140 School Street, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

SIMON PROPERTY GROUP, INC.
c/o Ronald M. Tucker, VP & Bankruptcy Co
225 West Washington Street
Indianapolis, IN 46204-3438

SPRINGFIELD SQUARE CENTRAL, LP
c/o Robert Langer
1001 Baltimore Pike
Springfield, PA 19064-2800

SYSCO Corporation
1390 Enclave Parkway
Houston, TX 77077-2099

Simon Property Group, Inc.
225 West Washington Street
Indianapolis, IN 46204-3438

Snowden Holdings, LLC
c/o Daniel E. Etlinger, Esq.
Jennis Morse Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

Snowden Holdings, LLC
c/o David S. Jennis Esq.
Jennis Morse Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

Springfield Square Cent LP
c/o Continental Dev. LLC
1604 Walnut St - 5th Floor
Philadelphia, PA 19103-5421

St. John Properties, Inc - B
Accounts Receivable
PO Box 62784
Baltimore, MD 21264-2784

The Grossman Companies, Inc.
c/o Jennifer V. Doran, Esq.
Hinckley Allen & Snyder
28 State Street
Boston, MA 02109-1776

TriMark United East
PO Box 845377
Boston, MA 02284-5377

W/S/M Hingham Properties LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

Wildwood Est. of Braintree
PO Box 859059
Braintree, MA 02185-9059

Michael A Paasch +
Mateer & Harbert PA
Post Office Box 2854
Orlando, FL 32802-2854

R Scott Shuker +
Shuker & Dorris, P.A.
121 South Orange Avenue, Suite 1120
Orlando, FL 32801-3238

Jason B. Burnett +
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Kenneth B Jacobs +
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Richard A Johnston Jr.+
Johnston Law, PLLC
7370 College Parkway
Ste 210
Ft. Myers, FL 33907-5559

Mark J. Wolfson +
Foley & Lardner
100 North Tampa Street, Suite 2700
PO Box 3391
Tampa, FL 33601-3391

Ronald M Tucker +
Simon Property Group
225 West Washington Street
Indianapolis, IN 46204-3438

Kevin A Reck +
Foley & Lardner LLP
301 E. Pine Street, Suite 1200
Orlando, FL 32801-2703

Bradley S Shraiber +
Shraiberg Page P.A.
2385 NW Executive Center Drive
Suite 300
Boca Raton, FL 33431-8530

Dustin P Branch +
Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Jeffrey Kurtzman +
Kurtzman Steady, LLC
555 City Avenue
Ste 480
Bala Cynwyd, PA 19004-1142

Paul W Carey +
Mirick O'Connell DeMallie & Lougee
100 Front Street
Worcester, MA 01608-1477

Matthew J. McGowan +
Salter McGowan Sylvia & Leonard, Inc.
56 Exchange Terrace, Suite 500
Ste 500
Providence, RI 02903-1772

Isaac M Gabriel +
Dorsey & Whitney LLP
2398 E. Camelback Road
Suite 760
Phoenix, AZ 85016-9005

Edward M Fitzgerald +
Holland & Knight LLP
200 South Orange Ave
Suite 2600
Orlando, FL 32801-3453

Mark A Amendola +
Martyn and Associates
820 Superior Avenue, Northwest
Tenth Floor
Cleveland, OH 44113-1827

Michael L Schuster +
Ballard Spahr, LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5535

Dana S Plon +
Sirlin Gallogly & Lesser PC
123 South Broad Street
Suite 2100
Philadelphia, PA 19109-1042

Eric A Rosen +
Fowler White Burnett, P.A.
515 North Flagler Drive, Suite 2100
West Palm Beach, FL 33401-4332

Leslie C Heilman +
Ballard Spahr,LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3023

Ilan Markus +
LeClairRyan A Professional Corporation
545 Long Wharf Drive
Ninth Floor
New Haven, CT 06511-5960

Kate Foley +
Mirick O'Connell DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3960

Andrew L Cole +
Cole Schotz P.C.
300 East Lombard Street, Suite 1450
Baltimore, MD 21202-3242

Michael S Provenzale +
Lowndes Drosdick Doster Kantor & Reed PA
Post Office Box 2809
Orlando, FL 32802-2809

Alicia M Kupcinskas +
Brennan Manna Diamond
5210 Belfort Road, Suite 400
Jacksonville, FL 32256-6050

David S Jennis +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Audrey M Aleskovsky +
Office of the United States Trustee
George C. Young Federal Building
400 West Washington St, Suite 1100
Orlando, FL 32801-2210

Gabriel M Hartsell +
Dorsey & Whitney LLP
2398 E. Camelback Road
Suite 760
Phoenix, AZ 85016-9005

Daniel E Etlinger +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Gillian D. Williston +
Troutman Pepper Hamilton Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462-3038

Laurel D Roglen +
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3023

Julie M. Murphy +
Stradley Ronon Stevens & Young LLP
Liberty View
457 Haddonfield Road
Suite 100
Cherry Hill, NJ 08002-2223

Bodie Colwell +
Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME 04112-9546

John Mark Sullivan +
Preti Flaherty
57 N. Main Street
P.O. Box 1318
Concord, NH 03302-1318

Jennifer Doran +
Hinckley Allen
28 State Street
Boston, MA 02109-1776

Samuel C. Wisotzkey +
4650 N. Port Washington Rd.
Milwaukee, WI 53212-1077

Marc Justin Kurzman +
Carmody Torrance Sandak & Hennessey LLP
1055 Washington Boulevard
Stamford, CT 06901-2218

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

C.H. ROBINSON
Robinson Fresh
14701 Charlesto RD, Ste 1400
Eden Prairie, MN 55347

End of Label Matrix
Mailable recipients    91
Bypassed recipients     0
Total                  91