**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re:**                                                   **CASE NO.: 6:22-bk-04313-GER**

**BERTUCCI'S RESTAURANTS, LLC,**          **CHAPTER 11**

                    **Debtor.**
_____/


**PLAN OF REORGANIZATION**
**FOR BERTUCCI'S RESTAURANTS, LLC**



COUNSEL FOR THE DEBTOR

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
LAUREN L. STRICKER, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


April 10, 2023

## TABLE OF CONTENTS
## FOR PLAN OF REORGANIZATION

I.    **ARTICLE I - INTRODUCTION** ................................................................. **1**

    A.   OVERVIEW OF PLAN. ................................................................ 1
    B.   OVERVIEW OF CONSENSUAL PLAN TERMS ............................. 2
         1.   *Written Consents and Acknowledgments* .......................... 5

II.   **ARTICLE II – DEFINITIONS** .......................................................... **5**

III.   **ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS** ................... **18**

    A.   SUMMARY OF CLASSES IN THE PLAN ..................................... 18
    B.   SECURED CLAIMS .................................................................. 19
         1.   *Class 1 – Secured Claim of Rewards Network Establishment Services Inc.* ... 19
         2.   *Class 2 – Secured Claim of Plymouth Meeting Limited* ............. 19
         3.   *Class 3 – Secured Claims of PHL Holdings, LLC* ................. 19
    C.   UNSECURED CLAIMS ............................................................ 20
         1.   *Class 4 – Unsecured Claim of Sysco Corporation* .............. 20
         2.   *Class 5 – Allowed General Unsecured Claims* .................... 20
         3.   *Class 6 – Voluntarily Subordinated Claim of PB Restaurants, LLC* ... 20
    D.   EQUITY INTERESTS .............................................................. 20
         1.   *Class 7 – Equity Ownership Interests* .............................. 20

IV.   **ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS** ..... **20**

    A.   ADMINISTRATIVE EXPENSE CLAIMS ..................................... 20
    B.   PRIORITY CLAIMS ................................................................ 21
         1.   *Allowed Priority (Non-Real Estate) Tax Claims* ................. 21
         2.   *Allowed Priority Claims (Non-Tax)* ................................... 21
    C.   UNITED STATES TRUSTEE FEES ............................................ 22

V.   **ARTICLE V – TREATMENT OF CLAIMS AND INTERESTS** ........................ **22**

    A.   SECURED CLAIMS .................................................................. 22
         1.   *Class 1 – Secured Claim of Rewards Network Establishment Services Inc.* ... 22
         2.   *Class 2 – Secured Claim of Plymouth Meeting Limited* ............. 23
         3.   *Class 3 – Secured Claims of PHL Holdings, LLC* ................. 24
    B.   UNSECURED CLAIMS ............................................................ 25
         1.   *Class 4 – Unsecured Claim of Sysco Corporation* .............. 25
         2.   *Class 5 – Allowed General Unsecured Claims* .................... 25
         3.   *Class 6 – Voluntarily Subordinated Claim of PB Restaurants, LLC* ... 25
    C.   EQUITY INTERESTS .............................................................. 26
         1.   *Class 7 – Equity Ownership Interests* .............................. 26

VI.   **ARTICLE VI - UNEXPIRED LEASES AND EXECUTORY CONTRACTS** ............ **26**

    A.   LEASES AND EXECUTORY CONTRACTS ................................. 26

VII.   **ARTICLE VII - MEANS OF IMPLEMENTATION** .................................... **27**

    A.   BUSINESS OPERATIONS AND CASH FLOW .............................. 27
    B.   FUNDS GENERATED DURING CHAPTER 11 .............................. 27
    C.   DISBURSING AGENT ............................................................ 27

D.   MANAGEMENT AND CONTROL OF THE REORGANIZED DEBTOR ................................................. 28
E.   OTHER PROVISIONS ................................................................................................................. 28
    1.   Procedures For Resolving Disputed Claims ..................................................................... 28
    2.   Effect of Confirmation ...................................................................................................... 31

**VIII. ARTICLE VIII – MISCELLANEOUS PROVISIONS** ..................................................... **32**

A.   RELEASE ................................................................................................................................. 32
B.   EXCULPATION FROM LIABILITY ............................................................................................. 32
C.   POLICE POWER ...................................................................................................................... 34
D.   REVOCATION AND WITHDRAWAL OF THIS PLAN ..................................................................... 34
E.   MODIFICATION OF PLAN ......................................................................................................... 35
F.   RETENTION OF JURISDICTION ................................................................................................. 35
G.   HEADINGS .............................................................................................................................. 37
H.   CRAMDOWN ........................................................................................................................... 37
I.   DISCHARGE ............................................................................................................................ 38
J.   NOTICES ................................................................................................................................. 38
K.   MANNER OF PAYMENT ........................................................................................................... 39
L.   COMPLIANCE WITH TAX REQUIREMENTS ............................................................................... 39
M.   TRANSMITTAL OF DISTRIBUTIONS TO PARTIES ENTITLED THERETO ...................................... 39
N.   DISTRIBUTION OF UNCLAIMED PROPERTY ............................................................................. 40
O.   TRANSFER TAXES ................................................................................................................... 40

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    CASE NO.: 6:22-bk-04313-GER

**BERTUCCI'S RESTAURANTS, LLC,**                         CHAPTER 11

            Debtor.

_____/

**PLAN OF REORGANIZATION FOR**
**BERTUCCI'S RESTAURANTS, LLC**

      **BERTUCCI'S RESTAURANTS, LLC** is hereinafter referred to as the "Debtor" or

"Reorganized Debtor" (where appropriate), by and through its undersigned counsel, hereby

propose the following plan of reorganization pursuant to chapter 11 of Title 11 of the United States

Code.

**I.**     **ARTICLE I - INTRODUCTION**

    **A.**     **Overview of Plan.**

      All Claims held against the Debtor shall be classified and treated pursuant to the

terms of the Plan. The Plan contains seven (7) separate classes of Claims and Interests. The Plan

provides for payment of Allowed Secured Claims in Classes 1 and 2 in full, over time and under

the terms as outlined in Article V below. The Allowed Secured Claim in Class 3 shall be paid

monthly interest payments at the contractual rate, retain its Liens, and be treated as set forth in

Article V; *however,* PHL cannot exercise any of its rights nor collect any interest payments due

until GUC Payment Amount is paid in full; *further,* until the GUC Payment Amount is paid in full,

even if any event of default occurs under its credit agreements with the Debtor, PHL may only

accrue interest at the non-default contractual rate. The Allowed Unsecured Claim in Class 4 shall

be paid over time in full without interest. Allowed General Unsecured Claims[1] in Class 5 shall be paid their *pro rata* distribution from the GUC Payment Amount by the GUC Payment Deadline, which is the date one hundred and eighty (180) days after the Effective Date. The voluntarily subordinated Unsecured Claim in Class 6 shall not receive payment, but shall retain its Claim and be treated as set forth in Article V. In addition, the Plan further provides that the respective Holders of Allowed Administrative Claims and Holders of Allowed Priority Claims will be paid in full on the Effective Date. Holders of Allowed Priority Tax Claims will be paid in full by quarterly payments made over five (5) years. The Allowed Interests in Class 7 will carry forth after the Effective Date.

### B.    Overview of Consensual Plan Terms

The Debtor has negotiated and reached certain agreed terms for a consensual Plan of Reorganization (the "Consensual Plan Terms") among (i) the Debtor, (ii) the Official Committee of Unsecured Creditors ("Committee"), and (iii) BERTUCCI'S HOLDING, LLC, a Florida limited liability company ("Holdings"), PHL HOLDINGS, LLC, a Florida limited liability company ("PHL"), PB RESTAUARANTS, LLC, a Florida limited liability company, BERTUCCI'S RESTAURANTS (COLUMBIA), LLC, a Maryland limited liability company, BERTUCCI'S RESTAURANTS (BALTIMORE), LLC, a Maryland limited liability company, BERTUCCI'S RESTAURANTS (WHITE MARSH), LLC, a Maryland limited liability company and BERTUCCI'S OF BEL AIR, INC., a Maryland corporation (collectively, the "Affiliates"), subject to final sign off by the Committee and acceptable documentation of the parties. Such

---

[1] "Allowed General Unsecured Claim" is defined in the Plan, but for clarity here, it means an Allowed General Unsecured Claim (as defined in the Plan) but which excludes Claims by the following: (i) the Affiliates (defined below and in the Plan), and (ii) NCR CORPORATION, SYSCO CORPORATION, and any other creditors with contracts that will be assumed and cured.

Consensual Plan Terms are contained in this Disclosure Statement and the Plan. The crux of the Consensual Plan Terms revolve around the following agreement:

(a) PHL shall pay or cause to be paid the "GUC Payment Amount" and the "GUC Agent Expense" for the benefit of the Debtor's Allowed General Unsecured Claims. The payment of the GUC Payment Amount and the PHL Subordination (defined below) shall constitute consideration for the Released Parties to receive the Release approved and as set forth in Article VIII. Additionally, prior to the Effective Date, Holdings shall contribute, as new value, an amount equal to the estimated Allowed Administrative Expense Claims (the "New Value"). To the extent any Unsecured Class does not vote in favor of the Plan, these contributions and considerations shall be deemed New Value for retention of the Class 7 equity.

(b) "GUC Payment Amount" means the aggregate of $1,150,000.00 plus if six (6) or more additional leases are rejected on or after March 30, 2023, then an additional amount of ten percent (10%) of the amount of allowed rejection damages applicable for each additional lease rejected after five (5) additional lease rejections. For example, if a sixth (6th) lease is rejected and the allowed rejection damages equals $300,000, then the GUC Payment Amount will increase by $30,000.00 as to that lease.

(c) For the benefit of the Allowed General Unsecured Claims up to the GUC Payment Amount, the Debtor shall cause the GUC Agent to receive directly from the closing of the sale of any liquor licenses of the Debtors or any of its Affiliates the net proceeds thereof, (after payment of the lien of Allowed Class 2 Secured Claim of Plymouth Meeting Limited for $65,000 per the court-approved compromise for that affected license). PHL agrees as of the Confirmation Effective Date to subordinate its Liens on the Debtor's liquor licenses to the GUC Payment Amount (the "PHL GUC Payment Subordination"). In addition, as of the Effective Date, the

Debtor grants and shall cause the affected Affiliates to grant to the GUC Agent for the benefit of the Allowed General Unsecured Claims a security interest in all their assets, including but not limited to accounts, inventory, equipment, deposit accounts, goodwill, general intangibles, and payment intangibles, including the proceeds of the sale or disposition of liquor licenses, now or hereafter existing (the "GUC Collateral"). The GUC Agent shall have all the rights and remedies of a secured party under Chapter 679, Florida Statutes, and same rights and remedies that PHL has under its term agreement with the Debtor. The Debtor authorizes the GUC Agent to file financing statements GUC Collateral. PHL agrees to subordinate its security interest to the security interest in the GUC Collateral of the GUC Agent for the benefit of the Allowed General Unsecured Claims to the extent of the Shortfall (defined below) (the "PHL Shortfall Subordination" and together with the PHL GUC Payment Subordination as the "PHL Subordinations"). Additionally, PHL agrees that it will not exercise any of its rights against the Debtor nor collect any interest payments due until GUC Payment Amount is paid in full; *further,* until the GUC Payment Amount is paid in full, even if any event of default occurs under its credit agreements with the Debtor, PHL may only accrue interest at the non-default contractual rate.

(d) If the GUC Payment Amount is not paid in full within 180 days of the confirmation Effective Date (the "GUC Payment Deadline"), PHL presently commits in a binding written irrevocable commitment to the Debtor and GUC Agent for the benefit of the Allowed General Unsecured Claims to fund via ACH or wire transfer on said 180th day to the GUC Agent for the benefit of the GUCs such additional amounts that are required to make up the difference between the GUC Payment Amount and sums received by the GUC Agent as of that time (the "Shortfall"). If the Shortfall is not paid to the GUC Agent by the GUC Payment Deadline, then, after five (5) business days-notice and failure to cure any releases granted to Released Parties are

automatically null and void, PHL remains liable for the Shortfall plus and for any reasonable attorneys' fees and expenses incurred to enforce its rights hereunder. Notice may be given to counsel to Debtor by email.

1.    Written Consents and Acknowledgments

Before the Confirmation Hearing: (i) the Affiliates shall file a written consent to the terms of the Plan; and (ii) PHL and Holdings shall file written acknowledgements of their payment obligations under the Plan.

## II.    ARTICLE II – DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

1.    **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in sections 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate, including management fees, or commissions for service, compensation for legal and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under chapter 123 of Title 28, United States Code.

2.    **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.    **Affiliates** means, collectively, BERTUCCI'S HOLDING, LLC, a Florida limited liability company ("Holdings"), PHL HOLDINGS, LLC, a Florida limited liability company ("PHL"), PB RESTAUARANTS, LLC, a Florida limited liability company, BERTUCCI'S RESTAURANTS (COLUMBIA), LLC, a Maryland limited liability company, BERTUCCI'S

RESTAURANTS (BALTIMORE), LLC, a Maryland limited liability company, BERTUCCI'S RESTAURANTS (WHITE MARSH), LLC, a Maryland limited liability company and BERTUCCI'S OF BEL AIR, INC., a Maryland corporation.

4.     **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

5.     **Allowed Amount** shall mean the amount of an Allowed Claim.

6.     **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code section 501 of the Bankruptcy Code and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Bankruptcy Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code section 1111(a) of the Bankruptcy Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to section 521(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Bankruptcy Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting

purposes pursuant to the provisions of Bankruptcy Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

7.    **Allowed General Unsecured Claims** means a General Unsecured Claim to the extent such General Unsecured Claim is or becomes an Allowed Claim, but which excludes Claims by the following: (i) the Affiliates , and (ii) NCR CORPORATION, SYSCO CORPORATION, and any other creditors with contracts that will be assumed and cured.

8.    **Allowed General Secured Claims** means a General Secured Claim to the extent such General Secured Claim is or becomes an Allowed Claim.

9.    **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or any Final Order of the Bankruptcy Court.

10.    **Allowed Priority Tax Claim** means a Priority Claim pursuant to section 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

11.    **Allowed Secured Claim** means a Secured Claim to the extent provided under section 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

12.    **Assets** means each and every item of Property of the Debtor's Estate and every interest of the Debtor as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, privileges, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, contract rights, or other rights, including without limitation rights to payment, contribution or distribution, whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other contracts, agreements, licenses, and leases.

13.    **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

14.    **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

15.    **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to chapter 11 of the Bankruptcy Code (Case No. 6:22-bk-04313-GER).

16.    **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., including any amendments thereto, in effect during the Bankruptcy Case.

17.    **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

18. **Bankruptcy Rules** means the Federal Bankruptcy Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case, and as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

19. **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

20. **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

21. **Carryover Members** as defined in the definition for "Post-confirmation Committee."

22. **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

23. **Claim** means "claim" as defined in section 101(5) of the Bankruptcy Code.

24. **Class or Classes** means any Class into which Claims or Interests are classified pursuant to the Plan.

25. **Class 1 Claim, Class 2 Claim, Class 3 Claim,** *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article III of the Plan.

26. **Committee** means the official committee of unsecured creditors appointed in the Bankruptcy Case by the United States Trustee.

27. **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

28. **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

29.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

30.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

31.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

32.    **Creditor** means "creditor" as defined in section 101(1) of the Bankruptcy Code.

33.    **Creditors Committee** means the Committee of Creditors Holding Unsecured Claims appointed by the United States Trustee on January 10, 2023 (Doc. No. 80 and amended at Doc No. 83).

34.    **Debtor** means Bertucci's Restaurants, LLC, a Florida limited liability company.

35.    **DIP Loan** means the court-approved debtor-in-possession financing with the Debtor as the borrower and PHL as the DIP lender in the original amount of $500,000.00 and with an outstanding balance of $300,000.00 as of April 5, 2023, and as set forth in the related motion (Doc. No. 166) and Bankruptcy Court order approving the same (Doc. No. 180).

36.    **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

37.    **Disbursing Agent** shall mean GUC Agent with respect to all General Unsecured Claims. For all other claims, the Disbursing Agent shall mean the Reorganized Debtor.

38.    **Disclosure Statement** means the Disclosure Statement filed by the Debtor describing the Plan and approved for distribution by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, together with any amendments or modifications thereto.

39.     **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

40.     **Distribution** means a distribution to the Holders of Allowed Claims.

41.     **Effective Date** means the date fifteen (15) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided*, *however*, that the Effective Date shall not occur until the Debtor files the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the fifteenth (15th) day after the entry of the Confirmation Order provided that the notice called for under the Plan has been filed by the Debtor.

42.     **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtor.

43.     **Estate** means the bankruptcy estate of the Debtor created under section 541 of the Bankruptcy Code.

44.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under section 365 of the Bankruptcy Code, pursuant to the Plan or pursuant to separate motion.

45.     **Final Decree** means the Bankruptcy Court's final decree pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Case after the Estate has been fully administered.

46.     **Final Distribution** means the final Distribution to the Holders of Allowed Claims after all Causes of Action have been liquidated and converted to Cash or abandoned.

47.    **Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

48.    **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

49.    **Forbearance Agreement** means any forbearance agreement entered into between the Debtor and a creditor.

50.    **General Unsecured Claims** or **GUCs** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim, but which excludes Claims by: (i) the Affiliates and (ii) NCR CORPORATION, SYSCO CORPORATION, and any other creditors with contracts that will be assumed and cured.

51.    **General Secured Claims** means a Claim secured by a possessory Lien or setoff right against a Debtor's Asset(s), creditor's respective possessory Lien or setoff right in the Debtor's Assets, including without limitation, security deposits, contractual rebates/refunds, or similar, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with section 553 of the Bankruptcy Code, in either case as determined pursuant to section 506(a) of the Bankruptcy Code.

52.    **GUC Agent** means a person or entity selected by the Committee, which may include B. Riley, or an affiliate thereof, to act as the escrow agent for receipt and disbursement of funds representing the GUC Payment Amount, to monitor and, if appropriate, take positions with

regard to Debtor's management of the claims allowance/disallowance process, and to enforce the rights of the holders of Allowed General Unsecured Claims hereunder as a class (not individually), with the advice of any Post-confirmation Committee.

53.    **GUC Agent Expenses** means $50,000.00 (in addition to the GUC Payment Amount) paid by Holdings or PHL by ACH or wire transfer to the GUC Agent on the Effective Date, to be applied first toward expenses of the GUC Agent or any professional engaged by the GUC Agent incurred in connection with post-confirmation duties.

54.    **GUC Collateral** means the Assets of the Debtor and Affiliates, including but not limited to accounts, inventory, equipment, deposit accounts, goodwill, general intangibles, and payment intangibles, including the proceeds of the sale or disposition of liquor licenses, now or hereafter existing, which the Debtor and Affiliates grant a security interest in, as of the Effective Date, to the GUC Agent for the benefit of the Allowed General Unsecured Claims.

55.    **GUC Payment Amount** means the aggregate of $1,150,000.00 plus if six (6) or more additional leases are rejected on or after March 30, 2023, then an additional amount of ten percent (10%) of the amount of allowed rejection damages applicable for each additional lease rejected after five (5) additional lease rejections. For example, if a sixth (6th) lease is rejected and the allowed rejection damages equals $300,000, then the GUC Payment Amount will increase by $30,000.00 as to that lease. The GUC Payment Amount shall be paid in full by the GUC Payment Deadline.

56.    **GUC Payment Deadline** means the date one hundred and eighty (180) days after the Effective Date.

57.    **Holder** means the holder of a Claim or Interest, as applicable.

58.    **Holdings** means Bertucci's Holding, LLC, a Florida limited liability company.

59.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

60.    **Insider** means "insider" as defined in section 101(31) of the Bankruptcy Code.

61.    **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

62.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

63.    **Liquidation Analysis** means Debtor's chapter 7 liquidation analysis which will be filed and served at least twenty-one (21) days prior to the Confirmation Hearing.

64.    **New Value** means an amount equal to the Allowed Administrative Expense Claims prior to the Effective Date which shall be contributed by Holdings.

65.    **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

66.    **Person** means "person" as defined in section 101(41) of the Bankruptcy Code.

67.    **Personal Property** means all tangible personal property of the Debtor.

68.    **Petition Date** means December 5, 2022, the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

69.    **PHL** means PHL Holdings, LLC, a Florida limited liability company.

70. **PHL GUC Payment Subordination** means PHL's voluntary subordination of its Liens on the Debtor's liquor licenses to the GUC Payment Amount as of the Confirmation Effective Date.

71. **PHL Shortfall Subordination** means PHL's voluntary subordination of its Liens on the GUC Collateral to the extent of the Shortfall.

72. **PHL Subordinations** means the PHL GUC Payment Subordination together with the PHL Shortfall Subordination.

73. **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

74. **Plan Payments** means payments made by the GUC Agent or Debtor pursuant to the terms of the Plan.

75. **Post-confirmation Committee** means a committee to provide oversight to the GUC Agent, if constituted, that consists of 1-3 members of the Committee who hold Allowed General Unsecured Creditors after the Effective Date ("**Carryover Members**") or such other holders of Allowed General Unsecured Creditors after the Effective Date selected by any Carryover Members.

76. **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

77. **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under section 507 of the Bankruptcy Code.

78. **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

79.     **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of section 507 of the Bankruptcy Code.

80.     ***Pro Rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

81.     **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to section 1129(a)(4) of the Bankruptcy Code.

82.     **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Professionals (i) employed pursuant to an order of the Bankruptcy Court under sections 327 or 328 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code or by other Final Order.

83.     **Projections** means the Debtor's financial projections which will be filed and served at least twenty-one (21) days prior to the Confirmation Hearing.

84.     **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

85.    **Property of the Estate** means "property of the estate" as defined in section 541 of the Bankruptcy Code.

86.    **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.  Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

87.    **Released Parties** means the Debtor's officers and directors, the Affiliates, Holdings, PHL, and PB Restaurants, LLC, and any agent or employee of the foregoing.

88.    **Reorganized Debtor** refers to the Debtor upon the Effective Date of the Plan.

89.    **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code.

90.    **Secured Claim** means a Claim secured by a Lien against a Debtor's Asset(s), or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with section 553 of the Bankruptcy Code, in either case as determined pursuant to section 506(a) of the Bankruptcy Code.

91.    **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

92.    **Security Interest** means "security interest" as defined in section 101(51) of the Bankruptcy Code.

17

93.    **Shortfall** means any such additional amounts that are required to make up the difference between the GUC Payment Amount and sums received by the GUC Agent from the Debtor, PHL, or Holdings as of the GUC Payment Deadline.

94.    **Unclaimed Property** shall mean any cash, or any other property of the Debtor unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

95.    **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of section 1124 of the Bankruptcy Code.

96.    **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

97.    **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## III.    ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Summary of Classes in the Plan

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Secured Claim of Rewards Network Establishment Services Inc. | Impaired | Entitled to vote |
| 2 | Secured Claim of Plymouth Meeting Limited | Impaired | Entitled to vote |
| 3 | Secured Claim of PHL Holdings, LLC | Impaired | Entitled to vote |
| 4 | Unsecured Claim of Sysco Corporation | Impaired | Entitled to vote |
| 5 | General Unsecured Claims | Impaired | Entitled to vote |
| 6 | Voluntarily Subordinated Claim of PB Restaurants, LLC | Impaired | Entitled to vote |
| 7 | Equity Interests | Impaired | Entitled to vote |

All Claims treated under Article V of the Plan are divided into the Classes set forth immediately below, which shall be mutually exclusive.

**B.    Secured Claims.**

1.    <u>Class 1 – Secured Claim of Rewards Network Establishment Services Inc.</u>

Class 1 consists of the Allowed Secured Claim of Rewards Network Establishment Services Inc. ("Rewards Network") for its UCC-1 secured interest in all personal property Assets of the Debtor and pursuant to the certain *Rewards Network Receivables Purchase and Marketing Agreement* dated August 30, 2022, Class 1 is Impaired.

2.    <u>Class 2 – Secured Claim of Plymouth Meeting Limited</u>

Class 2 consists of the Allowed Secured Claim of Plymouth Meeting Limited for its secured interest in the proceeds of the Debtor's liquor license number R03746 issued by the Pennsylvania Liquor Control Board pursuant to the terms of the court-approved settlement between Plymouth Meeting Limited and the Debtor (Doc. Nos. 149 and 187). Class 2 is Impaired.

3.    <u>Class 3 – Secured Claims of PHL Holdings, LLC</u>

Class 3 consists of the Allowed Secured Claims of PHL for the secured indebtedness owed by the Debtor to PHL pursuant to (i) that certain *Revolving Note* and *Security Agreement* dated June 21, 2018, as amended by that certain *First Amendment* dated April 1, 2019, in the amount of $8,500,000.00 and (ii) those certain secured loans issued by CIT Bank, N.A., and Wells Fargo Bank, N.A., and assigned to PHL, pursuant to the terms of those certain *Credit Agreement* and *Loan Assignment* Agreement in the amount of $12,350,000.00; and for the DIP Loan. Class 3 is Impaired.

C.    **Unsecured Claims**

1.    <u>Class 4 – Unsecured Claim of Sysco Corporation</u>

Class 4 consists of the Allowed Unsecured Claim of Sysco Corporation for critical food goods and services provided to the Debtor from January 5, 2022, to the Petition Date. Class 4 is Impaired.

2.    <u>Class 5 – Allowed General Unsecured Claims</u>

Class 5 consists of all Allowed General Unsecured Claims against the Debtor in an approximate amount of $14,000,000.00. Class 5 is Impaired.

3.    <u>Class 6 – Voluntarily Subordinated Claim of PB Restaurants, LLC</u>

Class 6 consists of the Allowed Claim of PB Restaurants, LLC as reflected in the Loan Facility and Security Agreement between the Debtor and PB Restaurants, LLC dated December 27, 2021. Class 6 is Impaired.

D.    **Equity Interests**

1.    <u>Class 7 – Equity Ownership Interests</u>

Class 7 consists of any and all ownership interests currently issued or authorized in the Debtor. Class 7 is Impaired.

IV.    <u>**ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS**</u>

A.    **Administrative Expense Claims**

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The

Allowed Administrative Claims shall be paid from the Debtor's funds available, operational revenue, and the New Value. Debtor estimates Administrative Claims to be approximately $1,100,000, after deducting pre-petition and post-petition retainers. Pursuant to the Consensual Plan Terms, nothing herein restricts the right of any party to object to any Administrative Claims.

### B.      Priority Claims

1.      Allowed Priority (Non-Real Estate) Tax Claims

Except to the extent that the Holder and the Debtor has agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization with final payment due on or before 5 years from the Petition Date. Each Allowed Priority Tax Claim will accrue interest at five percent (5.00%); the payments will be made quarterly. Payments will commence on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed. The source of payments for Allowed Priority Tax Claims will be from the operational revenue of the Reorganized Debtor. The filed claims total approximately $1,101,046.27.

2.      Allowed Priority Claims (Non-Tax)

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payments for

21

Priority Claims (non-tax) will be from the Debtor's funds available, operational revenue, and the New Value. The filed amount of such claims is $97,303.81.

### C.    United States Trustee Fees

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from cash on hand or the New Value.

## V.    ARTICLE V – TREATMENT OF CLAIMS AND INTERESTS

There are six (6) Classes of Claims that are Impaired, zero (0) Classes of Claims that are Unimpaired, and one (1) Class of Interests that is Impaired. Treatment for these classes is as follows:

### A.    Secured Claims

1.    <u>Class 1 – Secured Claim of Rewards Network Establishment Services Inc.</u>

Class 1 consists of the Allowed Secured Claim of Rewards Network Establishment Services Inc. ("Rewards Network") based on its valid and perfected lien and security interest in all personal property Assets of the Debtor and pursuant to the certain *Rewards Network Receivables Purchase and Marketing Agreement* dated August 30, 2022 (the "Rewards Agreement"), whereby Rewards Network paid the Debtor to purchase certain future credit and debit card receivables generated by the Debtor's restaurant business.  The Debtor and Rewards Network have agreed to modify the Rewards Agreement by removing certain restaurant locations of the Debtor for which nonresidential leases were rejected during the Bankruptcy Case, and the Debtor has been otherwise performing its obligations under the Rewards Agreement post-petition under Bankruptcy Code § 365. As of the Petition Date, Rewards Network shall have an Allowed Claim in the full amount owed (Debtor believes the current amount owed is $125,714.00), which

shall be deemed reduced by the remittance of any purchased accounts receivable from the Debtor to Rewards Network following the Petition Date on a dollar-for-dollar basis. In full satisfaction of the Allowed Class 1 Claim, the Debtor shall, as of the Effective Date, assume the agreement with Rewards Network under Bankruptcy Code § 365; modified, however, to exclude the locations where the Debtor is no longer operating as of the Effective Date, including those locations for which the leases have been (or will be) rejected or which have otherwise terminated on their own terms. Following assumption, the Allowed Class 1 Claim shall be paid in full pursuant to the terms of the Rewards Agreement. Rewards Network shall continue to own all of the purchased accounts receivable under the Rewards Agreement.  The obligations owing under the Rewards Agreement shall continue to be secured by Rewards Network's valid and perfected lien and security interest in all the personal property of the Debtor, which is hereby reaffirmed by the Debtor to the same extent and priority that existed as of the Petition Date.  After the Effective Date, upon any Event of Non-Performance (as defined in the Rewards Agreement), Rewards Network shall be entitled to all rights and remedies stated in the Rewards Agreement and otherwise available under applicable law, including the right to enforce its valid and perfected lien and security interest and/or to enforce its rights in the purchased accounts receivable.  The Allowed Secured Claim shall be paid from the Debtor's funds available and operational revenue. Class 1 is Impaired.

2.      Class 2 – Secured Claim of Plymouth Meeting Limited

Class 2 consists of the Allowed Secured Claim of Plymouth Meeting Limited for its secured interest in the proceeds of the Debtor's liquor license number R03746 issued by the Pennsylvania Liquor Control Board pursuant to the terms of the court-approved settlement between Plymouth Meeting Limited and the Debtor (Doc. Nos. 149 and 187). In full satisfaction of the Allowed Class 2 Claim, Plymouth Meeting Limited shall be paid the first

$65,000 in proceeds from the sale of the above-referenced liquor license. The Allowed Secured Class 2 Claim shall be paid on the earlier of six (6) months following entry of the Confirmation Order or upon the completed sale of the above-referenced liquor license and shall accrue interest at the rate of 6.5% per annum beginning on the date the Confirmation Order becomes a Final Order. In the event the sales proceeds are insufficient to pay by Allowed Class 2 Claim by said payment deadline, it shall be paid from the Reorganized Debtor's funds available and operational revenue. Class 2 is Impaired.

3.      Class 3 – Secured Claims of PHL Holdings, LLC

Class 3 consists of the Allowed Secured Claims of PHL for the secured indebtedness owed by the Debtor to PHL pursuant to (i) that certain *Revolving Note* and *Security Agreement* dated June 21, 2018, as amended by that certain *First Amendment* dated April 1, 2019, in the amount of $8,500,000.00 and (ii) those certain secured loans issued by CIT Bank, N.A., and Wells Fargo Bank, N.A., and assigned to PHL, pursuant to the terms of those certain *Credit Agreement* and *Loan Assignment* Agreement in the amount of $12,350,000.00; and the DIP Loan. PHL, subject to the limitation below, shall have Allowed Secured Claims equal to $8,500,000.00, $12,350,000.00, and the DIP Loan. PHL shall be paid monthly interest payments by the Reorganized Debtor at the parties' contractual rate and shall retain all Liens and Interests in the Reorganized Debtor, subject to the PHL Subordinations pursuant to the Consensual Plan Terms; *however,* PHL cannot exercise any of its rights nor collect any interest payments due until GUC Payment Amount is paid in full; *further,* until the GUC Payment Amount is paid in full, even if any event of default occurs under its credit agreements with the Debtor, PHL may only accrue interest at the non-default contractual rate.. All documents reflecting the Class 3 Claim shall, except as modified hereby, remain binding and enforceable. Class 3 is Impaired.

B.    **Unsecured Claims.**

1.    Class 4 – Unsecured Claim of Sysco Corporation

Class 4 consists of the Allowed Unsecured Claim of Sysco Corporation for critical food goods and services provided to the Debtor from January 5, 2022, to the Petition Date. Sysco Corporation shall have an Allowed Claim of $ 3,756,358.33, and the Debtor is reconciling such amount.. In full satisfaction of the Allowed Class 4 Claim, Sysco Corporation shall be paid in full over twelve (12) equal monthly payments without interest, which will begin immediately following the Effective Date, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtor's funds available and operational revenue. Class 4 is Impaired.

2.    Class 5 – Allowed General Unsecured Claims

Class 5 consists of all Allowed General Unsecured Claims (as defined above and in the Plan) against the Debtor in an approximate amount of $14,000,000.00. In full satisfaction of the Allowed Class 5 Claims, Holders of such Claims shall receive a *pro rata* payment from the GUC Payment Amount (as defined above and in the Plan). Distributions of payments shall be paid by the GUC Payment Deadline, which is the date one hundred and eighty (180) days after the Effective Date. In the event of a conversion and liquidation, there would be likely no distribution to Holders of Allowed Class 5 Claims as the debt encumbering assets exceeds the value of such assets. Class 5 is Impaired.

3.    Class 6 – Voluntarily Subordinated Claim of PB Restaurants, LLC

Class 6 consists of the Allowed Claim of PB Restaurants, LLC as reflected in the *Loan Facility and Security Agreement* between the Debtor and PB Restaurants, LLC dated

December 27, 2021. PB Restaurants, LLC shall have an Allowed Unsecured Claim of $14,859,000.00. However, pursuant to the Consensual Plan Terms, PB Restaurants, LLC shall subordinate its Claim to Class 5 but retain a Claim against the Reorganized Debtor. The Allowed Class 6 Claim shall not accrue interest and shall mature at the same time as the Allowed Class 3 Claim. Class 6 is Impaired.

### C.    Equity Interests

1.    Class 7 – Equity Ownership Interests

Class 7 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. Additionally, Holdings will contribute New Value on or before the Effective Date. Class 7 is Impaired.

## VI.    ARTICLE VI - UNEXPIRED LEASES AND EXECUTORY CONTRACTS

### A.    Leases and Executory Contracts

To the extent Debtor rejects any executory contracts or unexpired leases prior to the Confirmation Hearing, any party asserting a Claim, pursuant to section 365 of the Bankruptcy Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtor shall have through and including the Confirmation Hearing within which to assume or reject any unexpired lease or executory contract. To the extent the Debtor does not file a motion to reject prior to the Confirmation Hearing, any such executory contract or lease will be deemed assumed with any required cure to occur over six (6) months from the Effective Date.

## VII.    ARTICLE VII - MEANS OF IMPLEMENTATION

### A.    Business Operations and Cash Flow

The Plan contemplates that the Debtor will continue to operate with reduced operating expenses and lower monthly lease payments. The Debtor believes the cash flow generated from operations following the restructuring of debt, the proceeds from liquor license sales, plus the contributions from PHL and/or Holdings, will be sufficient to make all Plan Payments and will be sufficient to pay ordinary course expenses, including but not limited to, payroll and administrative costs.

### B.    Funds Generated During Chapter 11

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

### C.    Disbursing Agent

The GUC Agent (as defined in the Plan) will serve as the Disbursing Agent for all Distributions to be made with respect to General Unsecured Claims under the Plan. The GUC Agent will act as the escrow agent for receipt and disbursement of funds representing the GUC Payment Amount, to monitor and, if appropriate, take positions with regard to Debtor's management of the claims allowance/disallowance process, and to enforce the rights of the Holders of Allowed General Unsecured Claims hereunder as a class (not individually), with the advice of any Post-confirmation Committee. The GUC Agent will receive funding by way of the GUC Agent Expenses (as defined in the Plan).

For all other claims, the Disbursing Agent shall mean the Reorganized Debtor with the same responsibilities.

27

**D.      Management and Control of the Reorganized Debtor**

The operations of the Reorganized Debtor will continue to be overseen by the current officers, managers, and directors following Confirmation, who will have uninterrupted authorization to maintain and manage the day-to-day normal business operations of the Reorganized Debtor with all the powers and duties as set forth in the Debtor's operating agreements.

**E.      Other Provisions**

          1.      <u>Procedures For Resolving Disputed Claims</u>

               *a)*      <u>*Prosecution of Objections to Claims*</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, pursuant to the Consensual Plan Terms the Debtor shall have the primary responsibility to make and file objections to all Claims, other than those Claims deemed as "Allowed" under the terms of the Plan, and for proposing resolutions for Claim objections, subject to consultation with the GUC Agent and any Post-Confirmation Committee. The Debtor/Reorganized Debtor shall have a 150-day timetable from the confirmation Effective Date in order to complete the Claims allowance/disallowance process. The expenses of the Debtor, Reorganized Debtor, or their counsel related to the claims process shall be paid by the Debtor/Reorganized Debtor.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest,

with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b)      *Estimation of Claims*

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c)      *Cumulative Remedies*

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be

treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

> d)  *Payments and Distributions on Disputed Claims*

As and when authorized by a Final Order, Disputed Claims or Interests that become "Allowed" shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

> e)  *Allowance of Claims and Interests*

> (1)  Disallowance of Claims

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.

(2)    Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

(3)    Chapter 5 Claims

Pursuant to the Consensual Plan Terms, on the Effective Date, the Debtor/Reorganized Debtor shall release all chapter 5 claims against all General Unsecured Creditors of the Debtor, the Affiliates, and all officers and directors of the Debtor, regardless of whether they hold an Allowed General Unsecured Claim, effective on the confirmation Effective Date.

f)    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

2.    Effect of Confirmation

a)    *Authority to Effectuate the Plan*

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. Unless otherwise noted herein,

31

the Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

> b)   *Post-Confirmation Status Report*

Within ninety (90) days of the entry of the Confirmation Order, the Reorganized Debtor will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Post-confirmation Committee, the GUC Agent, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## VIII.   ARTICLE VIII – MISCELLANEOUS PROVISIONS

### A.   Release.

**PURSUANT TO THE CONSENSUAL PLAN TERMS, THE DEBTOR'S DIRECTORS AND OFFICERS, THE AFFILIATES, AND ANY AGENT OR EMPLOYEE OF THE FOREGOING (THE "RELEASED PARTIES") SHALL BE RELEASED FROM ANY LIABILITY WITH RESPECT ANY OF THEIR PRECONFIRMATION CONDUCT RELATING IN ANY WAY TO THE DEBTOR; PROVIDED HOWEVER, ANY SUCH RELEASE (I) DOES NOT RELEASE THE OBLIGATIONS UNDER THE PLAN AND (II) IS NOT EFFECTIVE AND HELD IN ESCROW BY DEBTOR'S COUNSEL TO BE EFFECTIVE AND DELIVERED TO RELEASED PARTIES ONCE THE GUC PAYMENT AMOUNT HAS BEEN PAID IN FULL. ANY STATUTE OF LIMITATIONS WILL BE TOLLED AS OF THE CONFIRMATION EFFECTIVE DATE. THE RELEASED PARTIES MUST EVIDENCE CONSENT TO THE SAME.**

### B.   Exculpation from Liability

The Debtor, and its officers, directors, members, managers, managing members, and Professionals, including each member of the Committee and its retained professionals, (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation,

preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

C.    **Police Power**

No provision of Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to section 1141 of the Bankruptcy Code.

D.    **Revocation and Withdrawal of this Plan**

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

E.      **Modification of Plan**

The Debtor may seek to amend or modify this Disclosure Statement and the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

F.      **Retention of Jurisdiction**

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to them herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.      All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered

after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtor, the Reorganized Debtor, or the Disbursing Agent, the Causes of Action, the proceedings then pending or thereafter brought pursuant to sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or other proceedings calculated to generate payments to Holders of Allowed Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code section 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Bankruptcy Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

36

12.     To hear and determine any action or controversy by or against the Reorganized Debtor.

### G.    Headings

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

### H.    Cramdown

The Bankruptcy Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one (1) Impaired Class of Claims. Section 1129(b)(1) of the Bankruptcy Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

I.        **Discharge**

As of the Effective Date and pursuant to section 1141 of the Bankruptcy Code, Debtor shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not:

1.    A proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code;

2.    A Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or

3.    The Holder of a Claim or Interest based upon such debt has accepted the Plan.

J.    **Notices**

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

| Counsel for the Debtor: | Debtor: |
|---|---|
| R. Scott Shuker, Esquire<br>Shuker & Dorris, P.A.<br>121 S. Orange Avenue, Suite 1120<br>Orlando, Florida 32801 | Bertucci's Restaurants, LLC<br>Attn: Jeff Sirolly, Esq.<br>4700 Millenia Blvd., Ste. 400<br>Orlando, FL 32839 |
| United States Trustee: | Counsel for the Committee: |
| United States Trustee<br>George C. Young Federal Building<br>400 West Washington Street, Suite 1100<br>Orlando, Florida 32801 | Mark Wolfson, Esq.<br>c/o Foley & Lardner LLP<br>100 N. Tampa St., Ste. 2700<br>Tampa, FL 33602-5810 |

**K.**     **Manner of Payment**

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

**L.**     **Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

**M.**     **Transmittal of Distributions to Parties Entitled Thereto**

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise

agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

### N.    Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Allowed Claims in accordance with the provisions of this Plan. However, checks issued by the GUC Agent or Reorganized Debtor with respect to Allowed Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor. Requests for re-issuance of any such check shall be made in writing to the issuer, *i.e.,* the GUC Agent or Reorganized Debtor.

### O.    Transfer Taxes

Under section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.  Real Property tax shall not be subject to any documentary or other recording taxes.

**RESPECTFULLY SUBMITTED** this 10th day of April 2023.

/s/R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane A. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
Lauren L. Stricker, Esq.
Florida Bar No. 91526
lstricker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
*Attorneys for the Debtor*