**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re:**                                                        **CASE NO.: 6:22-bk-04313-GER**

**BERTUCCI'S RESTAURANTS, LLC,**              **CHAPTER 11**

                    **Debtor.**
_____/


**DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125**
**FOR BERTUCCI'S RESTAURANTS, LLC**




COUNSEL FOR THE DEBTOR

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
LAUREN L. STRICKER, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801


April 10, 2023

**TABLE OF CONTENTS**
**FOR DISCLOSURE STATEMENT**

I.   **ARTICLE I - INTRODUCTION**..................................................................**3**

   A. Disclosure Statement Introduction ................................................ 3
   B. Overview of Plan........................................................................ 5
   C. Overview of Consensual Plan Terms ............................................ 6
      1. *Written Consents and Acknowledgments* ................................ 9
   D. Voting and Impairment of Claims and Interests........................... 9

II.  **ARTICLE II – BACKGROUND AND EVENTS LEADING TO BANKRUPTCY** ...**10**

   A. General Background ................................................................. 10
   B. Significant Developments and Events Leading to Bankruptcy Filing ..................... 11
   C. Significant Developments and Events Subsequent to Debtor's Chapter 11 Filing 11

III. **ARTICLE III - THE PLAN** .....................................................................**13**

   A. Summary of Classes in the Plan ................................................ 13
   B. Impairment of Claims ............................................................... 13
   C. Determination of Allowed Amounts ........................................... 13

IV.  **ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS** ...**14**

   A. Administrative Expense Claims................................................. 14
   B. Priority Claims........................................................................ 14
      1. *Allowed Priority (Non-Real Estate) Tax Claims*....................... 14
      2. *Allowed Priority Claims (Non-Tax)* ...................................... 15
   C. United States Trustee Fees ...................................................... 15

V.   **ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** .**16**

   A. Secured Claims ...................................................................... 16
      1. *Class 1 – Secured Claim of Rewards Network Establishment Services Inc.*........ 16
      2. *Class 2 – Secured Claim of Plymouth Meeting Limited*.............. 17
      3. *Class 3 – Secured Claims of PHL Holdings, LLC* ..................... 18
   B. Unsecured Claims. ................................................................. 18
      1. *Class 4 – Unsecured Claim of Sysco Corporation*..................... 18
      2. *Class 5 – Allowed General Unsecured Claims* ......................... 19
      3. *Class 6 – Voluntarily Subordinated Claim of PB Restaurants, LLC* ................ 19
   C. Equity Interests ..................................................................... 20
      1. *Class 7 – Equity Ownership Interests* .................................... 20

VI.  **ARTICLE VI - MEANS OF IMPLEMENTATION** ...................................**20**

   A. Leases and Executory Contracts .............................................. 20
   B. Business Operations and Cash Flow ......................................... 20
   C. Funds Generated During Chapter 11 ......................................... 21
   D. Disbursing Agent.................................................................... 21
   E. Management and Control of the Reorganized Debtor ................... 21
   F. Other Provisions .................................................................... 22
      1. *Procedures For Resolving Disputed Claims*............................. 22
      2. *Effect of Confirmation*........................................................ 25

i

**VII.   ARTICLE VII - CONFIRMATION**.................................................................................**26**
    A.  CONFIRMATION HEARING..............................................................................................26
    B.  FINANCIAL INFORMATION RELEVANT TO CONFIRMATION ............................................27
    C.  CONFIRMATION STANDARDS .........................................................................................27
        *1.  Best Interests Test* ...............................................................................................*28*
        *2.  Financial Feasibility*...........................................................................................*29*
        *3.  Acceptance by Impaired Classes*.........................................................................*29*
        *4.  Confirmation Without Acceptance by all Impaired Classes: "Cramdown"*.......*30*
    D.  CONSUMMATION.............................................................................................................31
**VIII. ARTICLE VIII – MISCELLANEOUS PROVISIONS** ...........................................**31**
    A.  RELEASE.........................................................................................................................31
    B.  EXCULPATION FROM LIABILITY .....................................................................................32
    C.  POLICE POWER...............................................................................................................33
    D.  REVOCATION AND WITHDRAWAL OF THIS PLAN ...........................................................33
    E.  MODIFICATION OF PLAN ................................................................................................34
**IX.    ARTICLE IX - ALTERNATIVE TO THE PLAN** .......................................................**34**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                                        CASE NO.: 6:22-bk-04313-GER

**BERTUCCI'S RESTAURANTS, LLC,**                      CHAPTER 11

                            Debtor.

_____/

**DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125**
**FOR BERTUCCI'S RESTAURANTS, LLC**

I.      **ARTICLE I - INTRODUCTION**

        A.      **Disclosure Statement Introduction**

        This Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements

of section 1125 of Title 11 of the United States Code (the "Bankruptcy Code"). This Disclosure

Statement is intended to provide adequate information to enable Holders[1] of Claims in the above-

captioned bankruptcy case (the "Bankruptcy Case") to make an informed judgment about the Plan

of Reorganization (hereinafter the "Plan")[2] submitted by Bertucci's Restaurants, LLC (hereinafter

referred to as the "Debtor" or "Reorganized Debtor"– where appropriate). The Debtor is soliciting

votes to accept the Plan, the overall purpose of which is to provide for the restructuring of the

Debtor's liabilities in a manner designed to maximize recoveries to all stakeholders while

providing for the Debtor to continue as a going concern.

        **THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS**
        **ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY**
        **COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF**

---

[1] All capitalized terms shall have the meaning ascribed in Article II of the Plan or as defined herein.

[2] In the event of any inconsistency between this Disclosure Statement and the Plan, the Plan Controls.

VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE THAT ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AND DUE TO THE COMPLEXITY OF THE DEBTOR'S FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

**B.      Overview of Plan.**

All Claims held against the Debtor shall be classified and treated pursuant to the terms of the Plan. The Plan contains seven (7) separate classes of Claims and Interests. The Effective Date is defined more specifically in the Plan, but generally means the fifteenth (15th) day after entry of the Confirmation Order, provided said order is not stayed as of the fifteenth (15th) day.

All Claims held against the Debtor shall be classified and treated pursuant to the terms of the Plan. The Plan contains seven (7) separate classes of Claims and Interests. The Plan provides for payment of Allowed Secured Claims in Classes 1 and 2 in full, over time and under the terms as outlined in Article V below. The Allowed Secured Claim in Class 3 shall be paid monthly interest payments at the contractual rate, retain its Liens, and be treated as set forth in Article V; *however,* PHL cannot exercise any of its rights nor collect any interest payments due until GUC Payment Amount is paid in full; *further,* until the GUC Payment Amount is paid in full, even if any event of default occurs under its credit agreements with the Debtor, PHL may only accrue interest at the non-default contractual rate. The Allowed Unsecured Claim in Class 4 shall be paid over time in full without interest. Allowed General Unsecured Claims[3] in Class 5 shall be paid their *pro rata* distribution from the GUC Payment Amount by the GUC Payment Deadline, which is the date one hundred and eighty (180) days after the Effective Date. The voluntarily subordinated Unsecured Claim in Class 6 shall not receive payment, but shall retain its Claim and be treated as set forth in Article V. In addition, the Plan further provides that the respective Holders

---

[3] "Allowed General Unsecured Claim" is defined in the Plan, but for clarity here, it means an Allowed General Unsecured Claim (as defined in the Plan) but which excludes Claims by the following: (i) the Affiliates (defined below and in the Plan), and (ii) NCR CORPORATION, SYSCO CORPORATION, and any other creditors with contracts that will be assumed and cured.

of Allowed Administrative Claims and Holders of Allowed Priority Claims will be paid in full on the Effective Date. Holders of Allowed Priority Tax Claims will be paid in full by quarterly payments made over five (5) years. The Allowed Interests in Class 7 will carry forth after the Effective Date.

The Debtor believes the Plan provides the best means currently available for its emergence from chapter 11 and the best recoveries possible for Holders of Claims and Interests, and thus strongly recommends Creditors vote to accept the Plan.

## C.    Overview of Consensual Plan Terms

The Debtor has negotiated and reached certain agreed terms for a consensual Plan of Reorganization (the "Consensual Plan Terms") among (i) the Debtor, (ii) the Official Committee of Unsecured Creditors ("Committee"), and (iii) BERTUCCI'S HOLDING, LLC, a Florida limited liability company ("Holdings"), PHL HOLDINGS, LLC, a Florida limited liability company ("PHL"), PB RESTAUARANTS, LLC, a Florida limited liability company, BERTUCCI'S RESTAURANTS (COLUMBIA), LLC, a Maryland limited liability company, BERTUCCI'S RESTAURANTS (BALTIMORE), LLC, a Maryland limited liability company, BERTUCCI'S RESTAURANTS (WHITE MARSH), LLC, a Maryland limited liability company and BERTUCCI'S OF BEL AIR, INC., a Maryland corporation (collectively, the "Affiliates"), subject to final sign off by the Committee and acceptable documentation of the parties. Such Consensual Plan Terms are contained in this Disclosure Statement and the Plan. The crux of the Consensual Plan Terms revolve around the following agreement:

(a) PHL shall pay or cause to be paid the "GUC Payment Amount" and the "GUC Agent Expense" for the benefit of the Debtor's Allowed General Unsecured Claims. The payment of the GUC Payment Amount and the PHL Subordination (defined below) shall constitute

6

consideration for the Released Parties to receive the Release approved and as set forth in Article VIII. Additionally, prior to the Effective Date, Holdings shall contribute, as new value, an amount equal to the estimated Allowed Administrative Expense Claims (the "New Value"). To the extent any Unsecured Class does not vote in favor of the Plan, these contributions and considerations shall be deemed New Value for retention of the Class 7 equity.

(b) "GUC Payment Amount" means the aggregate of $1,150,000.00 plus if six (6) or more additional leases are rejected on or after March 30, 2023, then an additional amount of ten percent (10%) of the amount of allowed rejection damages applicable for each additional lease rejected after five (5) additional lease rejections. For example, if a sixth (6th) lease is rejected and the allowed rejection damages equals $300,000, then the GUC Payment Amount will increase by $30,000.00 as to that lease.

(c) For the benefit of the Allowed General Unsecured Claims up to the GUC Payment Amount, the Debtor shall cause the GUC Agent to receive directly from the closing of the sale of any liquor licenses of the Debtors or any of its Affiliates the net proceeds thereof, (after payment of the lien of Allowed Class 2 Secured Claim of Plymouth Meeting Limited for $65,000 per the court-approved compromise for that affected license). PHL agrees as of the Confirmation Effective Date to subordinate its Liens on the Debtor's liquor licenses to the GUC Payment Amount (the "PHL GUC Payment Subordination"). In addition, as of the Effective Date, the Debtor grants and shall cause the affected Affiliates to grant to the GUC Agent for the benefit of the Allowed General Unsecured Claims a security interest in all their assets, including but not limited to accounts, inventory, equipment, deposit accounts, goodwill, general intangibles, and payment intangibles, including the proceeds of the sale or disposition of liquor licenses, now or hereafter existing (the "GUC Collateral"). The GUC Agent shall have all the rights and remedies

of a secured party under Chapter 679, Florida Statutes, and same rights and remedies that PHL has under its term agreement with the Debtor. The Debtor authorizes the GUC Agent to file financing statements GUC Collateral. PHL agrees to subordinate its security interest to the security interest in the GUC Collateral of the GUC Agent for the benefit of the Allowed General Unsecured Claims to the extent of the Shortfall (defined below) (the "PHL Shortfall Subordination" and together with the PHL GUC Payment Subordination as the "PHL Subordinations"). Additionally, PHL agrees that it will not exercise any of its rights against the Debtor nor collect any interest payments due until GUC Payment Amount is paid in full; *further,* until the GUC Payment Amount is paid in full, even if any event of default occurs under its credit agreements with the Debtor, PHL may only accrue interest at the non-default contractual rate.

(d) If the GUC Payment Amount is not paid in full within 180 days of the confirmation Effective Date (the "GUC Payment Deadline"), PHL presently commits in a binding written irrevocable commitment to the Debtor and GUC Agent for the benefit of the Allowed General Unsecured Claims to fund via ACH or wire transfer on said 180th day to the GUC Agent for the benefit of the GUCs such additional amounts that are required to make up the difference between the GUC Payment Amount and sums received by the GUC Agent as of that time (the "Shortfall"). If the Shortfall is not paid to the GUC Agent by the GUC Payment Deadline, then, after five (5) business days-notice and failure to cure any releases granted to Released Parties are automatically null and void, PHL remains liable for the Shortfall plus and for any reasonable attorneys' fees and expenses incurred to enforce its rights hereunder.  Notice may be given to counsel to Debtor by email.

1.    <u>Written Consents and Acknowledgments</u>

Before the Confirmation Hearing: (i) the Affiliates shall file a written consent to the terms of the Plan; and (ii) PHL and Holdings shall file written acknowledgements of their payment obligations under the Plan.

**D.    Voting and Impairment of Claims and Interests.**

To the extent the legal, contractual, or equitable rights with respect to any Claim asserted against the Debtor is altered, modified, or changed by treatment proposed under the Plan, such Claim is considered "Impaired," and the Holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan ("Ballot") will be mailed along with the order approving this Disclosure Statement. You should use the Ballot that will be sent to you to cast your vote for or against the Plan. You may *not* cast Ballots or vote orally or by facsimile. Whether or not you vote, you will be bound by the terms and treatment set forth in the Plan if the Bankruptcy Court confirms the Plan. The Bankruptcy Court may disallow any vote accepting or rejecting the Plan if the vote is not cast in good faith.

**THE VOTE OF EACH CREDITOR WITH AN IMPAIRED CLAIM IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE <u>RECEIVED</u> AT THE ADDRESS(ES) AND BY THE DATE SET FORTH IN THE BALLOT.**

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail below, the Bankruptcy Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court shall schedule a Confirmation Hearing to consider whether the Debtor has complied with those requirements.

The Bankruptcy Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes

called "cramdown." As described in greater detail in this Disclosure Statement, the Debtor has expressly reserved the right to seek cramdown in the event all Impaired Classes do not vote in favor of the Plan.

## II.    ARTICLE II – BACKGROUND AND EVENTS LEADING TO BANKRUPTCY

### A.    General Background

The Debtor is a Florida limited liability company that was formed in May of 2018. As of the Petition Date, the Debtor operated approximately forty-seven (47) Italian-themed restaurants in nine (9) states located in the North-East; however, the corporate offices are located at: 4700 Millenia Blvd., Suite 400, Orlando, Florida 32839.

The prior Bertucci's Brick Oven Pizza & Pasta went into bankruptcy in April of 2018 in the United States Bankruptcy Court for the District of Delaware. The current Debtor entity was created in May of 2018 when it acquired approximately fifty-six (56) restaurants under the name Bertucci's Brick Oven Pizza & Pasta (individually a "Restaurant", collectively, the "Restaurants"), in a transaction that closed on June 11, 2018, *see* the *Order Approving Asset Purchase Agreement* entered in the previous bankruptcy case (Case No. 18-10894-MFW; Doc. No. 295).

The Restaurants are marketed toward the core casual dining market and, when acquired in 2018, Bertucci's operated approximately fifty-six (56) locations in nine (9) states nationwide reporting annual sales of more than $120 million with nearly 2,000 employees.

Unfortunately, due to the COVID-19 pandemic (the "Pandemic") and the impact of inflation, sales declined and expenses increased. Sales at the fiscal year end 2021 were $97.9 million and the Debtor suffered an operating loss of $14 million and a net loss of $7.2 million. In 2022, the Debtor suffered a net loss of $13 million on $92.1 million in sales.

**B.** **Significant Developments and Events Leading to Bankruptcy Filing**

The Pandemic severely impacted the Restaurants and to combat the spread of COVID-19, public health officials urged all people to stay at home and to practice "social distancing" when engaging in essential tasks. Non-essential tasks and services were to be reduced or eliminated and several states enforced stay-at-home directives precluded businesses from operating as usual. Commercial and retail operations, particularly those providing services deemed non-essential, were forced to adapt, or shut down.

After COVID-19 restrictions were lifted, restaurant sales in New England, overall, did not return to prior levels and, at the same time, wages and operating costs increased. The Debtor attempted to negotiate consensual lease terminations and restructures for much of 2022. However, when the Debtor was unable to procure sufficient consensual termination or restructure agreements, it determined that chapter 11 was the best vehicle to reorganize and preserve jobs.

**C.** **Significant Developments and Events Subsequent to Debtor's Chapter 11 Filing**

On December 5, 2022 (the "Petition Date"), the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code. No trustee has been appointed. The Debtor continues to operate its business and manage its properties as debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code. Following the Petition Date, the Debtor has continued to operate as debtor-in-possession under Section 1107(a) and 1108 of the Bankruptcy Code. At the commencement of the case, Debtor have also sought and obtained:

1.     Authority to use cash collateral ("Cash Collateral Motion") (Interim Order – Doc. Nos. 28, 92, 157, and 182)

2.     Authority to pay prepetition employee wages ("Wage Motion") (Order – Doc. No. 31).

3.      Authority to maintain its prepetition bank accounts on a temporary basis ("Bank Account Motion") (Order – Doc. No. 42).

4.      Authority to enter in to enter into agreements with various critical vendors pursuant to sections 105(a), 363(b), 364, 503(b)(9) 1107(a) and 1108 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, and Rules 2081-1(g)(f) and 9013-1(d) of the Local Bankruptcy Rules for the Middle District of Florida (Order – Doc. No. 145).

5.      Authority to reject unexpired leases of nineteen (19) nonresidential real properties (Order – Doc. No. 36).

6.      On January 9, 2023, the U.S. Trustee appointed and filed notice of appointing the unsecured creditors committee (the "Committee") in this case (Doc. No. 80, as amended by Doc. No. 83).

7.      As of February 23, 2023, the Debtor had a total of thirty-one (31) Restaurants remained open in the Northeast United States, however, sales at three (3) of those locations had not returned expected levels and, thus, the Debtor filed a second motion to reject those three (3) leases (Motion – Doc. No. 161), which was granted on March 6, 2023 (Order – Doc. No. 172).

8.      On February 28, 2023, the Debtor filed its Emergency Motion for Authority to Obtain Post-Petition Financing (Motion – Doc. No. 166) which was granted on an interim basis by the Court on March 8, 2023 (Order – Doc. No. 180) in the amount of $500,000.00 with PHL acting as the DIP lender (the "DIP Loan"). As of April 5, 2023, the balance of the DIP Loan was approximately $300,000.00.

The post-petition negotiations with creditors and the terms of the Plan are expected to provide solid footing for the Reorganized Debtor going forward.

III.    **ARTICLE III - THE PLAN**

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTOR'S PLAN. ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A.    **Summary of Classes in the Plan**

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| 1 | Secured Claim of Rewards Network Establishment Services Inc. | Impaired | Entitled to vote |
| 2 | Secured Claim of Plymouth Meeting Limited | Impaired | Entitled to vote |
| 3 | Secured Claim of PHL Holdings, LLC | Impaired | Entitled to vote |
| 4 | Unsecured Claim of Sysco Corporation | Impaired | Entitled to vote |
| 5 | General Unsecured Claims | Impaired | Entitled to vote |
| 6 | Voluntarily Subordinated Claim of PB Restaurants, LLC | Impaired | Entitled to vote |
| 7 | Equity Interests | Impaired | Entitled to vote |

B.    **Impairment of Claims**

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtor is altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired," and the Holder of such Claim or Interest is entitled to vote in favor of or against the Plan. The characterization of each Claim or Interest as "Impaired" or "Unimpaired" is set forth below.

C.    **Determination of Allowed Amounts**

Treatment prescribed for Claims in the following sections shall in all events refer exclusively to the Allowed Amounts of each respective Claim. In the event the Allowed Amount

13

of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement, Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, Debtor reserves the right to seek to value (under section 506 of the Bankruptcy Code) or to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

## IV.   ARTICLE IV – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS, U.S. TRUSTEE FEES AND CLASSIFICATION AND TREATMENT OF UNIMPAIRED CLAIMS

### A.   Administrative Expense Claims

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Debtor's funds available, operational revenue, and the New Value. Debtor estimates Administrative Claims to be approximately $1,100,000, after deducting pre-petition and post-petition retainers. Pursuant to the Consensual Plan Terms, nothing herein restricts the right of any party to object to any Administrative Claims.

### B.   Priority Claims

1.   Allowed Priority (Non-Real Estate) Tax Claims

Except to the extent that the Holder and the Debtor has agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed

Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization with final payment due on or before 5 years from the Petition Date. Each Allowed Priority Tax Claim will accrue interest at five percent (5.00%); the payments will be made quarterly. Payments will commence on the later of the Effective Date or on such dates as a respective Priority Claim becomes Allowed. The source of payments for Allowed Priority Tax Claims will be from the operational revenue of the Reorganized Debtor. The filed claims total approximately $1,101,046.27.

2.    Allowed Priority Claims (Non-Tax)

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date. Payment will be made on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payments for Priority Claims (non-tax) will be from the Debtor's funds available, operational revenue, and the New Value. The filed amount of such claims is $97,303.81.

C.    **United States Trustee Fees**

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from cash on hand or the New Value.

## V.  ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

There are six (6) Classes of Claims that are Impaired, zero (0) Classes of Claims that are Unimpaired, and one (1) Class of Interests that is Impaired. Treatment for these classes is as follows:

### A.    Secured Claims

1.    Class 1 – Secured Claim of Rewards Network Establishment Services Inc.

Class 1 consists of the Allowed Secured Claim of Rewards Network Establishment Services Inc. ("Rewards Network") based on its valid and perfected lien and security interest in all personal property Assets of the Debtor and pursuant to the certain *Rewards Network Receivables Purchase and Marketing Agreement* dated August 30, 2022 (the "Rewards Agreement"), whereby Rewards Network paid the Debtor to purchase certain future credit and debit card receivables generated by the Debtor's restaurant business.  The Debtor and Rewards Network have agreed to modify the Rewards Agreement by removing certain restaurant locations of the Debtor for which nonresidential leases were rejected during the Bankruptcy Case, and the Debtor has been otherwise performing its obligations under the Rewards Agreement post-petition under Bankruptcy Code § 365. As of the Petition Date, Rewards Network shall have an Allowed Claim in the full amount owed (Debtor believes the current amount owed is $125,714.00) which shall be deemed reduced by the remittance of any purchased accounts receivable from the Debtor to Rewards Network following the Petition Date on a dollar-for-dollar basis. In full satisfaction of the Allowed Class 1 Claim, the Debtor shall, as of the Effective Date, assume the agreement with Rewards Network under Bankruptcy Code § 365; modified, however, to exclude the locations where the Debtor is no longer operating as of the Effective Date, including those locations for which the leases have been (or will be) rejected or which have otherwise terminated on their own terms. Following

16

assumption, the Allowed Class 1 Claim shall be paid in full pursuant to the terms of the Rewards Agreement. Rewards Network shall continue to own all of the purchased accounts receivable under the Rewards Agreement.  The obligations owing under the Rewards Agreement shall continue to be secured by Rewards Network's valid and perfected lien and security interest in all the personal property of the Debtor, which is hereby reaffirmed by the Debtor to the same extent and priority that existed as of the Petition Date.  After the Effective Date, upon any Event of Non-Performance (as defined in the Rewards Agreement), Rewards Network shall be entitled to all rights and remedies stated in the Rewards Agreement and otherwise available under applicable law, including the right to enforce its valid and perfected lien and security interest and/or to enforce its rights in the purchased accounts receivable.  The Allowed Secured Claim shall be paid from the Debtor's funds available and operational revenue. Class 1 is Impaired.

2.      <u>Class 2 – Secured Claim of Plymouth Meeting Limited</u>

Class 2 consists of the Allowed Secured Claim of Plymouth Meeting Limited for its secured interest in the proceeds of the Debtor's liquor license number R03746 issued by the Pennsylvania Liquor Control Board pursuant to the terms of the court-approved settlement between Plymouth Meeting Limited and the Debtor (Doc. Nos. 149 and 187). In full satisfaction of the Allowed Class 2 Claim, Plymouth Meeting Limited shall be paid the first $65,000 in proceeds from the sale of the above-referenced liquor license. The Allowed Secured Class 2 Claim shall be paid on the earlier of six (6) months following entry of the Confirmation Order or upon the completed sale of the above-referenced liquor license and shall accrue interest at the rate of 6.5% per annum beginning on the date the Confirmation Order becomes a Final Order. In the event the sales proceeds are insufficient to pay by Allowed Class 2 Claim by said payment deadline, it

17

shall be paid from the Reorganized Debtor's funds available and operational revenue. Class 2 is Impaired.

      3.      <u>Class 3 – Secured Claims of PHL Holdings, LLC</u>

Class 3 consists of the Allowed Secured Claims of PHL for the secured indebtedness owed by the Debtor to PHL pursuant to (i) that certain *Revolving Note* and *Security Agreement* dated June 21, 2018, as amended by that certain *First Amendment* dated April 1, 2019, in the amount of $8,500,000.00 and (ii) those certain secured loans issued by CIT Bank, N.A., and Wells Fargo Bank, N.A., and assigned to PHL, pursuant to the terms of those certain *Credit Agreement* and *Loan Assignment* Agreement in the amount of $12,350,000.00; and the DIP Loan. PHL, subject to the limitation below, shall have Allowed Secured Claims equal to $8,500,000.00, $12,350,000.00, and the DIP Loan. PHL shall be paid monthly interest payments by the Reorganized Debtor at the parties' contractual rate and shall retain all Liens and Interests in the Reorganized Debtor, subject to the PHL Subordinations pursuant to the Consensual Plan Terms; *however,* PHL cannot exercise any of its rights nor collect any interest payments due until GUC Payment Amount is paid in full; *further,* until the GUC Payment Amount is paid in full, even if any event of default occurs under its credit agreements with the Debtor, PHL may only accrue interest at the non-default contractual rate.. All documents reflecting the Class 3 Claim shall, except as modified hereby, remain binding and enforceable. Class 3 is Impaired.

    **B.**    **Unsecured Claims.**

      1.      <u>Class 4 – Unsecured Claim of Sysco Corporation</u>

Class 4 consists of the Allowed Unsecured Claim of Sysco Corporation for critical food goods and services provided to the Debtor from January 5, 2022, to the Petition Date. Sysco Corporation shall have an Allowed Claim equal to all amounts outstanding as of Petition Date.

Sysco filed a claim in the amount of $ 3,756,358.33, and the Debtor is reconciling such amount. In full satisfaction of the Allowed Class 4 Claim, Sysco Corporation shall be paid in full over twelve (12) equal monthly payments without interest, which will begin immediately following the Effective Date, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Secured Claim shall be paid from the Debtor's funds available and operational revenue. Class 4 is Impaired.

2.      Class 5 – Allowed General Unsecured Claims

Class 5 consists of all Allowed General Unsecured Claims (as defined above and in the Plan) against the Debtor in an approximate amount of $14,000,000.00. In full satisfaction of the Allowed Class 5 Claims, Holders of such Claims shall receive a *pro rata* payment from the GUC Payment Amount (as defined above and in the Plan) Distributions of payments shall be paid by the GUC Payment Deadline, which is the date one hundred and eighty (180) days after the Effective Date. In the event of a conversion and liquidation, there would be likely no distribution to Holders of Allowed Class 5 Claims as the debt encumbering assets exceeds the value of such assets. Class 5 is Impaired.

3.      Class 6 – Voluntarily Subordinated Claim of PB Restaurants, LLC

Class 6 consists of the Allowed Claim of PB Restaurants, LLC as reflected in the *Loan Facility and Security Agreement* between the Debtor and PB Restaurants, LLC dated December 27, 2021. PB Restaurants, LLC shall have an Allowed Unsecured Claim of $14,859,000.00. However, pursuant to the Consensual Plan Terms, PB Restaurants, LLC shall subordinate its Claim to Class 5 but retain a Claim against the Reorganized Debtor. The Allowed

Class 6 Claim shall not accrue interest and shall mature at the same time as the Allowed Class 3 Claim. Class 6 is Impaired.

### C.    Equity Interests

1.    <u>Class 7 – Equity Ownership Interests</u>

Class 7 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall continue into the Reorganized Debtor. Additionally, Holdings will contribute New Value on or before the Effective Date. Class 7 is Impaired.

## VI.    <u>ARTICLE VI - MEANS OF IMPLEMENTATION</u>

### A.    Leases and Executory Contracts

To the extent Debtor rejects any executory contracts or unexpired leases prior to the Confirmation Hearing, any party asserting a Claim, pursuant to section 365 of the Bankruptcy Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease. The Debtor shall have through and including the Confirmation Hearing within which to assume or reject any unexpired lease or executory contract. To the extent the Debtor does not file a motion to reject prior to the Confirmation Hearing, any such executory contract or lease will be deemed assumed with any required cure to occur over six (6) months from the Effective Date.

### B.    Business Operations and Cash Flow

The Plan contemplates that the Debtor will continue to operate with reduced operating expenses and lower monthly lease payments. The Debtor believes the cash flow generated from operations following the restructuring of debt, the proceeds from liquor license sales, plus the contributions from PHL and/or Holdings, will be sufficient to make all Plan

Payments and will be sufficient to pay ordinary course expenses, including but not limited to, payroll and administrative costs.

### C.    Funds Generated During Chapter 11

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

### D.    Disbursing Agent

The GUC Agent (as defined in the Plan) will serve as the Disbursing Agent for all Distributions to be made with respect to General Unsecured Claims under the Plan. The GUC Agent will act as the escrow agent for receipt and disbursement of funds representing the GUC Payment Amount, to monitor and, if appropriate, take positions with regard to Debtor's management of the claims allowance/disallowance process, and to enforce the rights of the Holders of Allowed General Unsecured Claims hereunder as a class (not individually), with the advice of any Post-confirmation Committee. The GUC Agent will receive funding by way of the GUC Agent Expenses (as defined in the Plan).

For all other claims, the Disbursing Agent shall mean the Reorganized Debtor with the same responsibilities.

### E.    Management and Control of the Reorganized Debtor

The operations of the Reorganized Debtor will continue to be overseen by the current officers, managers, and directors following Confirmation, who will have uninterrupted authorization to maintain and manage the day-to-day normal business operations of the Reorganized Debtor with all the powers and duties as set forth in the Debtor's operating agreements.

**F.    Other Provisions**

      1.    <u>Procedures For Resolving Disputed Claims</u>

            *a)*    <u>*Prosecution of Objections to Claims*</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, pursuant to the Consensual Plan Terms the Debtor shall have the primary responsibility to make and file objections to all Claims, other than those Claims deemed as "Allowed" under the terms of the Plan, and for proposing resolutions for Claim objections, subject to consultation with the GUC Agent and any Post-Confirmation Committee. The Debtor/Reorganized Debtor shall have a 150-day timetable from the confirmation Effective Date in order to complete the Claims allowance/disallowance process. The expenses of the Debtor, Reorganized Debtor, or their counsel related to the claims process shall be paid by the Debtor/Reorganized Debtor.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b)      *Estimation of Claims*

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c)      *Cumulative Remedies*

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

d)      *Payments and Distributions on Disputed Claims*

As and when authorized by a Final Order, Disputed Claims or Interests that become "Allowed" shall be paid by the Reorganized Debtor such that the Holder of

such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

e) _Allowance of Claims and Interests_

(1) Disallowance of Claims

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor.

(2) Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

(3)    Chapter 5 Claims

Pursuant to the Consensual Plan Terms, on the Effective Date, the Debtor/Reorganized Debtor shall release all chapter 5 claims against all General Unsecured Creditors of the Debtor, the Affiliates, and all officers and directors of the Debtor, regardless of whether they hold an Allowed General Unsecured Claim, effective on the confirmation Effective Date.

f)    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

2.    Effect of Confirmation

a)    *Authority to Effectuate the Plan*

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. Unless otherwise noted herein, the Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

b)    *Post-Confirmation Status Report*

Within ninety (90) days of the entry of the Confirmation Order, the Reorganized Debtor will file a status report with the Bankruptcy Court explaining what progress

has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Post-confirmation Committee, the GUC Agent, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

## VII.    ARTICLE VII - CONFIRMATION

### A.    Confirmation Hearing

Section 1128 of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing.

Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

| Counsel for the Debtor: | Debtor: |
| --- | --- |
| R. Scott Shuker, Esquire<br>Shuker & Dorris, P.A.<br>121 S. Orange Avenue, Suite 1120<br>Orlando, Florida 32801 | Bertucci's Restaurants, LLC<br>Attn: Jeff Sirolly, Esq.<br>4700 Millenia Blvd., Ste. 400<br>Orlando, FL 32839 |
| United States Trustee: | Counsel for the Committee: |
| United States Trustee<br>George C. Young Federal Building<br>400 West Washington Street, Suite 1100<br>Orlando, Florida 32801 | Mark Wolfson, Esq.<br>c/o Foley & Lardner LLP<br>100 N. Tampa St., Ste. 2700<br>Tampa, FL 33602-5810 |

**B.      Financial Information Relevant to Confirmation**

Attached as exhibits to this Disclosure Statement, and incorporated herein, are the following:

1.      A copy of the Debtor's financial projections (the "Projections") for the three (3) years following confirmation of the Plan is attached hereto as **Exhibit "A"**.[4] The Projections demonstrate that the Debtor's cash flow from operations will be sufficient to service the required Plan Payments. The Projections may not be relied upon as a guaranty or other assurance of the actual results that will occur as they are based upon a variety of estimates and assumptions which may not be realized; and

2.      Debtor's chapter 7 liquidation analysis (the "Liquidation Analysis") is attached hereto as **Exhibit "B"**.[5] The Liquidation Analysis demonstrates that Creditors will receive under the Plan an amount not less than the amount that such Holder would receive or retain if the Debtor was liquidated under chapter 7.

**C.      Confirmation Standards**

For a plan of reorganization to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and complies with the applicable provisions of chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that at least one class of Impaired Claims accept the plan, that confirmation of the

---

[4] The Projections will be filed at least one (1) day prior to the deadline for service of the solicitation package which will be set by the Bankruptcy Court.

[5] The Liquidation Analysis will be filed at least one (1) day prior to the deadline for service of the solicitation package which will be set by the Bankruptcy Court.

plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Debtor believes that the Plan satisfies all the requirements for Confirmation.

      1.    <u>Best Interests Test</u>

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of an Allowed Claim of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if Debtor was, on the Effective Date, liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that satisfaction of this test is established by the Liquidation Analysis.

To determine what Holders of Claims would receive if the Debtor was liquidated, the Bankruptcy Court must determine how the assets and properties of the Debtor would be liquidated and distributed in the context of a chapter 7 liquidation case. The Debtor's costs of liquidation under chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtor during the Bankruptcy Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors would receive any meaningful distribution. The foregoing types of Claims arising from chapter 7 administration and such other Claims as may arise in chapter 7 or result from the pending Bankruptcy Cases

would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtor has carefully considered the probable effects of liquidation under chapter 7 on the ultimate proceeds available for distribution to Creditors, including the following:

  a.  the possible costs and expenses of the chapter 7 trustee or trustees;

  b.  the possible adverse effect on recoveries by Creditors under chapter 7 due to reduced sale prices for the Debtor's assets caused by the forced chapter 7 liquidation;

  c.  the loss of the going-concern value of the Debtor's business; and

  d.  the possible substantial increase in Claims, which would rank prior to or on parity with those of Unsecured Creditors.

  2.  <u>Financial Feasibility</u>

The Bankruptcy Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor unless the liquidation is proposed in the Plan. Debtor believes that its cash flow from operations will be sufficient to make all Plan Payments noted herein. Based upon the Projections, Debtor asserts that the Plan is feasible, and Confirmation is not likely to be followed by further financial reorganization.

  3.  <u>Acceptance by Impaired Classes</u>

The Bankruptcy Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been

accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by Holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under the Plan is deemed to have accepted the Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the Holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the Holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the Holder is entitled.

4.    Confirmation Without Acceptance by all Impaired Classes: "Cramdown"

The Bankruptcy Code contains provisions that enable the Bankruptcy Court to confirm the Plan, even though the Plan has not been accepted by all Impaired Classes, provided that the Plan has been accepted by at least one (1) Impaired Class of Claims. Section 1129(b)(1) of the Bankruptcy Code states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE BANKRUPTCY CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

D.    **Consummation**

The Plan will be consummated, and Payments made if the Plan is Confirmed pursuant to a Final Order of the Bankruptcy Court and the Effective Date occurs. It will not be necessary for the Reorganized Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the Bankruptcy Code.

VIII.  **ARTICLE VIII – MISCELLANEOUS PROVISIONS**

A.    **Release.**

**PURSUANT TO THE CONSENSUAL PLAN TERMS, THE DEBTOR'S DIRECTORS AND OFFICERS, THE AFFILIATES, AND ANY AGENT OR EMPLOYEE OF THE FOREGOING (THE "RELEASED PARTIES") SHALL BE RELEASED FROM ANY LIABILITY WITH RESPECT ANY OF THEIR PRECONFIRMATION CONDUCT RELATING IN ANY WAY TO THE DEBTOR; PROVIDED HOWEVER, ANY SUCH RELEASE (I) DOES NOT RELEASE THE OBLIGATIONS UNDER THE PLAN AND (II) IS NOT EFFECTIVE AND HELD IN ESCROW BY DEBTOR'S COUNSEL TO BE EFFECTIVE AND DELIVERED TO RELEASED PARTIES ONCE THE GUC PAYMENT AMOUNT HAS BEEN PAID IN FULL. ANY STATUTE OF LIMITATIONS WILL BE TOLLED AS OF THE CONFIRMATION EFFECTIVE DATE. THE RELEASED PARTIES MUST EVIDENCE CONSENT TO THE SAME.**

B.      **Exculpation from Liability**

The Debtor, and its officers, directors, members, managers, managing members, and Professionals, including each member of the Committee and its retained professionals, (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

### C.    Police Power

No provision of Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to section 1141 of the Bankruptcy Code.

### D.    Revocation and Withdrawal of this Plan

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

###### E.      Modification of Plan

The Debtor may seek to amend or modify this Disclosure Statement and the Plan in accordance with section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## IX.    <u>ARTICLE IX - ALTERNATIVE TO THE PLAN</u>

If the Plan is not confirmed and consummated, the Debtor believes the most likely alternative is a liquidation of the Debtor's Assets under chapter 7 of the Bankruptcy Code. In a chapter 7 liquidation, there would be no assets to administer on behalf of unsecured creditors, and a chapter 7 trustee would likely incur significant Administrative Expenses that would be paid before any distribution to creditors. The Debtor therefore believes that liquidation of all real and personal property in a chapter 7 case would dramatically reduce the total amount available to Creditors as compared to reorganization under the Plan. In light of the foregoing, the Debtor recommends that Holders of Claims vote to accept the Plan.

**RESPECTFULLY SUBMITTED** this 10th day of April 2023.

/s/R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane A. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
Lauren L. Stricker, Esq.

Florida Bar No. 91526
lstricker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
*Attorneys for the Debto*