# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION
**www.flmb.uscourts.gov**

In re:                                             CASE NO.: 6:22-bk-04313-GER

**BERTUCCI'S RESTAURANTS, LLC,**                   **CHAPTER 11**

                        **Debtor.**               *Expedited Hearing Requested on or before*
_____/                *May 16, 2023*

**DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING SALE OF LIQUOR LICENSE TO REDNER'S MARKETS, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

---

#### STATEMENT OF EXPEDITED RELIEF REQUESTED

Debtor respectfully requests this Motion be set for hearing on **May 16, 2023 at 10:00 AM** in conjunction with the other matters set to be heard at that time in this bankruptcy case. Debtor seeks authority in this Motion to sell the Liquor License (defined below) free and clear of all encumbrances. The material terms of the proposed sale are set forth in Section C of this Motion.

---

**BERTUCCI'S RESTAURANTS, LLC** ("Debtor"), pursuant to sections 105(a), 363, 365, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2081-1 and 6004-1, hereby respectfully moves the Court (this "Motion") for the entry of an order authorizing Debtor to sell, free and clear of all liens, claims, encumbrances, and interests (collectively, the "Encumbrances" and as defined more particularly below), that certain Pennsylvania Liquor License No. R-95140 (the "Liquor License"), a copy of which is attached as ***Exhibit A***, issued to Debtor by The Pennsylvania Liquor Control Board ("PLCB") for the Debtor's vacated restaurant located at 860 Bethlehem Pike, North Wales, PA 19454 (the "Premises"), to REDNER'S MARKETS, INC., or its nominee ("Purchaser" and together with Debtor, the "Parties"). In support, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the Middle District of Florida.* This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2081-1 and 6004-1.

## BACKGROUND

### A.  General Background

2.      On December 5, 2022 ("Petition Date"), Debtor filed its voluntary petition for reorganization under chapter 11 of the Bankruptcy Code. No trustee or examiner has been requested or appointed in this case, and Debtor is administering its case as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On January 9, 2023, the U.S. Trustee appointed and filed notice of appointing the unsecured creditors committee in this case (the "Committee"). (Doc. No. 80, as amended by Doc. No. 83).

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of this Case can be found in the *Chapter 11 Case Management Summary* (Doc. No. 3).

5.      Debtor is a Florida limited liability company that was formed in May of 2018. Its corporate offices are located at: 4700 Millenia Blvd., Suite 400, Orlando, Florida 32839.

6.      Debtor currently owns and operates approximately twenty-eight (28) Italian-themed restaurants in nine (9) states located in the North-East. (*see* https://locations.bertuccis.com/ for a complete list of all locations).

2

7.      The prior Bertucci's Brick Oven Pizza & Pasta went into bankruptcy in April of 2018 in the United States Bankruptcy Court for the District of Delaware. The current Debtor entity was created in May of 2018 when it acquired approximately fifty-six (56) restaurants under the name Bertucci's Brick Oven Pizza & Pasta (individually a "Restaurant", collectively, the "Restaurants"), in a transaction that closed on June 11, 2018, *see* the *Order Approving Asset Purchase Agreement* entered in the previous bankruptcy case [Bankr. D. Del. Case No. 18-10894-MFW; Doc. No. 295].

8.      The Restaurants are marketed toward the core casual dining market and, when acquired, Bertucci's operated approximately fifty-six (56) locations in nine (9) states nationwide reporting annual sales of more than $120 million for 2019 with nearly 2,000 employees.

9.      On or before the Petition Date, Debtor had ceased operations at 20 of its locations, including the Premises to which the Liquor License applies and is the subject of this Motion.

10.      During the course of this case, Debtor has rejected 21 leases for locations where it is no longer operating, including the Premises to which the Liquor License applies and is the subject of this Motion. (*See* Rejection Motions at Doc. Nos. 7 and 161; Rejection Orders at Doc. Nos. 47 and 172).

**B.  The Sale**

11.      Debtor, as seller, has negotiated to sell its Liquor License for the Premises for $380,000.00 (the "Purchase Price") to Purchaser pursuant to the terms set forth herein (the "Sale").

**a.  The Parties**

12.      Debtor is the seller of the Liquor License in this proposed Sale.

13.      Redner's Markets, Inc. a Pennsylvania corporation, or its nominee ("Purchaser") is the proposed Purchaser of the Liquor License. Purchaser is a third-party entity which the Debtor had no relationship with prior to the negotiations leading up to this proposed sale.

14.     The Liquor License is encumbered by the lien of PHL Holdings, LLC ("PHL").

15.     The Premises where the subject Liquor License applies was a prior restaurant location which the Debtor leased from Mall at Montgomery, L.P. (the "Prior Landlord") and which lease was rejected by Debtor, effective December 8, 2022 (*see* Rejection Order, Doc. No. 36, as amended by 47). The Prior Landlord has not asserted a secured claim in this case and Debtor does not believe it has any lien rights with respect to the Liquor License.

16.     Debtor does not believe, and is not aware of, any other persons or entities which may claim any type of interest in the Liquor License.

### b.  The Sale Process

17.     Following cessation of its operations at the Premises, Debtor was approached by Purchaser's broker, Rich Hewitt, about selling the Liquor License. Since then, Debtor and Purchaser's broker haven been actively engaged in negotiations regarding the purchase of the Liquor License.

18.     After weeks of negotiations, the Parties have agreed upon the Purchase Price for the sale of Liquor License to Purchaser, free and clear of all Encumbrances.

19.     The Parties have likewise negotiated and executed an asset purchase agreement consistent with the terms above (the "APA"). A copy of the APA is attached hereto as ***Exhibit "B"***.

### c.  The Sale Terms

20.     The specific terms of the Sale are set forth in the APA attached as Exhibit B.

21.     A summary of the pertinent terms of proposed sale are set forth in the immediately following chart.

| **Pertinent Sale Terms** | |
|---|---|
| *Purchase Price* | $380,000.00 to be paid as follows:<br><br>(i)   Down Payment: $38,000.00 to be paid as a down payment (the "Down Payment") to the Escrow Agent (defined below); and<br><br>(ii)   Balance: $342,000.00 to be paid at closing in immediately available funds. For purposes of complying with PLCB regulations, Purchaser will issue to Debtor a promissory note ("Note") with a face value equal to the Purchase Price in the form attached to the APA as Exhibit A, which Note will be held in escrow by the Escrow Agent. The Note shall be returned to Debtor upon consummation of the transactions contemplated in the APA or at such other time as may be set forth in the APA. |
| *Purchaser* | Redner's Market, Inc., a Pennsylvania corporation, or its nominee ("Purchaser") |
| *Escrow Agent* | Kozloff Stoudt, PC, a Pennsylvania professional corporation ("Escrow Agent") |
| *Liens / Encumbrances* | PHL Holdings, LLC ("PHL") is the only known party with a lien on (or interest in) the Liquor License.<br><br>PHL, however, consents to the Sale.<br><br>Furthermore, under the terms of Debtor's proposed plan of reorganization (Doc. No. 194) (the "Plan"), PHL agrees to subordinate its lien on the proceeds from the Sale to the GUC Payment Amount (as defined in the Plan). |
| *Purchased Assets* | Pennsylvania Liquor License No. R-95140 (the "Liquor License") issued to Debtor by the PLCB for the Debtor's vacated restaurant located at 860 Bethlehem Pike, North Wales, PA 19454 (the "Premises") |
| *Excluded Assets* | Any and all assets other than the Liquor License. |
| *Representations and Warranties* | The Liquor License will be transferred to Purchaser free and clear of all Encumbrances and will contain the usual warranties of title. Additional representations and warranties as set forth in section 7. of the APA. |

## **RELIEF REQUESTED**

22.    By way of this Motion, Debtor seeks to sell the Liquor License to Purchaser free and clear from all Encumbrances for the Purchase Price.

23.     For avoidance of doubt, the term "Encumbrances" shall be deemed to include mechanic's, materialmen's, other consensual and nonconsensual liens and statutory liens, security interests, encumbrances and claims against the Debtor, including, but not limited to, any "claim" as defined in section 101(5) of the Bankruptcy Code, reclamation claims, mortgages, deeds of trust, pledges, any liabilities or obligations under any State or Federal WARN Act or similar law, any liabilities or obligations under COBRA, covenants, restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of any court of foreign or domestic governmental entity, claims for reimbursement, contribution, indemnity or exoneration, assignments, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action, and claims, to the fullest extent of the law, in each case whether administrative, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or know or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by Agreement, understanding, law, equity or otherwise.

## BASIS FOR RELIEF

### A.  Sale of the Liquor License Should be Approved Under Sections 363(b) and (f), and 365 of the Bankruptcy Code.

24.     Debtor brings this Motion seeking approval of the proposed sale outside the ordinary course of its business. The Court should enter an order granting the relief requested herein because it represents a sound exercise of Debtor's business judgment pursuant to sections

363(b)(1), 365(f)(2), and 365 of the Bankruptcy Code and is further appropriate under section 105(a) of the Bankruptcy Code.

25.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *Meyers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

26.     Specifically, courts have held consistently that the sale of estate assets outside the ordinary course of business is appropriate if: (a) there is a sound business purpose for the sale; (b) the proposed sale price is fair; (c) the debtor has provided interested parties with adequate and reasonable notice; and (d) the buyer has acted in good faith. *See, e.g., In re Exaeris, Inc.,* 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.,* No. 00−4459, 2002 WL 32332749, at *7−8 (D. Del. May 20, 2002).

27.     Moreover, if a valid business justification exists for the sale of property of the estate, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Hldgs., Inc.,* 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith

with respect to negotiating and approving a transaction involving a sale of assets). Any parties

objecting to the debtor's decision to sell property of the estate must make a showing of "bad faith,

self-interest or gross negligence." *Integrated Res.,* 147 B.R. at 656; *see also In re Johns Manville*

*Corp.,* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis

for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will

generally not entertain objections to the debtor's conduct."). Accordingly, if a debtor's actions

satisfy the business judgment rule, then the transaction in question should be approved under

section 363(b)(1) of the Bankruptcy Code.

28.     Debtor respectfully submits that sound business reasons support their decision to

sell the Liquor License to Purchaser:

    (a)    PHL's lien is the only known Encumbrance on the Liquor License and PHL consents to the Sale;

    (b)    Debtor has considered the current market values of comparable licenses and has determined that the Purchase Price represents a fair and reasonable price for the Liquor License under current market conditions;

    (c)    The Purchase Price is the product of arm's length negotiations between Debtor and Purchaser, a third party unrelated to Debtor; and

    (d)    As Debtor is no longer operating at the Premises, the Liquor License no longer has any operational use or value to Debtor; however, the Sale proceeds are much needed by Debtor and will be used to fund its Plan, thereby benefiting the creditors in this case.

**B.  The Court Should Authorize the Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to Section 363(f) of the Bankruptcy Code**

29.     Debtor also seeks to sell the Liquor License free and clear of all liens, claims,

encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Section

363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in

such property if:

1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2) such entity consents;

3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

4) such interest is in bona fide dispute; or

5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale of the Acquired Assets "free and clear" of liens and interests. *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Decora Indus., Inc.*, 2002 WL 32332749, at *7; *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) does not apply. *See In re Trans World Airlines, Inc.*, No. 01−0056 (PJW), 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001).

31.     As set forth above, PHL is the only lienholder and it consents to the Sale.

**C.  The Court Should Grant Purchaser the Full Protections Afforded to a Good Faith Purchaser Pursuant to Section 363(m) of the Bankruptcy Code and Find that the Sale Should not be Avoidable Pursuant to Section 363(n) of the Bankruptcy Code**

32.     Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

33.     Section 363(m) of the Bankruptcy Code thus protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has stated that a good faith purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

34.     There is no fraud or collusion between Purchaser or any of its affiliates and Debtor. Before the execution of the APA, Debtor and Purchaser engaged in extensive arm's-length discussions to reach a deal. Debtor and Purchaser are each represented by separate counsel in connection with the negotiations and structure of the Liquor License's sale.

35.     Purchaser shall be permitted to assign its rights under this order to its nominee or a tenant for the Premises, at its discretion and without further order or any other action.

36.     Accordingly, Debtor requests that the Court determine that Purchaser has negotiated and always acted in good faith and, as a result, is entitled to the full protections of a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the sale does not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code.

**D.  A Private Sale of the Acquired Assets is Appropriate Under Bankruptcy Rule 6004**

37.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added); s*ee also In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that

manner of sale is within the debtor's discretion); *In re Bakalis*, 220 B.R. 525, 531−32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

38.     Accordingly, considering Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. *See, e.g.*, *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a Chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

39.     Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) when there has been a valid business reason for not conducting an auction. *See, e.g.*, *Buffets Holdings, Inc.*, No. 08−10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving the private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08−10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet *into* nylon engineered resins for $17.9 million); *In re W.R. Grace & Co.*, No. 01−01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of

business line which designs and manufactures materials used in catalytic converters to remove pollutants produced by engines for approximately $22 million); *In re Solutia, Inc.*, No. 03−17949 (SCC) (Bankr S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).

40.     Debtor submits that the proposed private sale of the Liquor License to Purchaser in accordance with terms set forth above is appropriate based on the facts and circumstances of this instant chapter 11 case. Specifically because: (i) the proposed $380,000.00 Purchase Price for the Liquor License is at or above market value; (ii) PHL consents to the Sale; (iii) given that Debtor is no longer operating at the Premises, the Liquor License no longer has any operational use or value to Debtor; the Sale proceeds, however, will provide much use and value to Debtor as they will be utilized to fund its proposed Plan of Reorganization.

41.     As a result, the transaction with Purchaser allows Debtor to maximize the value of the Liquor License and provides much needed liquidity to the Debtor's estate. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and Debtor believes that Purchaser's offer is the highest and best offer for the Liquor License (indeed, Debtor does not believe any other offer could be obtained on better terms). Accordingly, Debtor requests that the Court approve the proposed private sale of the Liquor License to Purchaser in accordance with the terms set forth herein.

**E.  Waiver of Bankruptcy Rule 6004**

42.     To implement the foregoing successfully, Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable. As described above, the relief that Debtor seeks in this Motion is necessary for Debtor to generate revenues for its estate and to fund its Plan. Accordingly, Debtor respectfully requests

that the Court waive the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), so that Debtor may perform its obligations timely under the APA.

43.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Middle District of Florida; (b) counsel for the Committee, (c) Purchaser; (d) PHL; (e) the Prior Landlord; (f) all parties who have expressed an interest in acquiring some or all of the Debtor's assets; (g) all known holders of liens, claims, and other encumbrances secured by the assets subject to the proposed sale; (h) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. Debtor respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, Debtor, Bertucci's Restaurants, LLC, respectfully requests this Court enter an order granting this Motion and the relief requested herein, and any such further relief as the Court deems just and proper in the circumstances.

**RESPECTFULLY SUBMITTED** this 1st day of May 2023.

/s/R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 0984469
rshuker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Telephone: (407) 337-2060
Facsimile: (407) 337-2050
*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    CASE NO.    6:22-bk-04313-GER

**BERTUCCI'S RESTAURANTS, LLC,**                          **CHAPTER 11**

            Debtor.                                      *Expedited Hearing Requested on or*
_____/                         *before May 16, 2023*

### CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true copy of the foregoing, together with any exhibits, has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: **DEBTOR**, **BERTUCCI'S RESTAURANTS, LLC**, 4700 Millenia Blvd., Suite 400, Orlando, FL 32836; **PHL HOLDINGS, LLC**, c/o Jason B. Burnett, Esq., GRAYROBINSON, P.A., 50 North Laura Street, Suite 1100, Jacksonville, FL 32202 (Jason.Burnett@Gray-Robinson.com) and Kenneth B. Jacobs, Esq., GRAYROBINSON, P.A., 50 North Laura Street, Suite 1100, Jacksonville, FL 32202 (ken.jacobs@gray-robinson.com); **REDNER'S MARKETS. INC.**, c/o Jason Hopp, 3 Quarry Dr., Reading, PA 19605 and George C. Balchunas, Esq., Kozloff Stoudt, 2640 Westview Dr., Wyomissing, P.A.; **KOSLOFF STOUDT**, Attn: George C. Balchunas, Esq., Kozloff Stoudt, 2640 Westview Dr., Wyomissing, P.A.; **PENNSYLVANIA LIQUOR CONTROL BOARD**, Attn: Office of Chief Counsel, 401 NW Office Bldg, Harrisburg, PA 17124-0001 (ra-lblegal@pa.gov); **OFFICIAL COMMITTEE OF UNSECURED CREDITORS**, c/o Mark J. Wolfson, Esq., Foley & Lardner, 100 North Tampa Street, Suite 2700, PO Box 3391, Tampa, FL 33601 (mwolfson@foley.com and crowell@foley.com); **MALL AT MONTGOMERY, L.P.** c/o Kravco Simon Company, 225 West Washington Street, Indianapolis, Indiana 46204-3438 and c/o David M. Neumann, Esq., Meyers, Roman, Friedberg & Lewis, 28601 Chagrin Boulevard, Suite 600, Cleveland, OH 44122 (dneumann@meyersroman.com) all parties entitled to receive CM/ECF noticing in the ordinary course; the Local Rule 1007-2 parties-in-interest, as shown on the matrix attached to the original of this motion filed with the Court; and the U.S. Trustee's Office, 400 W. Washington St., Ste. 1120, Orlando, Florida 32801, this 1st day of May 2023.

                                          /s/R. Scott Shuker
                                          R. Scott Shuker, Esq.

**EXHIBIT "A"**

 

**MUNICIPALITY:** Montgomery Twp
**COUNTY:** Montgomery County
**DISTRICT:** District 04

**LICENSE NO:** R13777
**LID:** 95140

**EFFECTIVE:** May 01, 2022
**EXPIRES:** Apr 30, 2023

**ADDITIONAL PERMITS**

Sunday Sales Permit

**BERTUCCI'S RESTAURANTS LLC**
**BERTUCCIS**
**860 BETHLEHEM PK**
**NORTH WALES PA 19454**

NOW, THIS IS TO CERTIFY, that the above named is hereby granted a RESTAURANT LIQUOR LICENSE, for the premises designated, effective on the date shown above and continuing until and including the expiration date specified, unless sooner surrendered, cancelled, transferred, suspended or revoked. Liquor and Malt or Brewed Beverages may be stored and sold in only that portion of the premises designated in the application.

WITNESS THE FACSIMILE SIGNATURES AND
THE SEAL OF THE LIQUOR CONTROL BOARD

ATTEST:

**MASTER LICENSE**

**CHAIRMAN**

**MEMBER**

**MEMBER**

The License is NOT ASSIGNABLE and is valid for use only by the Licensee at the above designated location, where it must be conspicuously displayed, suitably framed under a transparent substance.

*Motion to Sell - Exhibit "A"*

## WHOLESALE LIQUOR PURCHASE PERMIT
Store Discount Card

**THESE ARE YOUR WHOLESALE LIQUOR PURCHASE PERMIT CARDS.** Present this to the Pennsylvania Liquor Store which you will designate as your home store.  The store personnel will give you full instructions as to the manner in which these Permits should be signed.

EXPIRES:   April 30, 2023                    LID:    95140

BERTUCCI'S RESTAURANTS LLC
BERTUCCIS
860 BETHLEHEM PK
NORTH WALES PA 19454



*Tim Holden* CHAIRMAN

MEMBER

*Mary P. Isaacson* MEMBER

The above named having been granted a Retail Liquor License expiring on the date shown above is permitted to purchase liquor at wholesale prices from the Pennsylvania Liquor Stores upon presentation of this card.

To be signed only by licensees and his agents duly authorized to make purchases.

**Signature(s) of Licensees/Authorized Officer and Title**                    **Date of Signature**

_____        _____

_____        _____

_____        _____

_____        _____

**Authorized Agents:**                    **Date of Signature**  **Date Signature Voided**

_____        _____  _____

_____        _____  _____

_____        _____  _____

_____        _____  _____

_____        _____  _____

**NOT VALID IF SIGNED BY MORE THAN FOUR AGENTS**

*Motion to Sell - Exhibit "A"*

**WHOLESALE LIQUOR PURCHASE PERMIT**

Licensee Discount Card

**THESE ARE YOUR WHOLESALE LIQUOR PURCHASE PERMIT CARDS.** Present this to the Pennsylvania Liquor Store which you will designate as your home store.  The store personnel will give you full instructions as to the manner in which these Permits should be signed.

EXPIRES:   April 30, 2023                    LID:   95140

BERTUCCI'S RESTAURANTS LLC
BERTUCCIS
860 BETHLEHEM PK
NORTH WALES PA 19454



*Tim Holden* CHAIRMAN

*W.O.Fore* MEMBER

*Mary P. Isaacson* MEMBER

The above named having been granted a Retail Liquor License expiring on the date shown above is permitted to purchase liquor at wholesale prices from the Pennsylvania Liquor Stores upon presentation of this card.

To be signed only by licensees and his agents duly authorized to make purchases.

**Signature(s) of Licensees/Authorized Officer and Title**                    **Date of Signature**

_____    _____

_____    _____

_____    _____

_____    _____

**Authorized Agents:**                                        **Date of Signature**    **Date Signature Voided**

_____    _____    _____

_____    _____    _____

_____    _____    _____

_____    _____    _____

**NOT VALID IF SIGNED BY MORE THAN FOUR AGENTS**

*Motion to Sell - Exhibit "A"*

15A7795

# EXHIBIT "B"

## AGREEMENT FOR SALE OF LIQUOR LICENSE

THIS AGREEMENT FOR SALE OF LIQUOR LICENSE ("Agreement") is made as of the 3⅟day of March, 2023 by and among REDNER'S MARKETS, INC., a Pennsylvania corporation ("Buyer"), BERTUCCI'S RESTAURANTS, LLC, a Florida limited liability company ("Seller"), and KOZLOFF STOUDT, PC a Pennsylvania professional corporation ("Escrow Agent").

### Background

Seller is the holder of Restaurant License No. R13777, LID No. 95140 (hereinafter "License") issued by the Pennsylvania Liquor Control Board (the "PLCB") for premises at 860 Bethlehem Pike, North Wales, PA 19454.   Said License is currently in "safekeeping" status.

Seller desires to sell, transfer, and convey to Buyer, and Buyer desires to purchase from Seller, the License, for transfer by Buyer to any location in Montgomery County.

NOW, THEREFORE in consideration of the provisions set forth herein, the legal sufficiency of which is hereby acknowledged and agreed by Buyer and Seller, AND INTENDING TO BE LEGALLY BOUND HEREBY, Buyer and Seller agree as follows:

1.     Sale and Purchase of License. Subject to the terms and conditions of this Agreement, Seller shall sell, grant, convey, transfer, assign and deliver to Buyer, and Buyer shall purchase from Seller, the License, free and clear of all liens, encumbrances, claims and charges of every kind, upon the terms and conditions set forth in this Agreement.

2.     Purchase Price. The purchase price for the License shall be the sum of Three Hundred Eighty Thousand Dollars ($380,000.00) (the "Purchase Price").   The Purchase Price shall be payable as follows:

(a)     Down Payment. Concurrently with the execution and delivery of this Agreement, Buyer shall deliver to Escrow Agent the sum of Thirty-Eight Thousand Dollars ($38,000.00) ("Down Payment").   At Closing, Escrow Agent shall remit the Down Payment to Seller.

(b)     Balance.   At Closing, Buyer shall pay to Seller the sum of Three Hundred Forty-Two Thousand Hundred Dollars ($342,000.00) in immediately available funds. For purposes of compliance with PLCB regulations, Buyer will issue to Seller a promissory note ("Note") with a face value equal to the Purchase Price, in the form attached hereto as Exhibit "A", which Note will be held in escrow by the Escrow Agent.

1

*Motion to Sell - Exhibit "B"*

15A7795

The Note shall be returned to the Buyer upon consummation of the transactions contemplated by this Agreement or at such other time as may be set forth in this Agreement.

      3.    <u>Closing</u>. The closing ("Closing") on the sale and purchase of the License shall take place within twenty (20) days of all conditions set forth in Section 5 being satisfied. In the event that said conditions are not satisfied by October 15, 2023, or such later date as the parties hereto may mutually agree in writing, either Buyer or Seller shall have the right to terminate this Agreement, by so notifying the other, in writing, and in the event of such termination, the Down Payment and Note shall be returned to Buyer, and no party hereto shall have any further duty, obligation or liability hereunder. At Closing, Seller shall (a) execute and deliver to Buyer a Bill of Sale and/or settlement statement in the nature of a receipt acknowledging payment by Buyer and releasing Buyer from further obligation, in form and substance reasonably acceptable to Buyer, pursuant to which Seller transfers the License to Buyer; and (b) execute and deliver such other documents and perform such other actions as Buyer may reasonably request to effect the intent of this Agreement. At Closing, Buyer shall (i) deliver the Purchase Price to Seller; (ii) provide Seller with such evidence as Seller may reasonably request to confirm Buyer's company authority to consummate the transactions contemplated by this Agreement; and (c) execute and deliver such other documents and perform such other actions as Seller may reasonably request to effect the intent of this Agreement. Additionally, any fees paid or payable to the PLCB for ongoing maintenance of the License for a period including the date of Closing shall be pro-rated among the parties, with the party that remitted (or will remit) such fees to the PLCB being reimbursed by the other party on a pro rata basis for the portion of the period during which the non-paying party was or will be the Licensee. Buyer may extend the above-referenced deadline for satisfaction of conditions for three (3) successive additional thirty (30) day periods by written notice to Seller accompanied by the payment of the sum of One Thousand Dollars ($1000) for each additional thirty (30) day period with respect to which the Buyer desires to extend the term of this Agreement. If applicable, the extension payment or payments shall be non-refundable and shall be in addition to the Purchase Price of the License.

      4.    <u>Pre-Closing Obligations</u>. Buyer shall:

      (a)    Promptly commence with the performance of any due diligence activities in which Buyer may desire to engage with respect to the License or Seller. Seller shall cooperate with all such activities and provide Buyer such information and documents as Buyer may reasonably request in connection with Buyer's due diligence activities. At any time prior to April 30, 2023, Buyer may terminate this Agreement if Buyer is unsatisfied with the results of its due diligence by notifying Seller in writing. Upon such notice, the Escrow Agent shall promptly return the Down Payment and Note to Buyer.

*Motion to Sell - Exhibit "B"*

15A7795

(b)    Commence, no later than April 30, 2023 with efforts to obtain such municipal or other governmental consent as is necessary to utilize the license in a municipality of Buyer's choosing in Montgomery County, Pennsylvania. Seller shall cooperate with all such activities and provide Buyer such information as Buyer may reasonably request in connection with Buyer's efforts. At any time following the 60th day after the Buyer has commenced with the foregoing efforts, either Buyer or Seller may terminate this Agreement if Buyer is unable to obtain such consent, by notifying the other in writing. Upon such notice, the Escrow Agent shall promptly return the Down Payment and Note to Buyer.

(c) Commence, no later than the 20th day following its receipt of the permission referenced in Subsection 4(b) above, with efforts to obtain the consent of the PLCB to transfer the License from Seller to Buyer. Seller shall cooperate with all such activities and provide Buyer such information, perform such actions and execute such documents as Buyer may reasonably request in connection with Buyer's efforts. At any time before October 16, 2023, or such date as extended pursuant to Section 3 above, Buyer may terminate this Agreement if Buyer is unable to obtain the "prior approval" consent of the PLCB to such transfer, by notifying the other in writing. Upon such notice, the Escrow Agent shall promptly return the Down Payment and the Note to Buyer.

Until the Closing, Seller shall: (1) conduct the affairs of its licensed business in the ordinary course; (2) enter into no contract or transaction, except in the ordinary course of business, on account of the License without the prior written consent of Buyer; (3) immediately notify Buyer in the event that any representation or warranty issued in Section 7 below becomes inaccurate or incomplete; (4) timely renew the active status of the License; and (5) maintain the License in "safekeeping".

5.    <u>Conditions Precedent</u>.    The duties and obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to and contingent and conditioned upon (1) Buyer obtaining written "prior approval" by the PLCB of the transfer of the License from Seller to Buyer; (2) Buyer obtaining all necessary permission to utilize the License in a municipality of Buyer's choosing in Montgomery County, Pennsylvania; (3) all representations, warranties and covenants of Seller contained in this Agreement shall have been true and correct when made, and shall be true and correct on the date of Closing with the same effect as if made on and as of such date; and (4) Seller shall perform and comply with, and shall have performed and complied with, all of Seller's obligations under the terms and conditions set forth in this Agreement.

6.    <u>Representations and Warranties of Buyer</u>. Buyer represents and warrants to Seller that as of the date of this Agreement the following representations are true and correct and shall be true and correct as of the date of Closing:

3

*Motion to Sell - Exhibit "B"*

15A7795

(a) <u>Organization and Good Standing.</u> Buyer is a Pennsylvania corporation duly incorporated, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania.

(b) <u>Authorization.</u> The execution, delivery and performance by Buyer of this Agreement and each instrument executed and to be executed by Buyer in connection herewith, and Buyer's consummation of the transactions provided for herein: (1) have been duly authorized by all necessary corporate actions; (2) do not violate the Articles of Incorporation or Bylaws of Buyer; and (3) will not violate any order, writ, injunction, decree, judgment, statute, rule or regulation applicable to Buyer.

(c) <u>Binding Effect.</u> This Agreement has been duly executed and delivered by Buyer and constitutes the legal, valid and binding obligation of Buyer enforceable against Buyer in accordance with the terms hereof.

(d) <u>Broker.</u> Buyer acknowledges and agrees that Buyer has not engaged the services of any broker with respect to the transactions contemplated by this Agreement.

7. <u>Representations and Warranties of Seller.</u> Seller represents and warrants to Buyer that as of the date of this Agreement the following representations are true and correct and shall be true and correct as of the date of Closing:

(a) <u>Organization and Good Standing.</u> Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida, and registered to conduct business in and in good standing, in the Commonwealth of Pennsylvania . Seller has the power to own and utilize the License and has the requisite company power and authority to enter into and perform its obligations under this Agreement in accordance with its terms. The Seller is not in violation of any provisions of its articles of organization or operating agreement, or any other similar company governance document.

(b) <u>Authorization.</u> The execution, delivery and performance by Seller of this Agreement and each instrument executed and to be executed by Seller in connection herewith, and Seller's consummation of the transactions provided for herein, will not violate any order, writ, injunction, decree or judgment applicable to Seller or the License.

(c) <u>Binding Effect.</u> This Agreement has been duly executed and delivered by and on behalf of Seller and constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with the terms hereof.

(d) <u>License.</u> The Seller is the sole owner of the License. The License is

4

*Motion to Sell - Exhibit "B"*

15A7795

in good standing and has been renewed through April 30, 2023. Seller is in full compliance with all requirements associated with the License. No facts or circumstances exist that would prevent Seller from transferring the License to Buyer at Closing, as contemplated under this Agreement. Seller has, and at the Closing shall convey to Buyer, good and marketable title to the License free and clear of all encumbrances. There are no encumbrances of any nature relating to the License. Seller has full power and authority to assign, to the extent assignable, and to sell, transfer and deliver the License to Buyer as contemplated hereunder without obtaining any consents or approvals other than approval of the PLCB to the transfer of the License. The execution, delivery and performance of this Agreement by the Seller and the consummation of the transactions contemplated herein do not conflict with or result in any breach, or with or without the giving of notice and/or the passage of time, any agreement, or any order, judgment or other restriction of any kind or character, to which Seller is a party or by which either Seller or the License may be bound and do not result in the creation of any lien, charge or encumbrance upon the License. Upon transfer of the License to Buyer at the Closing as contemplated by this Agreement, Buyer shall acquire good and valid title thereto, free and clear of all encumbrances.

(e)     Litigation. There is no action, suit, litigation, administrative or governmental proceeding or investigation ongoing, pending or threatened, either in writing or of which Seller has received actual notice or knows of, against or relating to Seller or the License.

(f)     Citations. There are no actions presently pending before the PLCB or the Pennsylvania State Police Bureau of Liquor Control Enforcement for citations against the Seller or the License. To the best of Seller's knowledge, no basis exists for any such action and no such action is contemplated.

(g)     Untrue Statement. No representation, statement, warranty or covenant by Seller contained in this Agreement or in any statement, exhibit hereto or document furnished or to be furnished by Seller to Buyer pursuant to this Agreement shall contain or will contain any untrue statement of, or omission to state, a material fact.

(h)     Taxes and Obligations. With respect to Seller and the License, Seller has duly and timely filed as of the date of this Agreement, shall duly and timely file as of the date Closing, and shall duly and timely file at all times after Closing, all federal, state, local and other tax returns and reports required to be filed, each is and will be true and correct in all respects, and all taxes, fees, levies, charges, unemployment compensation contributions and other assessments of every kind, including any interest, penalties and additions to taxes required to be paid in respect of the periods covered thereby have been duly and timely paid in full as of the date of this Agreement, shall be duly and timely paid as of the date of Closing, and shall be duly and timely paid at all times after Closing.

*Motion to Sell - Exhibit "B"*

15A7795

(i)    Creditors. Seller is not as of the date of this Agreement and shall not be as of Closing in default in payment to any of Seller's creditors. Seller is not insolvent and is not entering into this transaction with the intent to hinder, delay or defraud any creditor.

(j)    Compliance with Laws. Seller has presently and, as of Closing will have, complied with all laws, ordinances, requirements, regulations, restrictions, injunctions, judgments, writs, decrees or orders (collectively "Laws") applicable to Seller and relating to or affecting the License.

(k)    Broker. No commission arising from the transactions contemplated by this Agreement shall be payable by the Buyer. A Seller's commission shall be payable to Liquor License Sales PA-NJ, LLC in the amount of $30,400.00 upon unconditional transfer of the License pursuant to the terms of this Agreement.

(l)    Options. There are no outstanding options or rights in any third party to acquire the License, or any interest therein.

8.    Survival. Except as set forth herein, all of the representations, warranties, covenants and agreements of the parties hereto, as well as any rights and benefits of the parties pertaining to a period of time following the Closing of the transactions contemplated hereby, shall survive the Closing and shall not be merged therein.

9.    Default by Seller. The occurrence of any of the following, and the failure to cure the same within ten (10) days of the giving of written notice with respect thereto by Buyer, shall constitute a default by Seller ("Default by Seller") hereunder:

(a)    The inaccuracy or incompleteness of any representation or warranty made by Seller in this Agreement or in any document or other instrument at any time under or in connection with the transactions contemplated by this Agreement as of the date made or deemed to have been made, including, without limitation, at Closing.

(b)    Failure by Seller to perform, observe or comply with any of the covenants, obligations or other provisions contained in this Agreement or any document or instrument furnished under or in connection with the transactions contemplated by this Agreement, which Seller is required to perform, observe or comply with.

10.    Default by Buyer. The occurrence of any of the following, and the failure to cure the same within ten (10) days of the giving of written notice with respect thereto by Seller, shall constitute a default by Buyer ("Default by Buyer") hereunder:

6

*Motion to Sell - Exhibit "B"*

15A7795

(a)   The inaccuracy or incompleteness of any representation or warranty made by Buyer in this Agreement or in any document or other instrument at any time under or in connection with the transactions contemplated by this Agreement as of the date made or deemed to have been made, including, without limitation, at Closing.

(b)   Failure of Buyer to perform, observe or comply with any of the covenants, obligations or other provisions contained in this Agreement or any document or instrument furnished under or in connection with the transactions contemplated by this Agreement, which Buyer is required to perform, observe or comply with.

11.   <u>Remedies of Buyer.</u>  Upon the occurrence of a Default by Seller, Buyer shall have any and all of the following rights and remedies:

(a)   The right to terminate this Agreement, in which event the Down Payment and Note shall be returned to Buyer; and/or

(b)   The right to exercise any and all other rights and remedies which are set forth in this Agreement or by law, equity or statute permitted or provided, including the right to specific performance.

12.   <u>Remedies of Seller</u>.  Upon the occurrence of a Default by Buyer, Seller shall have any and all of the following rights and remedies:

(a)   The right to terminate this Agreement, in which event this Agreement shall be null and void, and no party hereto shall have any other or further duty, obligation or liability under this Agreement; and/or

(b)   The right to retain the Down Payment as liquidated damages, regardless of whether or not, or on what terms, the License is retained or resold; provided, however, notwithstanding anything to the contrary, Seller is limited to retaining the Down Payment paid by Buyer as liquidated damages; and upon delivery of the Down Payment to Seller, the Buyer shall not have any further duty, obligation or liability hereunder, and the Escrow Agent shall return the Note to the Buyer.

13.   <u>Remedies Cumulative</u>.  All rights and remedies of each party are cumulative and may, to the extent permitted by applicable law, be exercised concurrently or separately.  The exercise of any one right or remedy shall not be deemed to be an exclusive election of such right or remedy or to preclude the exercise of any other right or remedy.  No failure on the part of any party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof, nor shall

7

*Motion to Sell - Exhibit "B"*

15A7795

any single or partial exercise by any party of any right or remedy hereunder preclude any other or future exercise thereof or the exercise of any other right or remedy.

14.    Notices.  All notices, requests, demands and other communications under this Agreement shall be in writing and shall be sent by hand delivery, nationally recognized courier service or by certified mail, return receipt requested, postage prepaid, and shall be deemed to have been given or made when hand delivered, deposited with the nationally recognized courier service or deposited in the United States mails, addressed as follows or to such other address as the respective parties may designate in writing:

      (a)    If to Buyer:

> Jason Hopp
> Redner's Markets, Inc.
> 3 Quarry Drive
> Reading, PA  19605

      With a copy to:

> George C. Balchunas
> Kozloff Stoudt
> 2640 Westview Drive
> Wyomissing, PA  19610

      (b)    If to Seller:

> Bertucci's Restaurants, LLC
> 4700 Millenia Blvd., Suite 400
> Orlando, FL 32839
> Attn:  General Counsel

      (c)    If to Escrow Agent:

> Kozloff Stoudt
> Attention:  George C. Balchunas
> 2640 Westview Drive
> Wyomissing, PA 19610

15.    Assignment.  No party to this Agreement shall have the right to assign this Agreement or their respective rights hereunder.

16.    Indemnification of Escrow Agent.

*Motion to Sell - Exhibit "B"*

15A7795

(a)    Buyer and Seller jointly and severally agree to indemnify Escrow Agent and hold Escrow Agent harmless from any and all claims, liabilities, losses, actions, suits or proceedings at law or in equity, or any other expenses, fees or charges of any character or nature, which Escrow Agent may incur or with which Escrow Agent may be threatened by reason of Escrow Agent acting as escrow agent under this Agreement and, in connection herewith, to indemnify the Escrow Agent against any and all expenses, including but not limited to attorneys' fees and the costs of defending any action, suite, proceeding or resisting any claim unless caused by the willful misconduct of Escrow Agent.

(b)    Escrow Agent shall not be liable for any mistake of fact, errors of judgment or any acts or omission of any kind unless caused by the willful misconduct of Escrow Agent.

17.    <u>Miscellaneous</u>.

(a)    This Agreement represents the entire agreement among the parties hereto with respect to the sale and purchase of the License and shall extend to and be binding upon the respective heirs, representatives, successors and assigns of the parties hereto.

(b)    Time is of the essence of this Agreement.

(c)    This Agreement shall be construed under and in accordance with the laws of the Commonwealth of Pennsylvania.

(d)    This Agreement constitutes the sole and only agreement of the parties hereto with respect to the subject matter hereof and supersedes any prior understandings or written or oral agreements between the parties hereto respecting the aforesaid subject matter.

*Remainder of page left intentionally blank*

9

*Motion to Sell - Exhibit "B"*

15A7795

    (e)    This Agreement shall not be amended or modified except by a written agreement signed by the parties hereto.

    (f)    This Agreement may be effectively executed in counterparts.

    IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

BUYER:               REDNER'S MARKETS, INC.

                     By:_____

                     Jason Hopp, Vice President and General Counsel

SELLER:              BERTUCCI'S RESTAURANTS, LLC

                     By:_____

                     Jeffrey C. Sirolly, Secretary and General Counsel

ESCROW AGENT:      KOZLOFF STOUDT, PC

                     By:_____

*Motion to Sell - Exhibit "B"*

Label Matrix for local noticing
113A-6
Case 6:22-bk-04313-GER
Middle District of Florida
Orlando
Mon May  1 10:37:23 EDT 2023

Julia Mohan
35 W. Wacker Dr. 29th Floor
Chicago, IL 60601-1748

805 MAIN STREET LLC
c/o Edward M. Fitzgerald, Esq.
Holland & Knight LLP
200 S. Orange Avenue, Suite 2600
Orlando, FL 32801-3453

AFA Protective Systems, Inc.
155 Michael Drive
Syosset, NY 11791-5310

Avon Marketplace Investors, LLC
Marc J. Kurzman, Esq.
1055 Washington Blvd
Stamford, CT 06901-2216

Best Petroleum LLC
Country Manor Norwood Trust
40 Grove St., Unit 430
Wellesley, MA 02482-7774

(p)C H  ROBINSON WORLDWIDE  INC
ATTN BANKRUPTCY TEAM BILL GLAD
14701 CHARLSON ROAD
SUITE 2400
EDEN PRAIRIE MN 55347-5076

C.H. Robinson Worldwide, Inc.
c/o Mark A. Amendola, Esq.
Martyn and Associates Co.
820 W. Superior Ave., Tenth Floor
Cleveland, OH 44113-1827

CIL Walkers LLC
c/o Bank of America, N.A.
PO Box 105576
Atlanta, GA 30348-5576

Canton R2G Owner LLC
PO Box 411261
Boston, MA 02241-1261

Christine Pageau
c/o Alicia M. Kupcinskas, Esq.
Brennan Manna Diamond PL
5210 Belfort Road, Suite 400
Jacksonville, FL 32256-6050

Clark National Accounts, LLC
c/o Spilman Thomas & Battle, PLLC
300 Kanawha Blvd East
P. O. Box 273
Charleston, WV 25321-0273

Commerce Way Development Co., LLC
c/o Matthew J. McGowan
56 Exchange Terrace, Suite 500
Providence, RI 02903-1772

Concord Retail Partners, L.P.
c/o Dana S. Plon, Esquire
Sirlin Lesser & Benson, P.C.
123 South Broad Street, Suite 2100
Philadelphia, PA 19109-1042

Condord Gallery, Inc.
c/o Andrew L. Cole, Esq.
Cole Schotz P.C.
P.O. Box 7189
Wilmington, DE 19803-0189

Conneticut Natural Gas Corp
76 Meadow St.
East Hartford, CT 06108-3218

Creditor's Committee, c/o
Mark Wolfson, Esq.
100 North Tampa Street
Suite 2700
Tampa, FL 33602-5810

D&H 402-A Pad
c/o Bodie B. Colwell, Esq.
Preti Flaherty, LLP
PO Box 9546
Portland, ME 04112-9546

D&H 402-A Pad
c/o John M. Sullivan
Preti Flaherty Beliveau & Pachios PLLP
PO Box 1318
Concord, NH 03302-1318

D&H 402A Pad Partnership TS
c/o Caron & Bletzer
PO Box 969
Kingston, NH 03848-0969

Ecolab Inc.
c/o Kohner, Mann & Kailas, S.C.
4650 North Port Washington Rd.
Milwaukee, WI 53212-1077

Frontier Dr Metro Center LP
Lockbox #283523
PO Box 713523
Philadelphia, PA 19171-3523

Griswold Mall Associates, LLC
c/o Richard Johnston, Jr.
JOHNSTON LAW, PLLC
7370 College Parkway, Suite 210
Fort Myers, FL 33907-5559

Kevin L. Carr, Esquire
Spilman Thomas & Battle, PLLC
59 Seamount Way
St. Augustine, FL 32092-1156

Lincoln Plaza Assoc
PO Box 829424
Philadelphia, PA 19182-9424

MNH Mall, LLC
Mall of New Hamphire
14184 Collections Center Dr
Chicago, IL 60693-0001

MOBO Systems
285 Fulton St
Floor 82
New York, NY 10007-0166

Mall at Rockingham LLC
Mall at Rockingham Park
14165 Collections Center Dr
Chicago, IL 60693-0001

Mall at Solomon Pond, LLC
14199 Collections Center Dr
Chicago, IL 60693-0001

Medford Wellington Service Co., Inc.
c/o Kate P. Foley, Esq.
Mirick O'Connell
1800 West Park Dr., Ste 400
Westborough, MA 01581-3960

Medford Wellington Service Co., Inc.
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

NCR CORPORATION
c/o Ashley Thompson, Law Department
864 Spring Street , NE
Atlanta, GA 30308

NCR Corporation
P.O. Box 198755
Atlanta, GA 30384-8755

Norwood Country Manor LLC
c/o Gillian D. Williston, Troutman Peppe
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462-3038

PB Restaurants, LLC
11 West 42nd Street
Orlando, FL 32839

PB Restaurants, LLC
c/o Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

PHL Holdings, LLC
c/o Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

PHL Holdings, LLC
c/o Kenneth B. Jacobs, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

RPT Realty, L.P.
c/o Ilan Markus
Barclay Damon LLP
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511-5960

Reward Network
540 W Madison St
Suite 2400
Chicago, IL 60661-2562

Rewards Network Establishment Services Inc.
c/o Gabriel M. Hartsell
2398 E. Camelback Road
Suite 760
Phoenix, AZ 85016-9005

Route 140 School Street, LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

SIMON PROPERTY GROUP, INC.
c/o Ronald M. Tucker, VP & Bankruptcy Co
225 West Washington Street
Indianapolis, IN 46204-3438

SPRINGFIELD SQUARE CENTRAL, LP
c/o Robert Langer
1001 Baltimore Pike
Springfield, PA 19064-2800

SYSCO Corporation
1390 Enclave Parkway
Houston, TX 77077-2099

Simon Property Group, Inc.
225 West Washington Street
Indianapolis, IN 46204-3438

Snowden Holdings, LLC
c/o Daniel E. Etlinger, Esq.
Jennis Morse Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

Snowden Holdings, LLC
c/o David S. Jennis Esq.
Jennis Morse Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

Springfield Square Cent LP
c/o Continental Dev. LLC
1604 Walnut St - 5th Floor
Philadelphia, PA 19103-5421

St. John Properties, Inc - B
Accounts Receivable
PO Box 62784
Baltimore, MD 21264-2784

The Grossman Companies, Inc.
c/o Jennifer V. Doran, Esq.
Hinckley Allen & Snyder
28 State Street
Boston, MA 02109-1776

TriMark United East
PO Box 845377
Boston, MA 02284-5377

W/S/M Hingham Properties LLC
c/o Paul W. Carey, Esq.
Mirick O'Connell
100 Front Street
Worcester, MA 01608-1425

Wildwood Est. of Braintree
PO Box 859059
Braintree, MA 02185-9059

Michael A Paasch +
Mateer & Harbert PA
Post Office Box 2854
Orlando, FL 32802-2854

R Scott Shuker +
Shuker & Dorris, P.A.
121 South Orange Avenue, Suite 1120
Orlando, FL 32801-3238

Jason B. Burnett +
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Kenneth B Jacobs +
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202-3611

Richard A Johnston Jr.+
Johnston Law, PLLC
7370 College Parkway
Ste 210
Ft. Myers, FL 33907-5559

Mark J. Wolfson +
Foley & Lardner
100 North Tampa Street, Suite 2700
PO Box 3391
Tampa, FL 33601-3391

Ronald M Tucker +
Simon Property Group
225 West Washington Street
Indianapolis, IN 46204-3438

Kevin A Reck +
Foley & Lardner LLP
301 E. Pine Street, Suite 1200
Orlando, FL 32801-2703

Bradley S Shraiberg +
Shraiberg Page P.A.
2385 NW Executive Center Drive
Suite 300
Boca Raton, FL 33431-8530

Dustin P Branch +
Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

Jeffrey Kurtzman +
Kurtzman Steady, LLC
555 City Avenue
Ste 480
Bala Cynwyd, PA 19004-1142

Paul W Carey +
Mirick O'Connell DeMallie & Lougee
100 Front Street
Worcester, MA 01608-1477

Matthew J. McGowan +
Salter McGowan Sylvia & Leonard, Inc.
56 Exchange Terrace, Suite 500
Ste 500
Providence, RI 02903-1772

Isaac M Gabriel +
Dorsey & Whitney LLP
2398 E. Camelback Road
Suite 760
Phoenix, AZ 85016-9005

Edward M Fitzgerald +
Holland & Knight LLP
200 South Orange Ave
Suite 2600
Orlando, FL 32801-3453

Mark A Amendola +
Martyn and Associates
820 Superior Avenue, Northwest
Tenth Floor
Cleveland, OH 44113-1827

Michael L Schuster +
Ballard Spahr, LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5535

Dana S Plon +
Sirlin Gallogly & Lesser PC
123 South Broad Street
Suite 2100
Philadelphia, PA 19109-1042

Leslie C Heilman +
Ballard Spahr, LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3023

Ilan Markus +
LeClairRyan A Professional Corporation
545 Long Wharf Drive
Ninth Floor
New Haven, CT 06511-5960

Kate Foley +
Mirick O'Connell DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581-3960

Andrew L Cole +
Cole Schotz P.C.
300 East Lombard Street, Suite 1450
Baltimore, MD 21202-3242

Michael S Provenzale +
Lowndes Drosdick Doster Kantor & Reed PA
Post Office Box 2809
Orlando, FL 32802-2809

Alicia M Kupcinskas +
Brennan Manna Diamond
5210 Belfort Road, Suite 400
Jacksonville, FL 32256-6050

David S Jennis +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Audrey M Aleskovsky +
Office of the United States Trustee
George C. Young Federal Building
400 West Washington St, Suite 1100
Orlando, FL 32801-2210

Gabriel M Hartsell +
Dorsey & Whitney LLP
2398 E. Camelback Road
Suite 760
Phoenix, AZ 85016-9005

Daniel E Etlinger +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Gillian D. Williston +
Troutman Pepper Hamilton Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462-3038

Laurel D Roglen +
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801-3023

Julie M. Murphy +
Stradley Ronon Stevens & Young LLP
Liberty View
457 Haddonfield Road
Suite 100
Cherry Hill, NJ 08002-2223

Bodie Colwell +
Preti Flaherty, LLP
One City Center
PO Box 9546
Portland, ME 04112-9546

John Mark Sullivan +
Preti Flaherty
57 N. Main Street
P.O. Box 1318
Concord, NH 03302-1318

Jennifer Doran +
Hinckley Allen
28 State Street
Boston, MA 02109-1776

James Hoffman +
Offit Kurman
7501 Wisconsin Avenue
Suite 1000w
Bethesda, MD 20814-6604

Samuel C. Wisotzkey +
4650 N. Port Washington Rd.
Milwaukee, WI 53212-1077

Marc Justin Kurzman +
Carmody Torrance Sandak & Hennessey LLP
1055 Washington Boulevard
Stamford, CT 06901-2218

Kevin Carr +
Spilman Thomas and Battle, PLLC
300 Kanawha Boulevard, East
Charleston, WV 25301-0012

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


C.H. ROBINSON
Robinson Fresh
14701 Charlesto RD, Ste 1400
Eden Prairie, MN 55347




The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)153 West Hancock Street Associates, LP         End of Label Matrix
                                                  Mailable recipients    92
                                                  Bypassed recipients     1
                                                  Total                  93